**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>　　　　Plaintiff,<br><br>v.<br><br>James D. Noland, Jr., et al.,<br><br>　　　　Defendants. | No. CV-20-00047-PHX-DWL<br><br>**ORDER** |

　　　　Pending before the Court is the receiver's second motion for fees and costs incurred in the administration of the Receivership Entities.[1] (Doc. 144.) The individual defendants[2] have filed an opposition (Doc. 146), the Federal Trade Commission ("FTC") has filed a response in support of the receiver's request (Doc. 149), and the receiver has filed a reply (Doc. 150). For the following reasons, the receiver's motion will be granted.

## BACKGROUND

　　　　On January 8, 2020, the FTC initiated this action by filing a complaint that accused the defendants of operating an illegal pyramid scheme and making false and misleading

---

[1]　　The "Receivership Entities" are composed of (1) the "Corporate Defendants," which are "Success By Media Holdings Inc. and Success By Media LLC and each of their subsidiaries, affiliates, successors, and assigns," and (2) "any other entity that has conducted any business related to Defendants' marketing of programs, opportunities, or services offered by Success By Media, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Temporary Receiver determines is controlled or owned by any Defendant." (Doc. 21 at 4-5.)

[2]　　The individual defendants are James D. Noland, Jr., Lina Noland, Scott A. Harris, and Thomas G. Sacca, all of whom are now represented by Daryl M. Williams and Daniel B. Mestaz of the law firm of Williams|Mestaz, LLP. (Docs. 126, 145.)

representations to consumers. (Doc. 3.)

On January 13, 2020, the Court entered a temporary restraining order ("TRO") under which "attorney Kimberly Friday [was] appointed as temporary receiver of the Receivership Entities with full powers of an equity receiver." (Doc. 21 at 16.) Among other things, this order authorized the receiver to "[s]uspend business operations of the Receivership Entities if in the judgment of the Temporary Receiver such operations cannot be continued legally and profitably." (*Id.* at 20.)

On February 10, 2020, the receiver filed a report summarizing her post-appointment actions. (Doc. 82.) Near the end of the report, under the heading "The Temporary Receiver's Assessment of Continued Operations," she wrote:

> At this juncture, and based on the information supplied by the Receivership Entities, Individual Defendants, and the FTC, the Temporary Receiver does not believe that the business can be operated without violating the TRO. The inaccurate marketing statements, the organization of the commission system, and the movement of large amounts of cash to the insiders strongly suggests that the business is structured in such a fashion that prevents Affiliates from realizing the promoted business opportunities. In light of that reality – and in view of the fact that 95% of SBM's customers are persons who purchase not just products, but also the Affiliate membership opportunity to sell additional products and earn commissions – the Temporary Receiver believes it would be inadvisable to continue operations pending the outcome of the case.

(Doc. 82-1 at 19.) The report also noted that "SBM [Success by Media] possesses quantities of numerous SBH [Success by Health] products in its warehouse in Kentucky that could be sold to mitigate the company's liabilities" and thus stated that, if the TRO were converted into a preliminary injunction, the receiver "may request authority to sell the products on a retail basis for personal use only on the company's website, outside of the Affiliate commission system." (*Id.*)

On February 27, 2020, following an evidentiary hearing, the Court issued an order concluding the FTC was entitled to a preliminary injunction because, *inter alia*, it had demonstrated a likelihood of success on the merits of its claims that defendants were operating an illegal pyramid scheme and making false and misleading representations.

(Doc. 106 at 10-25.)

The following day, on February 28, 2020, the Court issued the preliminary injunction. (Doc. 109.) Among other things, it confirmed that "Kimberly I. Friday, Esq[.] shall continue as receiver of the Receivership Entities with full powers of an equity receiver." (*Id.* at 12.) It also reaffirmed that the receiver could "[s]uspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably." (*Id.* at 16.) Finally, it authorized the receiver to "[r]eactivate shipping to sell what remains of Success By Health's inventory if, in the judgment of the Receiver, such sales can occur legally and profitably." (*Id.*)

On March 13, 2020, the receiver filed her first motion for fees and costs incurred in the administration of the Receivership Entities. (Doc. 114.) This motion covered the fees incurred through February 29, 2020. (*Id.*)

On April 21, 2020, after "[a]ll parties [had] been given notice and an opportunity to respond and no objections [had] been filed," the Court granted the receiver's first fee motion. (Doc. 136.)

