**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

Pending before the Court is a "Motion To Allow Representation Of Corporate Defendants And Non-Party Entities." (Doc. 153.) The motion is fully briefed and nobody has requested oral argument. For the following reasons, the motion will be denied.

**BACKGROUND**

On January 8, 2020, the Federal Trade Commission ("FTC") filed a complaint alleging that a business known as Success By Health, which was operated by defendants James D. Noland, Jr., Lina Noland, Scott A. Harris, and Thomas G. Sacca (collectively, "the Individual Defendants") and defendants Success By Media Holdings, Inc., and Success by Media, LLC (together, "the Corporate Defendants"), was an illegal pyramid scheme. (Doc. 3.) Shortly afterward, the Court granted the FTC's request for a temporary restraining order ("TRO"). (Doc. 21.) Among other things, the TRO appointed Kimberly Friday to act as a temporary receiver of the entities that comprise and/or are intertwined with Success By Health (collectively, "the Receivership Entities") and instituted a temporary freeze of the Receivership Entities' assets. (*Id.*)

Although the TRO vested Ms. Friday with authority to choose the Receivership Entities' (and, therefore, the Corporate Defendants') counsel (*id.* at 16-17), the Individual Defendants and the Corporate Defendants were allowed to retain the same counsel, the law firm of Gordon Rees Scully Mansukhani, LLP ("Gordon Rees"), to jointly represent them. Accordingly, on January 21, 2020, Gordon Rees filed a notice of appearance on behalf of all defendants. (Doc. 41.) During the weeks that followed, Gordon Rees litigated aggressively on the Individual Defendants' and Corporate Defendants' behalf. Among other things, Gordon Rees filed motions for relief (Docs. 53, 56, 61, 67, 71, 73, 85), served and propounded discovery (Doc. 55), answered and responded to the FTC's allegations (Docs. 70, 76), and retained an expert to "to evaluate information, opinions or testimony provided by the FTC and its witnesses and provide rebuttal opinions" (Doc. 76-1 at 20-37).

On February 10, 2020, Ms. Friday issued a report that summarized her findings and observations after her first few weeks as temporary receiver. (Doc. 82-1.) The upshot was that Ms. Friday did "not believe the business can be operated without violating the TRO . . . [in light of the] inaccurate marketing statements, the organization of the commission system, and the movement of large amounts of cash to the insiders . . . . In light of that reality . . . the Temporary Receiver believes it would be inadvisable to continue operations pending the outcome of the case." (*Id.* at 19.)

On February 12, 2020, the Court held a hearing on the FTC's request for a preliminary injunction. (Doc. 86 [minute entry]; Doc. 105 [transcript].) During that hearing, Gordon Rees examined the FTC's witnesses and presented evidence and argument in support of the Individual Defendants and the Corporate Defendants. (*Id.*) Afterward, Gordon Rees continued litigating on these defendants' behalf, filing post-hearing objections to certain evidence (Doc. 92) and moving to supplement the record with additional evidence (Docs. 95, 96, 100).

On February 27, 2020, the Court issued an order granting the FTC's request for a preliminary injunction. (Doc. 106.) Among other things, the Court concluded that the FTC was likely to succeed on its pyramid scheme claim (*id.* at 10-20) and on its claim that the

defendants had made false and misleading income claims (*id.* at 20-25).  The Court also considered, and rejected, the defendants' request to replace the temporary receiver with a monitor, explaining that although the appointment of a receiver is an "extraordinary" remedy, a receiver was justified and necessary here.  (*Id.* at 26-28.)

The following day, on February 28, 2020, the Court issued the preliminary injunction. (Doc. 109.)  It confirmed that Ms. Friday "shall continue as receiver of the Receivership Entities with full powers of an equity receiver." (*Id.* at 12.)  It also reaffirmed that Ms. Friday, as receiver, possessed broad power over the Receivership Entities' selection of counsel and use of money.  Among other things, it vested Ms. Friday with (1) the authority to exercise "full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any . . . attorney . . . of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity," (2) the authority to "[c]onserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities," and (3) the authority to "[c]hoose, engage, and employ attorneys . . . as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order." (*Id.* at 12-13 [preliminary injunction, §§ XIV(A), (D), (F)].)

