**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

Pending before the Court is a motion by Defendants Jay Noland, Lina Noland, Thomas Sacca, and Scott Harris (together, the "Individual Defendants") for various forms of relief related to the VOZ Travel program. (Doc. 213.) Plaintiff Federal Trade Commission ("FTC") opposes the Individual Defendants' motion, characterizing it as an unfounded request to modify the preliminary injunction and an impermissible request for an advisory opinion. (Doc. 219.) For the following reasons, the motion will be granted in part and denied in part.

**RELEVANT BACKGROUND**

On January 8, 2020, the FTC filed its initial complaint in this action. (Doc. 3.) That version of the complaint did not mention the VOZ Travel program. Instead, it focused on the Individual Defendants' operation of a different business, called Success By Health ("SBH"), which is an affiliate-marketing program that sells coffee products and other nutraceuticals through its online platform and network of affiliates. In a nutshell, the FTC alleged that SBH is a pyramid scheme that has also deceived affiliates through false income

claims.

At the same time it filed its complaint, the FTC moved for a temporary restraining order ("TRO"). (Doc. 8.) In its supporting memorandum, the FTC alluded to the VOZ Travel program in a footnote, stating that "Defendants started selling memberships in their next pyramid—'VOZ Travel'—in October 2019, once again promising life-changing income in return for exponential recruiting. VOZ purportedly offers up to 75% discounts on all forms of travel and follows the same model as Defendants' coffee business." (Doc. 8 at 43 n.9.)

On January 13, 2020, the Court substantially granted the FTC's motion for a TRO. (Doc. 19.) Pursuant to the TRO, the Court appointed a temporary receiver, Kimberly Friday ("the Receiver"), and authorized the Receiver to, among other things, "[a]ssume full control of Receivership Entities" and "[t]ake exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity." (*Id.* at 16.) The TRO defined the term "Receivership Entities" as encompassing both (1) the "Corporate Defendants," which was defined as encompassing "Success By Media Holdings Inc. and Success By Media LLC and each of their subsidiaries, affiliates, successors, and assigns," and (2) "any other entity that has conducted any business related to Defendants' marketing of programs, opportunities, or services offered by Success By Media, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Temporary Receiver determines is controlled or owned by any Defendant." (*Id.* at 4-5.) Effectively, this meant the Receiver was authorized to assume control over the VOZ Travel program, because it was a component of Success By Media and because it was owned or controlled by the Individual Defendants. (*See also* Doc. 82-1 at 18 [Receiver's first interim report, identifying VOZ Travel as one of the "operating 'vertical' business lines [within Success By Media] that do not involve SBH or its products"].)

On February 10, 2020, the FTC filed a memorandum in support of its request to convert the TRO into a preliminary injunction. (Doc. 81.) In this document, FTC provided

- 2 -

additional allegations concerning the VOZ Travel program: "The FTC previously identified this discount travel program, marketed as 'VOZ Travel,' as Defendants' next pyramid. Newly obtained evidence shows that consumers paid Defendants $971,450.23 for VOZ membership 'packs' from October through December 2019. At the same time, Defendants paid only $70,000 to furnish the service, which never became active. On January 6, 2020, the service provider expressed its intent to terminate the agreement with Success By Media, stating in part, '[i]t is apparent that [Success By Media] desires to engage in misrepresentations and other deceptive business practices.' Defendants continued to promote the service." (*Id.* at 5-6.) The memorandum went on to identify this "new evidence of fraud" as one reason to keep the TRO's asset freeze in place. (*Id.* at 20-21.)

On February 12, 2020, the Court held an evidentiary hearing on the FTC's preliminary injunction request. (Doc. 105.) During this hearing, the FTC again discussed the VOZ Travel program. (*Id.* at 24-25, 124-27.)

On February 27, 2020, the Court issued an order granting the FTC's request for a preliminary injunction. (Doc. 106.) Among other things, this order rejected the Individual Defendants' request to allow them to continue operating other business (apart from SBH) that were part of Success By Media, explaining that "these businesses are hopelessly entangled with SBH and observe no corporate formalities. There's no practical way to disaggregate them. Defendants chose not to observe any corporate formalities and to have all of the 'verticals' use the same bank account—that all of SBM must now be enjoined is the consequence of that choice." (*Id.* at 27.) The order also authorized the Receiver to continue in her role. (*Id.* at 29.)

