**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

Pending before the Court is a motion to stay filed by Defendants James Noland, Lina Noland, Scott Harris, and Thomas Sacca (collectively, the "Individual Defendants"). (Doc. 220.)   The Individual Defendants argue this case should be stayed pending the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, No. 19-508.  For the following reasons, the motion will be denied.

**BACKGROUND**

I.    Legal Backdrop

This case involves an enforcement action brought by the Federal Trade Commission ("FTC") under the Federal Trade Commission Act ("FTC Act" or the "Act").  Among other things, the FTC Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1). The Act contains, as relevant here, two provisions that vest the FTC with authority to seek relief in federal court.  First, § 13(b) empowers the FTC to seek injunctive relief to prevent ongoing or future FTC Act violations.  *Id.* § 53(b).  The Ninth Circuit has interpreted this

provision as permitting "district courts to grant any ancillary relief necessary to accomplish complete justice, including restitution." *FTC v. AMG Cap. Mgmt., LLC*, 910 F.3d 417, 426 (9th Cir. 2018). Second, § 19 empowers the FTC to seek relief when a party violates a specific FTC administrative rule or cease-and-desist order. 15 U.S.C. § 57b(a). If the FTC brings a civil action based on such violations, § 19 expressly provides that the court may grant relief including, but not limited to, "rescission or reformation of contracts, the refund of money or return of property, [and] the payment of damages." *Id.* § 57b(b).

In recent years, a controversy has developed concerning the availability of monetary remedies under § 13(b). In *AMG Capital*, a Ninth Circuit panel reaffirmed longstanding Circuit precedent that the FTC may seek monetary remedies under § 13(b). 910 F.3d at 426-27. However, Judge O'Scannlain, joined by Judge Bea, filed a concurring opinion expressing disagreement with the Ninth Circuit's "unfortunate interpretation" of the FTC Act. *Id.* at 429 (O'Scannlain, J., concurring). The concurrence reasoned that the statute's text, as well as a line of Supreme Court precedent addressing the scope of equitable relief available under other statutory regimes, foreclosed any interpretation of § 13(b) that would permit monetary remedies. *Id.* at 429-37.

Most other Circuits take the same approach as the Ninth Circuit, concluding that § 13(b) permits monetary remedies. *See, e.g.*, *FTC v. Ross*, 743 F.3d 886, 890-91 (4th Cir. 2014); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468-70 (11th Cir. 1996); *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-15 (8th Cir. 1991). However, the Third and Seventh Circuits recently held otherwise. In 2019, the Seventh Circuit overruled its earlier precedent and held that § 13(b) "does not authorize monetary relief." *FTC v. Credit Bureau Center*, 937 F.3d 764, 786 (7th Cir. 2019). Similar to the concurrence in *AMG Capital*, the court reasoned that the text of § 13(b) and the Supreme Court's evolving case law on implied remedies indicated that its prior understanding of § 13(b) was incorrect. *Id.* at 771-86. Earlier this year, the Third Circuit came to the same conclusion. *FTC v. AbbVie Inc.*, 976 F.3d 327, 375-79 (3d Cir. 2020).

The Supreme Court has now granted certiorari to review the Ninth Circuit's decision

1    in *AMG Capital*.  *AMG Cap. Mgmt., LLC v. FTC*, No. 19-508.[1]  The question presented is

2    "[w]hether § 13(b) of the Act, by authorizing 'injunction[s],' also authorizes the

3    Commission to demand monetary relief such as restitution - and if so, the scope of the

4    limits or requirements for such relief."  *Question Presented*, *AMG Cap. Mgmt., LLC v.*

5    *FTC*, No. 19-508, https://www.supremecourt.gov/qp/19-00508qp.pdf.   Oral argument is

6    scheduled for January 13, 2021.  Until a decision issues, courts in the Ninth Circuit remain

7    bound by *AMG Capital*'s reaffirmation that § 13(b) authorizes the FTC to seek monetary

8    relief.  *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court

9    issues a decision, the district courts within that circuit are bound to follow it and have no

10   authority to await a ruling by the Supreme Court before applying the circuit court's

11   decision as binding authority . . . .").

