**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

Nonparties Jeffrey and Amber Wright (collectively, "the Wrights") seek to quash a subpoena pursuant to the Right to Financial Privacy Act of 1978 ("RFPA"). (Doc. 234.) For the following reasons, the motion will be denied.

## BACKGROUND

The background of this case is set out more fully in the Court's February 27, 2020 order. (Doc. 106.) In a nutshell, the FTC alleges that Defendants operated Success by Health ("SBH") and related enterprises as an illegal pyramid scheme. (*Id.* at 1-6, 26-27.)

On January 8, 2020, the FTC filed a complaint seeking a permanent injunction and other equitable relief against Defendants. (Doc. 3.) That same day, the FTC filed an *ex parte* motion for a temporary restraining order ("TRO") with an asset freeze and the appointment of a temporary receiver. (Docs. 7, 8.) On January 13, 2020, the Court granted the TRO, including the asset freeze, the appointment of a receiver, and other forms of relief. (Doc. 19.) On February 27, 2020, after briefing and oral argument, the Court granted a preliminary injunction providing for, *inter alia*, the continuation of the asset freeze and the

repatriation of assets located abroad. (Docs. 106, 109.)

The parties are currently engaged in fact discovery, which is set to close on December 23, 2020. (Doc. 211.)

On November 10, 2020, the FTC mailed a package to the Wrights that included subpoenas to the Wrights and an RFPA notice stating that the FTC sought to subpoena America First Credit Union ("America First") for information concerning the Wrights' financial accounts. (Doc. 234, Ex. 1; Doc. 237-2 at 1.)

On November 20, 2020, the Wrights filed a motion to quash the America First subpoena under the RFPA. (Doc. 234.) On November 25, 2020, the FTC filed a response. (Doc. 237.)[1] On December 7, 2020, the Wrights filed a reply. (Doc. 246.) On December 10, 2020, the FTC filed an unauthorized sur-reply (Doc. 247), which the Court did not consider when ruling on the motion.

**DISCUSSION**

I.   Legal Standard

The RFPA authorizes the government to subpoena financial institutions for records in their possession if certain requirements are met. 12 U.S.C. § 3402(4). The subpoena must be "authorized by law" and there must be "reason to believe that the records sought are relevant to a legitimate law enforcement inquiry." *Id.* § 3407(1). Also, a copy of the subpoena must be "served upon the [financial institution's] customer or mailed to his last known address" on or before the date of service of the subpoena alongside a notice stating "with reasonable specificity the nature of the law enforcement inquiry." *Id.* § 3407(2).

The RFPA allows the customer to file a motion to quash the subpoena within ten days of service or fourteen days of mailing of the subpoena. *Id.* § 3410(a). When deciding whether to grant the motion, the court considers three questions: "(1) [i]s there a legitimate law enforcement inquiry; (2) are the subpoenaed bank records relevant to the inquiry; and (3) has the government agency complied with the requirements of the RFPA?" *In re*

---

[1] Ordinarily, the court first determines whether the customer's motion to quash complies with the RFPA, and, if so, the court "shall order the Government authority to file a sworn response." 12 U.S.C. § 3410(b). Here, the FTC filed its response without being ordered to do so.

*Blunden*, 896 F. Supp. 996, 999 (C.D. Cal. 1995) (citations and internal quotation marks omitted). "The court must deny the motion if 'there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry.'" *Gewerter v. SEC*, 2016 WL 4074117, *1 (D. Ariz. 2016) (quoting 12 U.S.C. § 3410(c)). "The ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry is on the government." *Neuhaus v. SEC*, 2007 WL 1322340, *3 (E.D. Cal. 2007) (internal quotation marks omitted).

II.     Analysis

The Wrights do not dispute that the FTC's law enforcement inquiry is legitimate. The Court therefore assesses the relevance of the sought-after records and the FTC's compliance with the RFPA's procedural requirements.

A.     **Relevance**

The Wrights argue that the America First records are not relevant because (1) they are not parties; (2) their records contain "personal, private and confidential" information; and (3) the FTC's subpoena constitutes "blatant overreach and harassment" that imposes "burdensome requirements for no apparent reason other than to torment and badger." (Doc. 234.) None of these contentions have merit.

First, the Wrights' status as nonparties is irrelevant. The government's power to subpoena financial records under the RFPA is not limited to parties to an action. 12 U.S.C. § 3402 (applying the RFPA to "the financial records of any customer from a financial institution"). *See also FTC v. Kutzner*, 2016 WL 9282403, *3-4 (C.D. Cal. 2016) (denying non-party's motion to quash under the RFPA); *United States v. Allen*, 2020 WL 1034395, *4-7 (D. Ariz. 2020) (same), *report and recommendation adopted*, 2020 WL 1033269 (D. Ariz. 2020); *United States v. Lamont*, 2020 WL 4365916, *3 (D. Ariz. 2020) (same).

Second, the Wrights' belief that their bank records are "personal, private and confidential" does not bear on the analysis. The RFPA specifically provides that such records may be subpoenaed so long as the government meets the statutory requirements.