On May 12, 2020, the receiver filed a second report summarizing her actions. (Doc. 139.) This report explained that "[t]he Receiver's activities during the last three months fall broadly within three categories: (1) reactivating SBM's ability to ship products; (2) communicating with affiliates and consumers regarding requests for refunds and the status of the litigation; and (3) continuing the payment of various services that in the Receiver's assessment were 'necessary or advisable' in carrying out the duties of the Receivership." (Doc. 139-1 at 3-4.) As for selling existing inventory, the report explained that "the reactivation process took longer than anticipated" for several reasons, including (1) the onset of the COVID-19 pandemic, (2) the receiver's discovery that over $22,000 of the existing product "contained Octodrine (DMHA), which is an ingredient that, as of April 2019, cannot be legally sold in the United States," (3) the receiver's discovery that defendants had previously lacked general commercial liability insurance, (4) the receiver's discovery that defendants had been operating in Kentucky without proper registration with

state authorities and without collecting sales tax, and (5) the receiver's determination that defendants' previous marketing materials contained unverified representations concerning the health benefits of SBH's products. (*Id.* at 4-6.) Thus, the receiver reported that "at the Receiver's direction, all product descriptions were removed from the Company's website, and . . . affiliates have been prohibited from marketing any of the products based on their purported health benefits. At the Receiver's direction, references to multi-level marketing and commissions were also removed from the website." (*Id.* at 6.)

On May 29, 2020, the receiver filed her second motion for fees and costs incurred in the administration of the Receivership Entities. (Doc. 144.) This motion covers the fees incurred between March 1, 2020 and April 30, 2020. (*Id.*)

On June 12, 2020, the individual defendants filed an opposition. (Docs. 146, 147.)

On June 18, 2020, the FTC filed a response. (Doc. 149.)

On June 19, 2020, the receiver filed a reply. (Doc. 150.)

**DISCUSSION**

A.  Parties' Arguments

In her second motion, the receiver seeks a total of $54,905.20 in fees and costs, composed of $19,687.50 for her services, $22,538.00 for services performed by other attorneys at her law firm, and $12,679.70 in fees and costs incurred by a forensic accounting firm. (Doc. 144.) She avows that she and her firm have discounted their fees in this matter and have written off some charges, that the forensic accounting firm has also written off some of its fees, and that all of the fees and costs being requested "are reasonable and necessary costs of preserving the receivership estate." (*Id.*)

In their opposition, the individual defendants categorically "object to the receiver's application for fees because she is not complying with her obligations as a receiver. Indeed, she is acting contrary to the best interests of the Corporate Defendants by deciding before a trial that there has been a violation of law and acting accordingly. Specifically, she is liquidating the Corporate Defendants rather than preserving their Assets. This liquidation means she is killing the corporations, not simply maintaining them, the worst kind of

dissipation of Assets. She should not, therefore, get fees." (Doc. 146 at 1.) The individual defendants also raise an array of specific complaints concerning the receiver's efforts, including allegations that (1) she "bungled" the effort to sell $1.7 million of existing product in the Kentucky warehouse, causing the inventory to begin expiring, (2) she made inaccurate statements to customers concerning the scope and substance of the preliminary injunction ruling, (3) she improperly discontinued the multi-level marketing and commission structures that had been in place before she took over, and (4) she improperly removed, from marketing materials, the representations concerning the products' health benefits. (*Id.* at 3-9.)

In its response, the FTC argues that the receiver's second motion should be granted because "[t]he proper method to contest the Preliminary Injunction is through a motion to modify, which Defendants have indicated is forthcoming, not in contesting the reasonable fees of a court-appointed fiduciary and her professionals." (Doc. 149 at 2.)

In her reply, the receiver argues that the defendants' objections rest on the "faulty premise" that her role was to maximize the Receivership Entities' value as a going concern, when it fact she was expressly authorized to stop operating the Receivership Entities unless she concluded they could be operated lawfully and profitably. (Doc. 150 at 1-2.) The receiver also identifies various reasons why, in her judgment, it would have been improper to attempt to resume operating the Receivership Entities in the same manner they had been operated before her appointment (*id.* at 2-3) and attempts to address each of the individual defendants' specific criticisms of her performance (*id.* at 6-11).

B.     Analysis

The receiver's second motion for fees and costs will be granted. The Court is satisfied that Ms. Friday is carrying out her duties as receiver, as those duties are specified in the preliminary injunction, in a reasonable and diligent manner. Ms. Friday inherited a difficult situation—she took control of entities that the FTC has demonstrated were likely operating as a pyramid scheme, discovered that some of the entities' inventory was tainted with an illegal ingredient and that the entities had not been following necessary business

practices and legalities, and then had to confront the COVID-19 pandemic. Although the individual defendants are understandably frustrated by the fact that the entities they helped create are no longer operating in the fashion they envisioned, their true disagreement is with the Court's preliminary injunction ruling (which they did not appeal), not with Ms. Friday's conduct.

Accordingly, **IT IS ORDERED** that the Receiver's second motion for fees and costs (Doc. 144) is **granted**.

**IT IS FURTHER ORDERED** that the Receiver is hereby authorized and directed to pay from the receivership assets in this case and in the possession of the Receiver: (1) the amount of $19,687.50 to the Receiver for services rendered and costs incurred or paid during the period March 1, 2020, through April 30, 2020; (2) the amount of $22,538.00 to Osborn Maledon, P.A. for services rendered and costs incurred or paid during the period March 1, 2020, through April 30, 2020; and (3) the amount of $12,679.00 to Simon Consulting for services rendered and costs incurred or paid during the period March 1, 2020, through April 30, 2020.

Dated this 24th day of June, 2020.

Dominic W. Lanza
United States District Judge