On March 23, 2020, Gordon Rees filed a motion to withdraw as counsel for the Individual Defendants and the Corporate Defendants. (Doc. 116.)  Although the motion stated that it was being filed without client consent, no defendant subsequently filed an opposition to it.  The FTC did file an opposition, arguing that Gordon Rees had failed to provide sufficient information concerning the basis for its withdrawal request. (Doc. 119.) Ms. Friday also filed a response, stating that she had no opposition to Gordon Rees's withdrawal request and that, because she was "not aware of a good faith basis to oppose most aspects of the FTC's complaint against the corporate defendants," she did not "anticipate spending the Receivership Estate's limited resources [following Gordon Rees's withdrawal] to fight a losing battle" and instead intended to "reach a non-litigated resolution with the FTC that would allow the companies an opportunity to conduct an

orderly wind down." (Doc. 123 at 2-3.)

On April 2, 2020, the Court issued an order granting Gordon Rees's motion to withdraw. (Doc. 124.) This order further specified that "[t]he Receiver shall be substituted as counsel of record for" the Corporate Defendants, because corporate entities may not appear *pro se* in federal court, and "[t]he individual defendants shall proceed pro se unless and until they retain new counsel." (*Id.* at 2-3.)

The next day, on April 3, 2020, Daryl M. Williams and Daniel B. Mestaz of the law firm of Williams|Mestaz, LLP (collectively, "Counsel") filed a notice of appearance on behalf of three of the four Individual Defendants[1] and on behalf of the Corporate Defendants. (Doc. 126.) In response, the Court issued an order stating that it was "unclear" whether Counsel's attempt to appear on behalf of the Corporate Defendants was permissible in light of the fact that Ms. Friday, who seemed to have the power (per the preliminary injunction) to choose their counsel, had just stated that she didn't intend to spend any more of their money fighting the FTC's allegations. (Doc. 129 at 1-2.) The Court added: "If the retention and appearance of . . . Counsel occurred without the receiver's approval—if, for example, . . . Counsel were chosen unilaterally by the individual defendants—there may be a problem." (*Id.* at 2.) Thus, the Court ordered Counsel and Ms. Friday to meet and confer about the representation issue. (*Id.*)

On April 16, 2020, Counsel filed a notice of withdrawal as to the Corporate Defendants. (Doc. 135.) The notice provided: "Discussions with counsel for the receiver . . . are bearing fruit, so undersigned counsel has agreed to withdraw his notice of appearance on behalf of [the Corporate Defendants]. Counsel for the receiver has agreed that this notice will suffice to clarify that undersigned counsel does not represent at this time either of these entities." (*Id.* at 1.)

On June 23, 2020, the Individual Defendants, through Counsel, filed an amended motion to allow Counsel to represent the Corporate Defendants and other non-party Receivership Entities. (Doc. 153.)

---

[1] Counsel later filed a notice of appearance on behalf of the remaining Individual Defendant. (Doc. 145.)

On June 24, 2020, the FTC filed an opposition. (Doc. 155.)

On July 2, 2020, Ms. Friday filed an opposition. (Doc. 159.)

On July 9, 2020, the Individual Defendants filed a reply. (Doc. 162.)

**DISCUSSION**

I. Parties' Arguments

In their motion, the Individual Defendants begin by acknowledging that, under the terms of the preliminary injunction, Ms. Friday has the authority "to do what she deems is necessary or advisable with regard to the employment of attorneys" by the Receivership Entities. (Doc. 153 at 1.) Nevertheless, the Individual Defendants argue that, because they own the Receivership Entities and/or are officers of the Receivership Entities, any infringement of their ability to choose the Receivership Entities' counsel would violate (1) their due process rights under the Fifth Amendment and (2) their First Amendment right to receive legal advice from their counsel of choice. (*Id.* at 2.) The Individual Defendants take particular umbrage with the fact that Ms. Friday has, in her role as receiver, made statements suggesting the FTC's allegations have merit: "[T]he Corporate Defendants are entitled to have counsel of their choice, counsel chosen by the owners and officers of the Corporate Defendants, not a court-appointed receiver who does not think a defense in this case is warranted and is in the process of liquidating the Corporate Defendants rather than preserving assets and defending against the FTC's claim." (*Id.* at 3.) Finally, the Individual Defendants argue that the Receivership Entities' assets, which are currently frozen and subject to oversight by Ms. Friday, must be made available to pay for Counsel's representation. (*Id.*)