On May 12, 2020, the Receiver issued a status report concerning her activities. (Doc. 139-1.) Among other things, the Receiver reported that the Receivership Entities' financial situation had deteriorated "largely due to the inclusion of $971,625.00 in liabilities based on income received from sales of the VOZ Travel Packs in the fourth quarter of 2019. As the FTC has noted, consumers paid for these 'membership packs' that

were supposed to include discounts on travel.  However, the program never became active, and the consumers' travel packs are currently worthless.  [The Receiver] has received requests for approximately $117,000 in refunds related to VOZ to date." (*Id.* at 12.)  The Receiver also reported that she might be able to recover VOZ-related assets on behalf of the Receivership Estate, by attempting to claw back a $70,000 payment that VOZ Travel had previously made to a vendor, but required more information to determine whether such a strategy would be wise:

> SBM paid Advantage Services $70,000 for the use of a travel platform for the VOZ Travel program.  The relationship between the parties deteriorated and the agreement was terminated in early January 2020 (prior to the TRO), before the platform was ever completed or used.  Advantage Services contends that an additional $10,000 is due under the contract, even though it was terminated before the travel platform became active.  At a minimum, the Receiver intends to dispute the $10,000 charge, and the Receiver will assess whether it is a good use of Receivership assets to pursue collection of some or all of the $70,000.  Assessment will likely entail a review of certain pre-TRO communications by company counsel.  The Receiver has not yet obtained access to the former counsel's company e-mail account, and intends to pursue this issue with counsel for the individual defendants.

(*Id.* at 13.)

On August 12, 2020, the Receiver issued another status report concerning her activities. (Doc. 179-1.)  Among other things, the Receiver reported that "[s]ince her last written report, the Individual Defendants have provided the Receiver with access to the company e-mail account of David Eisenstein, the company's former chief counsel, to assist with her assessment.  After reviewing the written agreements and the correspondence between the parties, the Receiver has determined that it is not a good use of Receivership assets to pursue collection of some or all of the $70,000 through a breach of contract action.  Advantage Services appears to have performed the duties required of it in the parties' contract, which states that payments are nonrefundable." (*Id.* at 7.)  The Receiver also reported that, since the last report, she had received an additional "$6,485.00 in refund requests related to the VOZ Travel product." (*Id.* at 10.)

On August 28, 2020, the FTC filed a motion for leave to file a second amended

complaint. (Doc. 182.) Specifically, the FTC sought permission to "expand the scope of the FTC's allegations to encompass Defendants' deceptive marketing of their 'VOZ Travel' pyramid scheme." (*Id.* at 1.) After the Individual Defendants chose not to oppose the motion (Doc. 202), it was granted (Doc. 204). Accordingly, the FTC's now-operative complaint, filed on September 23, 2020, includes allegations related to the VOZ Travel program. (Doc. 205.)

On October 8, 2020, the Individual Defendants filed the pending motion. (Doc. 213.)

On October 21, 2020, the FTC filed an opposition. (Doc. 219.)

On October 28, 2020, the Individual Defendants filed a reply. (Doc. 225.)

**DISCUSSION**

The Individual Defendants' motion is entitled "Motion to Allow the Individual Defendants to Fulfill VOZ Travel Commitments and Approval of TravelNU International." (Doc. 213.) It includes several different requests that are related, in one way or another, to the VOZ Travel program.

The first request concerns the $70,000 payment from VOZ Travel to Advantage Services. As discussed above, although the Receiver initially considered pursuing a legal action against Advantage Services in an attempt to recover that payment, she has now determined it would be unwise to do so. The Individual Defendants disagree with this decision and request authorization "to assume responsibility for collecting the fees." (*Id.* at 1.) In the alternative, the Individual Defendants ask that the Receiver be ordered to give them $70,000. (*Id.*)

This request will be granted in part and denied in part. Although the Court will not second-guess the Receiver's conclusion that it would be a poor use of the Receivership Entities' resources to attempt to recoup the $70,000 payment, it is difficult to see how any harm would arise from assigning this potential claim to the Individual Defendants so they may attempt to pursue it. In that scenario, any transaction costs and/or losses associated with pursuing the claim would be borne by the Individual Defendants, not the Receivership

Entities.

Second, the Individual Defendants ask the Court to approve their plan to create a new travel business called TravelNU International. (*Id.* at 2-3.) The Individual Defendants assert that TravelNU "will be the same program as VOZ Travel *sans* the multi-level aspects." (*Id.* at 3.) Notably, the Individual Defendants acknowledge that their pursuit of this new business would not require any modification of the preliminary injunction. (Doc. 225 at 1-2.) Instead, they simply wish "to get the court's imprimatur so [they] can proceed without fear that the FTC will drag this new unrelated business activity into this case." (Doc. 219 at 3.)

This request will be denied. TravelNU International is a nonexistent business whose hypothetical activities are not the subject of any case or controversy. Any "approval" given by this Court would therefore amount to an improper advisory opinion. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."). There is nothing the Court can or would do to prevent the Individual Defendants from legally earning income in a way that does not violate the preliminary injunction, but the Court will not opine *ex ante* on the legality of a hypothetical business arrangement summarized by counsel in two pages of a motion. *See, e.g.*, *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").

…
…
…
…
…
…

Accordingly, **IT IS ORDERED** that the Individual Defendants' motion (Doc. 213) is **granted in part and denied in part**. The Individual Defendants' counsel and the Receiver shall work together to arrange for the assignment of the Receivership Entities' potential $70,000 claim against Advantage Services.

Dated this 13th day of November, 2020.

Dominic W. Lanza
United States District Judge