12   II.   Factual And Procedural History

13          The background of this case is set out more fully in the Court's February 27, 2020

14   order granting the FTC's preliminary injunction motion.  (Doc. 106.)  In a nutshell, the

15   FTC alleges that the Individual Defendants operated an illegal pyramid scheme.  (*Id.* at 1-

16   6.)  The allegations focus on the activity of one enterprise in particular, Success by Health

17   ("SBH"), but the FTC's allegations implicate a group of related entities and individuals,

18   including Success by Media Holdings Inc., Success by Media LLC, Enhanced Capital

19   Funding, Rinpark SA, and the Individual Defendants.  (Doc. 205.)

20          On January 8, 2020, the FTC filed a complaint seeking a permanent injunction and

21   other equitable relief.  (Doc. 3.)  That same day, the FTC filed an *ex parte* motion for a

22   temporary restraining order ("TRO") with an asset freeze and the appointment of a

23   temporary receiver.  (Docs. 7, 8.)

24          On January 13, 2020, the Court granted the TRO motion in significant part,

25   instituting an asset freeze and appointing a receiver.  (Doc. 19.)

26          On January 17, 2020, the FTC filed a motion for an order to show cause why James

27

28   [1]     The Supreme Court also granted certiorari to review *Credit Bureau* in consolidation
     with *AMG Capital* but later vacated the grant of certiorari with respect to *Credit Bureau*.
     *FTC v. Credit Bureau Ctr.*, No. 19-825, 2020 WL 6551765 (2020).

Noland, Success by Media Holdings Inc., and Success by Media LLC should not be held in contempt for violating a permanent injunction issued in 2002 as part of a different FTC enforcement action against Mr. Noland. *FTC v. Netforce Seminars*, No. 2:00-cv-02260, Doc. 74.  On April 10, 2020, the FTC filed a motion for an order to show cause why two of the other individual defendants, Scott Harris and Thomas Sacca, should not be held in contempt for violating the same court order. *Id.*, Doc. 91.  These contempt motions are on hold pending the resolution of this case. *Id.*, Doc. 101.

On February 27, 2020, after briefing and oral argument, the Court granted the FTC's motion for a preliminary injunction and authorized the continuation of the asset freeze and receivership.  (Doc. 106.)

On September 23, 2020, the FTC filed a second amended complaint ("SAC") adding two additional corporate Defendants, Enhanced Capital Funding and Rinpark SA, and additional allegations involving the "VOZ Travel" program, another of the Defendants' enterprises.  (Docs. 182-2, 204, 205.)

The SAC alleges six counts.  Counts I-III are brought under § 5 of the FTC Act, which as noted prohibits "unfair or deceptive acts or practices in or affecting commerce." (Doc. 205 ¶¶ 156-64.)  Count I alleges that Defendants operated an illegal pyramid scheme, Count II alleges that Defendants misrepresented how much income could be earned by participating in their businesses, and Count III alleges that by providing participants with promotional materials and instructions to be used in the recruitment of new members, "Defendants have provided the means and instrumentalities for the commission of deceptive acts and practices."  (*Id.* ¶¶ 158-64.)

Counts IV-VI, by contrast, allege violations of specific FTC rules as well as general violations of § 5.  (*Id.* ¶¶ 165-81.)  Counts IV and V allege the Defendants violated the Merchandise Rule, 16 C.F.R. pt. 435, by failing to ship orders within the required timeframe, and then not offering customers an opportunity to consent to the delay or cancel the order, and also by not actually cancelling the order or providing a refund.  (*Id.* ¶¶ 165-73.)  Count VI alleges violations of the Cooling-Off Rule, 16 C.F.R. pt. 429, by failing to

notify purchasers of their right to cancel qualifying transactions.  (*Id.* ¶¶ 174-81.)  The FTC asserts that these specific rule violations also constitute unfair or deceptive acts or practices under § 5.

The scope of remedies available for Counts I-III is entirely determined by § 13(b).  The FTC asserts that § 13(b) allows the Court to "award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies" to prevent and remedy the violations.  (*Id.* ¶ 183.)  On the other hand, because Counts IV-VI allege violations of FTC rules as codified in the Code of Federal Regulations, § 19 remedies are available for these counts, including "rescission or reformation of contracts, the refund of money or return of property," and "payment of damages."  15 U.S.C. § 57b(b).  The FTC asserts that these violations also constitute more general unfair or deceptive trade practices outlawed by § 5, also triggering § 13(b).  (Doc. 205 ¶¶ 171, 178, 181.)  Altogether, the FTC requests that the Court issue a permanent injunction and award ancillary relief including "rescission or reformation of contracts, restitution, the refund of monied paid or return of property, the payment of damages, and the disgorgement of ill-gotten monies."  (*Id.* at 49-50.)  The FTC's position, which is consistent with Ninth Circuit precedent as explained above, is that such remedies are available under § 13(b) or § 19.  The FTC therefore does not distinguish which forms of relief it seeks under which counts.  (*Id.*)