12 U.S.C. § 3402(4); *Blunden*, 896 F. Supp. at 999 ("[RFPA] was, in large part, passed in response to the decision in *United States v. Miller*, 425 U.S. 435 [(1976)], where the Supreme Court held that bank customers have no reasonable expectation of privacy, under the Fourth Amendment, in bank records of their accounts.").

Third, the FTC has established that the sought-after information is relevant. "[T]he standard for meeting the relevance requirement—as set out in the language of 12 U.S.C. § 3410(c)—is not stringent." *Kutzner*, 2016 WL 9282403 at *3. The FTC need only show that it has "a reasonable belief that the records sought are relevant" to its inquiry. 12 U.S.C. § 3410(c). *See also Rosiere v. SEC*, 2010 WL 489526, *3 (D. Nev. 2010) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one . . . . So long as the material [sought by the subpoena] touches on a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant.") (alterations in original) (internal quotation marks omitted); *Neuhaus*, 2007 WL 1322340 at *3 ("[T]he SEC's burden is not a heavy one.").

The FTC has met this low bar. The FTC alleges, based on documents and records it has discovered, that the Wrights, who are married to each other, have a close personal and professional relationship with defendant Jay Noland and that this relationship has involved various financial transactions that may have been in violation of the preliminary injunction's asset freeze and foreign asset repatriation requirements. (Doc. 109 at 5, 9-10; Doc. 237 at 2-7; Doc. 237-1.) In particular, the FTC alleges that Jeffrey Wright performed work for SBH starting in 2018 in a variety of roles, including helping to formulate new SBH products, answering medical questions on SBH's Facebook page, and writing articles. (Doc. 237-1 at 13-20.) He also served on "the executive team" of SBH as its "Scientific/Medical Board Member." (Doc. 8-7 at 8.) He participated in a variety of in-person and virtual events to promote SBH products and offered trainings to SBH sales affiliates. (Doc. 237-1 at 5-6.) Amber Wright assisted with these efforts on SBH's Facebook group. (*Id.* at 6.) The Wrights were also SBH affiliates, purchasing large amounts of SBH products and earning over $16,000 in commissions. (*Id.* at 4, 24-25.)

Since the entry of the preliminary injunction in this case, the Wrights have started a new company that markets products that appear to be similar to those previously marketed by SBH. (*Id.* at 9-11, 47-52, 57-60.)

Of even greater relevance, the FTC alleges that in September 2019 Jeffrey Wright loaned one of Jay Noland's entities nearly $100,000 to purchase a car and furniture in Uruguay and that the Wrights accompanied Noland on a trip to Uruguay. (Doc. 187-1 at 3, 8-11; Doc. 237 at 4-5; Doc. 237-1 at 24, 67.) The FTC further alleges that since the entry of the TRO, the Wrights have used their America First account to transfer funds to Jay Noland's creditors and other Defendants' spouses. (Doc. 163-1 at 53-59, 61-64; Doc. 237-1 at 9.)[2]

The FTC's proffered evidence demonstrates that the FTC has a reasonable basis for believing that the information sought in the America First subpoena is relevant to its investigation in this case. In particular, the FTC has established a reasonable belief that the information may relate to compliance or noncompliance with the preliminary injunction's asset freeze and foreign asset repatriation provisions. This satisfies the RFPA's relevance requirement. *Cf. Kutzner*, 2016 WL 9282403 at *4 ("[T]he Court finds that the FTC is engaged in legitimate law enforcement activity, namely discovery to determine compliance with the court-ordered asset freeze. The Court further finds that the FTC has shown a reasonable relief that the records sought by its subpoenas are relevant to its legitimate investigation.").

B. **Procedural Requirements**

The Wrights argue that the FTC failed to comply with the RFPA's procedural requirements because they "still have not been legally served with the subpoena so the ten day right to quash should not have started yet." (Doc. 234.)

This argument is without merit. The RFPA provides that the government may subpoena a financial institution if a copy of the subpoena is "*mailed* to [the customer's]

---

[2] The Wrights' reply provides, without sworn affidavits or documentary evidence, potential explanations for these transactions and for other allegations in the FTC's response. (Doc. 246.) But even accepting these explanations as true, nothing in the Wrights' reply alters the analysis with respect to relevance under the RFPA.

last known address" alongside a notice of the subpoena that specifies the nature of the law enforcement inquiry and the method of objecting to the subpoena.  12 U.S.C. § 3407(2) (emphasis added).  The materials attached to the Wrights' motion demonstrate that the FTC did mail a copy of the subpoena and the required notice.  (Doc. 234, Ex. 1.)  Aside from the conclusory allegation that they have "not been legally served," the Wrights have not offered any other basis to conclude that the FTC failed to comply with the RFPA's procedural requirements.

Accordingly,

**IT IS ORDERED** that the Wrights' motion to quash (Doc. 234) is **denied**.

Dated this 10th day of December, 2020.

_____
Dominic W. Lanza
United States District Judge