The FTC opposes the Individual Defendants' motion. (Doc. 155.) It argues that the motion is based on the "false premise" that the Court has prohibited the Receivership Entities from hiring counsel, when in fact the preliminary injunction specifically authorizes Ms. Friday to hire counsel on the Receivership Entities' behalf. (*Id.* at 1-3.) Thus, the FTC argues that the Individual Defendants' true complaint is that "they, rather than the Receiver, [should be allowed to] select Receivership Entities' counsel" and that this complaint is

- 5 -

foreclosed by a long line of authority recognizing that, once a company is placed into receivership, the company's officers may lose the ability to dictate the company's litigation strategy. (*Id.*) The FTC also contends that the Individual Defendants are, in effect, seeking a modification of the preliminary injunction, but they haven't expressly challenged—let alone demonstrated the inaccuracy of—the factual findings that precipitated the entry of the preliminary injunction. (*Id.* at 2-4.) Finally, the FTC argues that the Individual Defendants will suffer no prejudice from the Receivership Entities' current representation arrangement because they remain free to contest the FTC's allegations and it will stay its claims against the Corporate Defendants pending resolution of its claims against the Individual Defendants. (*Id.* at 4-5.)

Ms. Friday also opposes the Individual Defendants' motion. (Doc. 159.) She cites an array of cases recognizing that, in general, court-appointed receivers possess broad authority that may include control over the company's affairs. (*Id.* at 2-3.) As for the Individual Defendants' constitutional arguments, Ms. Friday argues that "[t]he First Amendment is not offended by the Receiver's lawful exercise of her enumerated powers, *i.e.,* her choosing of counsel on behalf of the Corporate Defendants. Nor is it accurate to suggest that the Court granted the preliminary injunction without due process. The parties submitted voluminous briefing to the Court both before and after a lengthy evidentiary hearing and oral argument on the FTC's preliminary injunction motion. The Court reviewed all of this evidence before entering the preliminary injunction delegating counsel-choosing authority to the Receiver." (*Id.* at 4.) Finally, Ms. Friday argues that the Individual Defendants' funding request lacks merit because they "should not be afforded an opportunity to pay for their representation using funds that could have been unlawfully obtained from the very people that would be entitled to compensation from the FTC if the FTC prevails." (*Id.* at 5.)

In their reply, the Individual Defendants rely heavily on *Powell v. Alabama*, 287 U.S. 45 (1932), arguing that it stands for the proposition that a court may not "arbitrarily refuse to hear a party by counsel, employed by and appearing for him." (Doc. 162 at 1, 2,

6.) The Individual Defendants also contend that Ms. Friday's position is inconsistent because she allowed Gordon Rees to represent the Corporate Defendants until "more than a month after the court granted the preliminary injunction." (*Id.* at 1.) In a related vein, the Individual Defendants argue that the FTC's attempt to characterize their motion as a backdoor attempt to modify the preliminary injunction is misplaced because the representation issue wasn't ripe at that time—it only arose when Counsel attempted to appear in the case in April 2020, well after the preliminary injunction was issued. (*Id.* at 2.) As for the FTC's and Ms. Friday's harmlessness argument, the Individual Defendants respond that (1) nobody is currently protecting the Corporate Defendants' rights, as evidenced by the fact that Ms. Friday did not file a response on their behalf, and (2) the harm is arising, in part, from the continued freeze of the Receivership Entities' assets. (*Id.* at 2-3.) The Individual Defendants also contend that the Supreme Court's recent decision in *Liu v. SEC*, 140 S.Ct. 1936 (2020), amplifies the impropriety of the asset freeze because it "renders the receivership in this case improper because it is far beyond the limited equitable relief Congress allowed by 15 U.S.C. § 53(b)." (*Id.* at 3.) Finally, the Individual Defendants argue that the cases cited in the FTC's and Ms. Friday's briefs are factually inapposite. (*Id.* at 3-5.)