On October 21, 2020, the Individual Defendants moved to stay this action.  (Doc. 220.)  They argue a stay is warranted because the Supreme Court's decision in *AMG Capital* will determine "whether the FTC has the power to claim the relief it has demanded here."  (*Id.* at 4.)  They also contend that if the Supreme Court agrees with the Seventh and Third Circuits and the Ninth Circuit *AMG Capital* concurrence, "the FTC will have to proceed under a different legal standard."  (*Id.*)  The motion to stay thereafter became fully briefed.  (Docs. 227, 228, 230.)

…

…

- 5 -

1

**ANALYSIS**

2    "[T]he power to stay proceedings is incidental to the power inherent in every court

3    to control the disposition of the causes on its docket with economy of time and effort for

4    itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

5    Nonetheless, "while it is the prerogative of the district court to manage its workload, case

6    management standing alone is not necessarily a sufficient ground to stay proceedings."

7    *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir.

8    2007).  When determining whether to issue a *Landis* stay, courts must weigh "competing

9    interests," which include "the possible damage which may result from the granting of a

10   stay, the hardship or inequity which a party may suffer in being required to go forward,

11   and the orderly course of justice measured in terms of the simplifying or complicating of

12   issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*

13   *v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300

14   F.2d 265, 268 (9th Cir. 1962)).  *See also Percy v. United States*, 2016 WL 7187129, *2 (D.

15   Ariz. 2016).   "The party requesting a stay bears the burden of showing that the

16   circumstances justify an exercise of that discretion."  *Nken v. Holder*, 556 U.S. 418, 433-

17   434 (2009).  "If there is even a fair possibility that the stay will work damage to someone

18   else, the party seeking the stay must make out a clear case of hardship or inequity." *Percy*,

19   2016 WL 7187129 at *2.

20       When discussing the need (or lack thereof) for a stay, the parties offer differing

21   views about how the Supreme Court's resolution of *AMG Capital* will affect this action.

22   The Individual Defendants argue that if the Supreme Court adopts the reasoning of the

23   Seventh and Third Circuits and concludes that § 13(b) only allows injunctive relief (and

24   not ancillary monetary relief), the issues in this case will be dramatically simplified.  (Doc.

25   220 at 5.)  They assert that if the FTC can't recover monetary penalties, much of the reason

26   for the lawsuit will evaporate and the case will likely settle.  (Doc. 230 at 3-4.)  They also

27   argue that the Supreme Court's interpretation of § 13(b) will likely alter the legal standard

28   the FTC must meet to prove liability.  (Doc. 220 at 5.)

- 6 -

1    The FTC contends that even if *AMG Capital* is decided on terms favorable to the

2    Individual Defendants, it will still be able to seek a permanent injunction on all counts and

3    will still be able to seek monetary relief on Counts IV-VI.  (Doc. 228 at 10-12.)  The FTC

4    also points to the parallel contempt action, which has been stayed pending the outcome of

5    this case, arguing that if the Court determines in this case that James Noland, Scott Harris,

6    and Thomas Sacca violated the FTC Act, it will be able to seek money damages based on

7    the violation of the permanent injunction entered in 2002.  (*Id.* at 3-4, 10.)  Finally, the

8    FTC asserts that it has an interest in adjudicating the Individual Defendants' liability for

9    their allegedly unfair and deceptive practices.  (*Id.* at 2, 8, 10-12.)

10   On this key threshold issue, the FTC's arguments are more persuasive.  The

11   Supreme Court's *AMG Capital* decision may have important consequences for the scope

12   of remedies available in this case.  But that is all.  The sole question presented in *AMG*

13   *Capital* is whether § 13(b) authorizes monetary relief, and if so, the limits or requirements

14   for such monetary relief.  Thus, whatever the Supreme Court decides with respect to

15   § 13(b), § 19 relief will remain untouched.  As noted, three of the six counts in this case

16   assert violations that trigger § 19 remedies.  Further, the FTC may still seek monetary relief

17   through the contempt action, regardless of the outcome of *AMG Capital*.  *McComb v.*

18   *Jacksonville,* 336 U.S. 187, 193 (1949) ("We have no doubts concerning the power of the

19   District Court to order respondents, in order to purge themselves of contempt, to pay the

20   damages caused by their violations of the decree.").  *See also Int'l Union, United Mine*

21   *Workers v. Bagwell*, 512 U.S. 821, 826-30 (1994) (describing different forms of contempt

22   sanctions, including coercive or punitive detention and civil and criminal fines).  Thus, the

23   Individual Defendants are incorrect in suggesting that if the Supreme Court rules against

24   the FTC in *AMG Capital*, the FTC will have no basis to pursue this action.