II. <u>Analysis</u>

The issue presented here—whether a court-appointed receiver in an FTC enforcement action may, before a final adjudication of liability has been made, decline to hire a particular law firm to represent a corporate defendant (over the objection of the entity's owners and officers) due to the belief that the expenditure of funds on legal fees would be wasteful and dissipate the pool of assets potentially available to victims at the conclusion of the case—appears to be a novel one. Although the parties have identified an array of cases that, in their view, support by analogy their respective positions, none of those cases are directly on point.

For example, although the FTC and Ms. Friday correctly point out that the authority to choose a company's counsel is ordinarily a concomitant feature of being named a

company's receiver, this doesn't resolve whether the use of that authority under the circumstances of this case would, as applied, raise any due process or other constitutional concerns. Similarly, although the Individual Defendants correctly point out that the right to be represented by one's counsel of choice is, in general, of constitutional significance, this observation doesn't address whether a company's owners and officers continue to have any enforceable right to control the company's representation arrangements after the appointment of a receiver.[2]

Although the Individual Defendants' arguments have some force, the Court concludes that Ms. Friday is not required, under the First or Fifth Amendments, to allow Counsel to represent the Corporate Defendants at this juncture of the case. The Court reaches this conclusion for several interrelated reasons.

First, the Individual Defendants do not even attempt to grapple with the fact that the Corporate Defendants have now been placed in receivership (which occurred following a contested evidentiary hearing during which they and the Corporate Defendants were jointly represented by their counsel of choice). Their position seems to be that, because they are the owners and operators of the entities in question, it follows that they have the unfettered right to choose those entities' counsel. This position overlooks that "[w]hen a receiver is

---

[2] The two cases on which the Individual Defendants rely most heavily are *Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813 (9th Cir. 2004), and *Powell v. Alabama*, 287 U.S. 45 (1932). But in *Cole*, the Ninth Circuit addressed whether, under 18 U.S.C. § 401(3) and the District of Idaho's local rules, a magistrate judge may *sua sponte* revoke an attorney's *pro hac vice* status as a sanction for failing to obey a court order. 366 F.3d at 816. Thus, *Cole*'s observation that "[e]xcept for compelling reasons, such as necessary bar admissions, clients should be permitted to have the counsel of their choice" (*id.* at 820) sheds little light on the current controversy. Meanwhile, *Powell* involved an exceptionally disturbing 1930s Alabama state-court prosecution of three black men for "the crime of rape, committed upon the persons of two white girls." 287 U.S. at 49. At the arraignment, the defendants "were not asked whether they had, or were able to, employ counsel, or wished to have counsel appointed." *Id.* at 52. Only six days later, trial began. *Id.* at 53. A local bar member, who happened to be present in court that day, was enlisted to serve as defense counsel. *Id.* at 53-56. The trials resulted in guilty verdicts and death sentences. *Id.* The Supreme Court reversed on Sixth Amendment grounds, criticizing the "casual fashion [in which] the matter of counsel in a capital case was disposed of." *Id.* at 56. *See also id.* at 57-58 ("The defendants, young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers, charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them."). It is an understatement to say this case involves different issues.

appointed for a corporation, the corporation's management loses the power to run its affairs and the receiver obtains all of the corporation's powers and assets." *First Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n*, 531 F. Supp. 251, 255 (D. Haw. 1981). Although this principle isn't necessarily dispositive, in that the Court doesn't foreclose the possibility that a receiver's exercise of this authority could raise due process concerns on an as-applied basis, the Individual Defendants' failure to acknowledge that the receiver has any authority with respect to the selection of counsel undermines their position.