25   With this understanding of *AMG Capital* in mind, the Court considers whether it is

26   appropriate to stay these proceedings pending the Supreme Court's ruling.  Since the

27   Supreme Court granted review in *AMG Capital*, courts have split on whether a stay is

28   appropriate in FTC enforcement actions.  Some courts have issued stays where fact

discovery already concluded, where trial was imminent, or where § 13(b) was the sole basis for the FTC's sought-after relief.  In *FTC v. Lending Club Corp.*, for example, the court stayed proceedings pending the resolution of *AMG Capital* where the action was brought solely under § 13(b), discovery had closed, and trial was two months away.  2020 WL 4898136, *1-4 (N.D. Cal. 2020).  *See also McNamara v. Patten*, 2020 WL 5534262, *1 (D. Nev. 2020) (issuing a stay where "[f]act discovery has closed; witnesses have been deposed and documents have been exchanged") (alteration in original).

Other courts, facing circumstances similar to those present here, have denied motions to stay.  In *FTC v. Hornbeam Special Situations, LLC*, the close of fact discovery was weeks away and the FTC had brought its action under both § 13(b) and § 19.  2020 WL 5492991, *1 (N.D. Ga. 2020).  The court concluded that a stay was not warranted because "remaining fact discovery, determinations of liability (whether on dispositive motions or through trial), and determinations of appropriate conduct restrictions" would be untouched by *AMG Capital*.  *Id.* at *3.  Thus, a stay would "not significantly streamline" the case.  *Id.*  The court was also concerned that a stay would "significantly increase[] the risk that witnesses will become less available and memories will fade."  *Id.*  Similarly, in *FTC v. Zurixx, LLC* the FTC and the Utah State Consumer Protection division brought claims under § 13(b), § 19, and state consumer protection laws.  2020 WL 6898341, *4-5 (D. Utah 2020).  The court reasoned that a stay was not warranted because "*AMG* does not meaningfully simplify the case, it impacts only one type of monetary relief.  Regardless of how *AMG* is decided, Plaintiffs need discovery to establish liability, to determine the scope of the permanent injunction, and to assess consumer redress and other relief under Section 19 and the applicable Utah statutes."  *Id.* at *4.  The court acknowledged that *AMG Capital* "will certainly clarify the issue . . . relating to what equitable monetary relief is available under Section 13(b)."  *Id.* at *5.  But, such clarification did not outweigh the need for discovery to proceed apace.  *Id.  See also FTC v. On Point Glob., LLC*, 2020 WL 5819809, *1-5 (S.D. Fla. 2020) (denying stay).

For reasons analogous to those given in *Hornbeam* and *Zurixx*, a stay is not

appropriate in this case.  The Court first considers "the possible damage which may result from the granting of a stay."  *Lockyer*, 398 F.3d at 1110.  There are at least two reasons a stay may result in damage here.  First, "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale."  *Blue Cross & Blue Shield v. United Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007) (internal quotation marks omitted).  Although a stay in this instance would not be for a long duration, the FTC has fairly articulated reasons to be concerned about memories fading and evidence becoming stale or being lost.  Indeed, it recently came to light that the Individual Defendants destroyed potentially relevant evidence stored on their cell phones.  (Doc. 228-2 at 17-23; Doc. 230 at 2.)   The concern of loss of evidence in this case is therefore far from hypothetical or conclusory.  *Compare On Point Glob.*, 2020 WL 5819809 at *4 ("The FTC argues that a stay, which would extend through June 2021, would impede discovery in this case and would increase the risk of evidence being lost or destroyed.  While this may hypothetically be the case, the Court finds the FTC's argument conclusory because the FTC does not identify any specific evidence that will be spoliated.") (citations and internal quotation marks omitted).

Second, the Receiver filed a statement opposing the stay, asserting that the Receivership Estate is not profitable and "the likelihood of being able to turn over an existing business—or significant assets—will decrease as more time passes."  (Doc. 227 at 2.)  Although this concern is not dispositive, it indicates "a fair possibility that the stay will work damage to someone else," and thus further counsels against granting a stay.  *Percy*, 2016 WL 7187129 at *2.