The Individual Defendants' silence on this point also obscures some of the practical problems that might flow from accepting their position. Even if Counsel were allowed to appear in this case on behalf of both the Corporate Defendants and the Individual Defendants, Ms. Friday would arguably remain the "client" for purposes of Counsel's attorney-client relationship with the Corporate Defendants. *See* Ariz. E.R. 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."). And under Arizona's ethical rules, a lawyer is generally required to "abide by a client's decisions concerning the objectives of representation." *See* Ariz. E.R. 1.2(a). Given that Ms. Friday and the Individual Defendants have dramatically different views about how this case should be litigated, this representation arrangement would seem to pose the potential for substantial future problems. *Cf.* Ariz. E.R. 1.13, comment 11 ("There are times when the organization's interests may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation.").

Second, the Individual Defendants' complaint isn't limited to the argument that Counsel should be allowed to *appear* on behalf of the Corporate Defendants. They also contend that Ms. Friday must use the Receivership Entities' assets, which are currently subject to an asset freeze, to *pay* for Counsel's representation. But in FTC enforcement actions in the Ninth Circuit, "[c]ourts regularly have frozen assets and denied attorney fees

. . . ." *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989). *See also FTC v. Johnson*, 567 Fed. App'x 512, 514 (9th Cir. 2014) (rejecting due process challenge to receiver's assertion of control over assets held by third parties and recognizing that "[a] district court may freeze assets when doing so is necessary to preserve the possibility of full relief"). Although requests to unfreeze corporate assets for the purpose of paying attorneys' fees must be considered on a case-by-case basis, because the denial of funds is in tension with the fact that wrongdoing has not yet been proved, denial has been upheld when, as here, the frozen assets appear insufficient to satisfy a future restitution award. *See, e.g., CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("A district court may, within its discretion, forbid or limit payment of attorney fees out of frozen assets. According to the record, the frozen assets fell far short of the amount needed to compensate [the alleged victims]. This was reason enough in the circumstances of this case for the district court, in the exercise of its discretion, to deny the attorney fee application. We do not, however, intimate that attorney fee applications may always be denied where the assets are insufficient to cover the claims. Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made.") (citations omitted); *FTC v. Ideal Financial Solutions, Inc.*, 2014 WL 4541191, *2 (D. Nev. 2014) (rejecting defendants' unfreezing request, where the frozen funds were sought for attorneys' fees, and noting that "[t]he Ninth Circuit recognizes district courts' discretion in civil cases to 'forbid or limit payment of attorney fees out of frozen assets'") (citation omitted).

Had Ms. Friday refused to allow Gordon Rees to represent the Corporate Defendants at the outset of the case, as she appears to have been empowered to do under the terms of the TRO, the analysis might be different. But here, the Corporate Defendants were represented for several months by the Individual Defendants' then-counsel of choice, who litigated aggressively on the Corporate Defendants' behalf before, during, and after the preliminary injunction hearing. Despite that advocacy, the Court concluded the FTC had demonstrated a likelihood of success on its claims. Thus, although the Individual

Defendants are correct that the issuance of the preliminary injunction "is not tantamount to [a] decision[] on the underlying merits" (Doc. 153 at 3, quotation omitted), it is still appropriate to consider the current posture of this case when evaluating the Individual Defendants' request. *Cf. FTC v. IAB Marketing Associates, LP*, 2013 WL 2433214, *3 (S.D. Fla. 2013) ("[T]he preliminary-injunction hearing and the legal work leading up to it [was] a chance for a defendant to show that the FTC is not likely to prevail on the merits. So although the merits of an action are not finally resolved when a preliminary injunction is entered, a highly relevant finding concerning the merits is made at that point. . . . [N]o further funds need to be released for attorney fees.").