The Court next weighs "the hardship or inequity which a party may suffer in being required to go forward."  *Lockyer*, 398 F.3d at 1110.  The Individual Defendants argue that going forward "would needlessly burden the individual defendants with putting on a trial defense . . . only to possibly have the entire enterprise mooted by the upcoming Supreme Court decision."  (Doc. 220 at 5.)  They argue that being required to put on a defense "is fundamentally inequitable" when "[t]he legality of the FTC's remedy and the proper legal

standard for determining liability are the very things being decided by the Supreme Court." (*Id.*)

This argument lacks merit.  As explained above, *AMG Capital* does not threaten to moot "the entire enterprise" of this lawsuit.  Liability, the issuance and scope of a permanent injunction, and § 19 relief will remain at issue regardless of *AMG Capital*'s outcome.  This action is thus unlike other cases where the anticipated Supreme Court decision might foreclose the plaintiff's standing or have a dispositive effect on a pending motion.  *See, e.g.*, *Larson v. Trans Union, LLC*, 2015 WL 3945052, *8 (N.D. Cal. 2015) ("A decision . . . reversing the Ninth Circuit would . . . raise serious questions regarding Larson's ability to establish his own individual standing, as well as the predominance and superiority requirements necessary to certify and maintain a class action under Rule 23(b)(3)."); *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, *4 (N.D. Cal. 2017) ("It is not an oversimplification to state that if the Supreme Court upholds the Ninth Circuit's decision . . . the Plaintiffs have the stronger case against compelling arbitration.  However, if the Supreme Court reverses the Ninth Circuit . . . Randstad has a strong likelihood of prevailing on its motion to compel arbitration.").

Further, as the Individual Defendants acknowledge, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity."  *Lockyer*, 398 F.3d at 1112 (internal quotation marks omitted).  Here, the Individual Defendants' purported harm amounts to being required to defend against the suit.  But this lawsuit encompasses claims that will not be affected by *AMG Capital*, and thus a stay would create delay without obviating the need to conduct discovery, litigate dispositive motions, or ultimately proceed to trial.

Finally, the Court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Lockyer*, 398 F.3d at 1110.  As noted, the resolution of *AMG Capital* will have a limited impact on the issues in this case: it will provide guidance on the extent to which monetary remedies are available under § 13(b) but will not address liability, the

propriety and scope of a permanent injunction, monetary remedies under § 19, or what remedies are available should the FTC eventually prevail in the parallel contempt action.

Under this factor, a court may take into consideration the conservation of judicial resources and the efficient management of its own docket. *Id.* at 1111. But these concerns do not weigh in favor of a stay in this instance. The deadline for fact discovery is December 23, 2020. (Doc. 211.) Expert depositions will not be concluded until February 26, 2021. (*Id.*) The deadline for dispositive motions is March 12, 2021 and dispositive motion briefing, if any, will not be concluded until late April 2021. (*Id.*) Seven days after the resolution of the dispositive motions, if any—or seven days after the March 12, 2021 deadline if no dispositive motions are filed—the FTC will be required to file and serve notice that the parties are ready to schedule a Final Pretrial Conference. (Doc. 142 ¶ 13.) Only then will the Court set deadlines for briefing motions *in limine*, and only at the Final Pretrial Conference will the Court set the trial date. (*Id.*) On this schedule, a trial before August 2021, at the very earliest, is unlikely. The Supreme Court's decision in *AMG Capital* will therefore almost certainly be available before remedies are at issue in this case. Thus, considerations of judicial economy do not weigh in favor of granting a stay. *Cf. Hornbeam*, 2020 WL 5492991 at *3 ("[I]f the Supreme Court issues a ruling in the Consolidated Appeals prior to the conclusion of this matter, which is reasonably likely, and that ruling impacts the scope of availably monetary relief, the parties can raise that issue with the Court at that time."); *Percy*, 2016 WL 7187129 at *2 ("If it is true that [the Supreme Court decision] will be decided any day now, it . . . can be addressed in the parties' briefs or, if necessary, in short order through supplemental briefs. [The other decision] can also be considered if it is decided during the pendency of this case, and, if it is not decided, this case will not have been delayed in the meantime.").

…

…

…

…

Accordingly,

**IT IS ORDERED** that the Individual Defendants' motion to stay proceedings (Doc. 220) is **denied**.

Dated this 3rd day of December, 2020.

Dominic W. Lanza
United States District Judge