The Individual Defendants also make a passing claim in their reply that *Liu v. SEC*, 140 S.Ct. 1936 (2020), "renders the receivership in this case improper." (Doc. 162 at 3.) But in *Liu*, the Supreme Court addressed an entirely different issue—the scope of the SEC's ability to seek the remedy of disgorgement in enforcement actions brought in federal court. 140 S.Ct. at 1940. On the one hand, the *Liu* Court rejected the challengers' contention that the SEC can never seek disgorgement, holding that disgorgement is an equitable remedy and thus falls within the SEC's statutory authority to seek "equitable relief" on behalf of investors. *Id.* at 1942-44. On the other hand, the Court held that SEC had gone too far in past cases, by failing to limit disgorgement awards to the "defendant's net profits from wrongdoing" and thus "transforming it into a penalty outside [the SEC's] equitable powers." *Id.* at 1944-47.

Given this backdrop, the Individual Defendants' reliance on *Liu* is misplaced. As an initial matter, it is notable that *Liu* rejected the challengers' argument that the SEC can never seek the monetary remedy of disgorgement. Instead, it held that disgorgement awards may be pursued by the SEC so long as they are properly constrained. It is unclear why the Individual Defendants would construe this outcome as categorically precluding the appointment of a receiver in an FTC enforcement action or categorically precluding the FTC from seeking the remedy of restitution in such an action—something that is specifically permitted under current Ninth Circuit law. *FTC v. AMG Capital Mgmt., LLC*,

910 F.3d 417, 426-27 (9th Cir. 2018) (rejecting defendant's argument that the FTC lacks statutory authority to pursue restitution, although the argument had "some force," because it was "foreclosed by our precedent").

Additionally, *Liu* addressed the disgorgement remedy the SEC may seek under its governing statute and didn't once discuss the FTC, which is governed by an entirely different statute. Given the presence of textual differences between the two statutes, it would be improper to read *Liu* as necessarily curtailing the scope of the FTC's authority or forbidding the appointment of receivers in FTC enforcement actions. *Cf. FTC v. Cardiff*, 2020 WL 3867293, *5-6 (C.D. Cal. 2020) ("*Liu* does not appear . . . to preclude the FTC from seeking restitution under the FTCA. *Liu*'s holding is cabined to disgorgement in SEC actions under a distinct provision of the SEC Act—which the Court previously held constitutes penalties, not equitable relief. . . . By contrast, the FTC here seeks restitution of consumer losses, not disgorgement of profits. . . . Given the broad sweep of this section of the FTCA compared to § 78u(d)(5) of the SEC Act, *Liu*'s reasoning does not affect the FTC's calculation of restitution owed to consumers based on total revenues.") (internal emphasis and citations omitted).

With that said, it must be acknowledged that the Supreme Court recently granted certiorari in *AMG Capital Management*, in which the Ninth Circuit concluded that Section 13(b) of the FTC Act permits restitution, and in *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764 (7th Cir. 2019), which reached the opposite conclusion. Nevertheless, unless and until the Supreme Court decides otherwise, this Court must follow Ninth Circuit precedent, which permits the FTC to seek restitution and to seek appointment of a receiver. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (to implicitly overrule a Ninth Circuit decision, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

Third, and finally, although the concept of harmlessness is often inapplicable when considering issues pertaining to the choice of counsel, it is difficult to see how any appreciable harm would flow from declining to allow Counsel to represent the Corporate

Defendants at this juncture of the case.  Counsel are already representing the Individual Defendants and the FTC has agreed to delay pursuing its claims against the Corporate Defendants until its litigation against the Individual Defendants has concluded.  Nor has there been any suggestion that the Corporate Defendants wish to pursue any different defenses or theories than those currently being pursued, via Counsel, by the Individual Defendants.  At bottom, the only practical impact of Ms. Friday's decision is that the Individual Defendants are not being allowed to use the Receivership Entities' assets to help defray Counsel's fees, and Ninth Circuit law is clear that frozen corporate assets need not be unfrozen in this circumstance.

Accordingly, **IT IS ORDERED** that the Individual Defendants' motion (Doc. 153) is **denied**.  This is without prejudice to the Individual Defendants' ability to seek reconsideration should the law change concerning the FTC's authority to seek restitution.

Dated this 29th day of July, 2020.

Dominic W. Lanza
United States District Judge