WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

Pending before the Court is Defendant Rinpark SA's ("Rinpark") motion to dismiss for lack of personal jurisdiction or, alternatively, for a more definite statement. (Doc. 221.) For the following reasons, the motion is granted.

**RELEVANT BACKGROUND**

The parties are familiar with the facts and history of this case, which are set out in earlier orders. In a nutshell, this case concerns the business activities of Success By Health ("SBH"), which is "an affiliate-marketing program that sells coffee products and other nutraceuticals through its online platform and network of affiliates." (Doc. 106 at 1-2.) The defendants include Jay Noland, Lina Noland, Thomas Sacca, and Scott Harris (together, the "Individual Defendants"), who are affiliated with SBH in various capacities, as well as Success By Media Holdings Inc. ("SBM Holdings"), of which SBH is an unincorporated division, and Success By Media LLC ("SBM LLC"), which did business as SBH. (*Id.* at 6.)

On January 8, 2020, the Federal Trade Commission ("FTC") initiated this action.

(Doc. 3.) Among other things, the FTC alleges that SBH is an illegal pyramid scheme and that the Individual Defendants made false statements to SBH's affiliates. (*Id.*)

That same day, the FTC moved for an *ex parte* temporary restraining order ("TRO") (Docs. 7, 8), which the Court substantially granted (Docs. 19, 38).[1] The TRO remained in place until the Court granted the FTC's motion for a preliminary injunction, which is currently in place. (Doc. 106.)

On August 28, 2020, the FTC filed a motion for leave to file a second amended complaint ("SAC"). (Doc. 182.) The only proposed changes of substance were to add two defendants, Rinpark and Enhanced Capital Funding ("ECF"), and to add allegations concerning the "Voz Travel" program. (Doc. 182-2.) With respect to Rinpark, the FTC stated as follows:

> Rinpark SA ("Rinpark") is a Uruguayan corporation doing business as "SBM International." Jay Noland formed Rinpark in October 2019. Rinpark had no bank account or office space of its own, and instead shared funds and office space with its proposed co-Defendants. Defendants referred to the Uruguay office from which SBM International operated as Success By Media LLC's "international corporate office."

(Doc. 182 at 3, citations omitted.) The FTC explained that it wished to add Rinpark as a defendant because it, along with the other proposed new defendant (ECF), "blurred corporate formalities to join in Success By Media LLC and Success By Media Holdings Inc.'s fraud." (*Id.* at 2.)

On September 21, 2020, the Individual Defendants filed a notice of non-opposition to the FTC's motion for leave to amend. (Doc. 202.) Accordingly, the motion was granted. (Doc. 204.)

On September 23, 2020, the FTC filed the SAC. (Doc. 205.) In paragraph 14, the SAC alleges that Rinpark "operated as a common enterprise" with co-defendants SBM Holdings, SBM LLC, and ECF (together, the "Domestic Entity Defendants"), that Rinpark "commingled funds" with the Domestic Entity Defendants, and that Rinpark "ha[s] or had

---

[1] The TRO was later amended. (Docs. 20, 21.) The final, unsealed version of the TRO was filed on January 17, 2020. (Doc. 38.)

- 2 -

common ownership, officers, managers, business functions, and office locations" with the Domestic Entity Defendants. And in paragraphs 150-154, the SAC includes more specific allegations on these topics, including that Rinpark "had no employees or independent contractors of [its] own"; that Rinpark had "no bank accounts of [its] own"; that Rinpark's "operations were funded solely by" some of the Domestic Entity Defendants; that Rinpark shared its office space in Uruguay with some of the Domestic Entity Defendants, which paid for the lease and furnishings; that Rinpark used the trade dress belonging to one of the Domestic Entity Defendants when placing a job advertisement for an assistant position; and that Mr. Noland once referred to Rinpark as a Domestic Entity Defendant's "international corporate office." Finally, in paragraph 155, the SAC alleges the Nolands transferred more than $300,000 to Uruguay between August 2019 and January 2020.

On October 23, 2020, Rinpark filed a motion to dismiss for personal jurisdiction or, alternatively, for a more definite statement. (Doc. 221.)

On November 23, 2020, the FTC filed an opposition to Rinpark's motion. (Doc. 233.) Rinpark did not file a reply.

On January 14, 2021, the Court issued a tentative ruling. (Doc. 255.)

On January 26, 2021, the Court heard oral argument. (Doc. 257.)

## DISCUSSION

A.  Legal Standard

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation and internal quotation marks omitted). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citations and internal quotation marks omitted). "[U]ncontroverted allegations must be taken as true, and [c]onflicts between parties over statements contained in affidavits must be resolved in

the plaintiff's favor," but "[a] plaintiff may not simply rest on the bare allegations of [the] complaint." *Id.* (second alteration in original) (citations and internal quotation marks omitted).

B.  The Parties' Arguments

Rinpark argues it is entitled to dismissal under Rule 12(b)(2) because "there is no allegation that Rinpark ever did anything in the United States that would subject it to personal jurisdiction, just conclusory allegations that it was engaged in a common enterprise with other defendants in this case, and its alter-egos, plural, Jay Noland, Success By Media, SBM Holdings, and Enhanced Capital Funding." (Doc. 221 at 1.) Although Rinpark acknowledges that a showing of an alter-ego relationship between a domestic and foreign defendant may justify the exercise of personal jurisdiction over the foreign defendant, it contends that the allegations in the SAC are insufficient to establish an alter-ego relationship because they merely establish "total ownership and shared management" and do not establish that "Rinpark acted as the instrumentality for fraud on behalf of the other defendants." (*Id.* at 3-4.) Rinpark also emphasizes that it was not formed until October 2019 and "[w]hatever it did between October and this lawsuit, about three months, is unknown because there is no allegation giving this detail." (*Id.* at 5.) Rinpark further notes that, under 15 U.S.C. § 45(a)(3), the FTC is not empowered to regulate "unfair methods of competition involving foreign nations." (*Id.* at 2.) Although the motion is not entirely clear on this point, Rinpark appears to view this alleged territorial limitation on the FTC's power as providing a basis for dismissal under Rule 12(b)(6). (*Id.* at 6.)[2] Rinpark also contends the SAC fails to contain specific allegations of fraudulent conduct as required by Rule 9(b). (*Id.* at 4-5.) Finally, Rinpark contends that, at a minimum, it is entitled under Rule 12(e) to a more definite statement on these issues. (*Id.* at 5.)

The FTC opposes Rinpark's motion. (Doc. 233.) As an initial matter, the FTC

---

[2] The FTC's asserts that Rinpark violated LRCiv 12.1(c) because it did not meet and confer with the FTC before seeking dismissal under Rule 12(b)(6). (Doc. 233 at 1 & n.1.) The FTC is likely correct on this point but the Court will, in its discretion, overlook Rinpark's non-compliance with LRCiv 12.1(c) because it is not reaching the Rule 12(b)(6) issue in this order.

notes that the Domestic Entity Defendants are "literally 'home' in the United States" and "unquestionably" subject to this Court's personal jurisdiction. (*Id.* at 7-8.) The FTC thus argues that, to establish personal jurisdiction over Rinpark, it only needs to establish an alter-ego relationship between Rinpark and the Domestic Entity Defendants. (*Id.* at 8 [arguing that "the reverse alter ego test . . . can be used to establish general personal jurisdiction over a foreign affiliate based on the domestic contacts of its control persons or affiliated entities" and that "[t]he Ninth Circuit has indicated that the alter ego theory also may be used to establish specific jurisdiction"].) The FTC then argues that the allegations in the SAC, when coupled with the Individual Defendants' admissions to some of those allegations and certain other pieces of evidence in the record, are sufficient to establish an alter-ego relationship. (*Id.* at 8-12.) The FTC also disputes Rinpark's claim that it lacks the authority to regulate unfair competition occurring outside the United States, noting that the FTC Act was amended in 2006 for the specific purpose of empowering it to sue foreign defendants for conduct that causes (or is reasonably likely to cause) foreseeable injury in the United States. (*Id.* at 12-13, citing 15 U.S.C. § 45(a)(4).) As for Rinpark's invocation of Rule 9(b), the FTC argues that, even assuming this rule applies in FTC enforcement actions, it is satisfied here because "[t]he 50-page SAC identifies several defendant entities and individuals, categorizes those defendants based on their function in the alleged schemes, and includes specific acts and representations allegedly made by defendants" and because "the detailed allegations in the SAC were sufficient to allow Jay Noland, [Rinpark's] lone owner, officer, and director to prepare an answer on his own behalf, along with the other Defendants." (*Id.* at 14-16, citations omitted) Finally, the FTC argues that a more definite statement isn't required under Rule 12(e). (*Id.* at 16-17.)

C. Analysis

The FTC's theory of personal jurisdiction is that, because the Court possesses personal jurisdiction over the Domestic Entity Defendants and Rinpark is an alter ego of those entities, it follows that the Court possesses personal jurisdiction over Rinpark, too.[3]

---

[3] It is unclear whether the FTC is alleging that Rinpark is also an alter ego of Mr. Noland, but the outcome of this order would not change if that were the case.

- 5 -

Although this a potentially valid theory under *Ranza*, the problem is that evidence and allegations proffered by the FTC fail to satisfy both prongs of the Ninth Circuit's test for alter-ego status.

As background, in *Ranza*, the plaintiff sued NEON, a wholly-owned Dutch subsidiary of Nike, in Oregon for workplace discrimination that occurred in the Netherlands. 793 F.3d at 1065. Despite NEON's foreign status, the plaintiff argued that NEON was subject to personal jurisdiction in Oregon because NEON's parent, Nike, was subject to general jurisdiction there and NEON was an alter ego of Nike. *Id.* at 1070. As an initial matter, the Ninth Circuit held that the plaintiff could succeed under this jurisdictional theory, even though "the traditional application of the alter ego test" only allowed for the imputation of a domestic subsidiary's contacts to a foreign parent. *Id.* at 1071-73. Specifically, the court clarified that "the alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Id.* at 1073. Next, the court addressed whether the plaintiff had satisfied the test for establishing an alter-ego relationship between two entities, which requires "a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* at 1073 (citations, internal quotation marks, and brackets omitted). The court concluded that the plaintiff failed to satisfy the first prong of this test because, *inter alia*, she "presented no evidence Nike and NEON fail to observe their respective corporate formalities," "[e]ach entity leases its own facilities, maintains its own accounting books and records, enters into contracts on its own and pays its own taxes," "[e]ach has separate boards of directors," and there "no evidence that NEON is undercapitalized . . . or that Nike freely transfers NEON's assets, all of which would be signs of a sham corporate veil." *Id.* at 1074.

Here, unlike in *Ranza*, the FTC has satisfied the first prong of the alter-ego test.[4]

---

[4] The parties do not address whether the federal or state alter-ego test applies. Because the relevant jurisdictional question in this FTC Act enforcement action is the defendants' contacts with the United States and not Arizona (or any state in particular), the federal test should apply. 15 U.S.C. § 53(b); *Action Embroidery Corp. v. Atl. Embroidery,*

- 6 -

Rinpark has not submitted any evidence in support of its motion. *Compare Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020) (first prong not satisfied where the defendant submitted a "sworn and unrebutted declaration establish[ing] that [the alleged alter-ego entities] are (1) distinct business entities, (2) provide different types of services in different geographical regions, (3) do not share the same employees, (4) have always maintained the appropriate corporate formalities, (5) have always been adequately capitalized to meet their ongoing operational and financial obligations, (6) have always maintained separate bank accounts and never commingled assets or funds, (7) have always maintained separate corporate records, and (8) have always paid their own expenses"). Thus, the Court must accept all non-conclusory allegations in the SAC as true. *Ranza*, 793 F.3d at 1068. And although Rinpark asserts that the SAC includes only "conclusory allegations about alter-ego" that are devoid of "specific facts" (Doc. 221 at 3-4), this assertion ignores paragraphs 150-154 of the SAC. As discussed, those paragraphs specifically allege that Rinpark has no bank accounts, employees, or independent facilities; that the Domestic Entity Defendants (which, like Rinpark, are owned and controlled by Mr. Noland, *see* Doc. 205 ¶ 10) paid for Rinpark's lease; that Rinpark once used the trade dress belonging to one of the Domestic Entity Defendants; and that Mr. Noland once referred to Rinpark as the "international corporate office" of one of the Domestic Entity Defendants. This is exactly the sort of evidence that was lacking in *Ranza*, and other courts have deemed such evidence sufficient to create a *prima facie* case of "unity of interest and ownership" under the first prong of the alter-ego test. *See, e.g., RRX Indus., Inc. v. Lab-Con, Inc.,* 772 F.2d 543, 545-46 (9th Cir. 1985) ("The district court found the requisite unity of interest and ownership in Kelly's exertion of total control over TEKA. The record supports this finding. Kelly was the president and only officer, director, and stockholder

---

*Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Further, this Court has federal question, rather than diversity, jurisdiction over this action, and in such instances federal alter-ego law ordinarily applies. *See, e.g., McGeachy v. Pinto Valley Mining Corp.*, 2017 WL 3130639, *4 (D. Ariz. 2017) ("In federal-question cases such as this, district courts apply federal common law when determining whether they can exercise personal jurisdiction over a party based on alter ego theory.") (internal quotation marks omitted). Finally, even if Arizona law did apply, it would not change the result, because "the alter ego doctrine is substantially the same under federal and Arizona law." *Id.* at *4 n.41.

of TEKA. TEKA had no Board of Directors and no employees. No TEKA stockholder meetings were ever held."); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 2020 WL 5816488, \*8 (N.D. Cal. 2020) (first prong satisfied where plaintiff established "(1) the commingling of funds and other assets, (2) the use of the same employees, and (3) virtually identical officers and committee members"); *Haller v. Adv. Indus. Comput. Inc.*, 2014 WL 4053445, \*3 (D. Ariz. 2014) ("Plaintiffs have pled sufficient facts to survive a motion to dismiss their alter ego claim. . . . Plaintiffs allege total stock ownership by the parent corporation, common corporate officers, and the parent's substantial control of the subsidiary's business. Plaintiffs also allege that the president of both corporations was personally involved in and signed the stock acquisition agreement.").

This leaves the second prong of the alter-ego test, which requires the FTC to show that that failure to disregard the separate identities of Rinpark and the Domestic Entity Defendants would result in "fraud or injustice." *Ranza*, 793 F.3d at 1073. *See also RRX Indus.*, 772 F.2d at 545 (characterizing the second prong as an assessment of whether "an inequitable result will follow if the acts are treated as those of the corporation alone"). It is here where the FTC's showing falters. Although the SAC includes many allegations that, taken as true, indicate blurred lines and a lack of corporate formalities between Rinpark and the Domestic Entity Defendants, the SAC does not allege (except in conclusory fashion) that Rinpark actually did anything to promote or perpetuate the alleged pyramid scheme (or any of the other challenged conduct in this case). The only paragraphs in the SAC that come close to identifying any Rinpark-specific conduct are paragraphs 153 and 154, but those paragraphs merely allege that Mr. Noland used the trade dress belonging to one of the Domestic Entity Defendants when advertising for an assistant position in Rinpark's Uruguay office and offered a job in Rinpark's Uruguay office to one of the Domestic Entity Defendants' contractors.

In its response to the motion to dismiss, the FTC characterizes these allegations as *prima facie* proof that "Noland used [Rinpark's] (shared) offices to carry out the Corporate Defendants' deceptive businesses from [Rinpark's] founding in October 2019 until he

returned to the United States in January 2020." (Doc. 233 at 10-11, citing Doc. 76-1 at 8.) But this is not an accurate characterization. At most, the FTC has alleged that at the time Mr. Noland performed a facially innocuous task (recruiting an employee), he happened to be located in Uruguayan office space that the Domestic Entity Defendants shared with Rinpark. This is insufficient to meet the FTC's burden of identifying, with specificity, why excluding Rinpark as a party-defendant from this action would result in fraud or injustice.

The Court also disagrees with the FTC's contention, which it emphasized during oral argument, that because Rinpark is alleged to have acted as part of a "common enterprise" with the Domestic Entity Defendants, the *prima facie* test for alter-ego status is necessarily satisfied. Again, because the SAC does not identify anything that Rinpark actually did to promote or facilitate the challenged conduct in this case, the "common enterprise" allegation is conclusory. Additionally, and more important, the FTC's theory seems to be that Rinpark was part of the same "common enterprise" as the Domestic Entity Defendants because it was controlled by Noland, who "disregarded corporate formalities for the companies he controls . . . and commingled funds" between those companies. (Doc. 233 at 11.) Such allegations, however, only bear on the first element of the alter-ego test—whether there was unity of interest and ownership. They shed no light on the second element, which is whether failing to disregard Rinpark's corporate status would, for some specific reason in this case, result in fraud or injustice. Proof of the first element is not proof of the second. *See, e.g., White Rosebay Shipping S.A. v. HNA Grp. Co. Ltd.*, 2013 WL 441014, *2 (S.D. Tex. 2013) ("[A] showing of domination, control, under-capitalization, or other abuse of the corporate form, by itself, is not sufficient to establish alter ego liability. Before the Court may exercise its equitable powers, there must be some showing that the abuse of the corporate form led to some fraud, injustice, or fundamental unfairness."); *In re Keesling*, 2012 WL 5868883, *4 (D. Ariz. 2012) ("A showing of alter-ego alone does not constitute a fraud or injustice."); *Hall v. High Desert Recycling, Inc.*, 2011 WL 2600483, *4 (D. Nev. 2011) ("[A] plaintiff must plead with specificity that fraud or injustice would result if the corporation is permitted to maintain the fiction of a separate

identity. . . . In the absence of fraud or injustice to the aggrieved party, evidence of unity of interest and ownership is insufficient to disregard the corporate entity. . . . Furthermore, the plaintiff must plead sufficient facts to plausibly assert that he or she will be damaged by the abuse of the corporate entity. This requirement ensures that the corporate veil is disregarded only when justice so requires.") (citations omitted).

In its response to the motion to dismiss, the FTC also contends that it has established "fraud or injustice" because (1) "[t]he Court already found the FTC is likely to succeed on the merits of its pyramid and deception counts against [the Domestic Entity Defendants] and all four Individual Defendants based on 'compelling evidence'"; (2) the Court previously found that Mr. Noland likely violated a permanent injunction issued in 2002; (3) "the Nolands transferred almost $300,000 to Uruguay, including $23,000 in cash, from [the Domestic Entity Defendants'] accounts around the time Noland founded [Rinpark] and "[a]t least some of this money paid for [Rinpark's] expenses"; and (4) "the Receiver has not reported receiving any funds or assets repatriated by the Nolands, as the TRO and Preliminary Injunction required them to do." (Doc. 233 at 11-12.)

The first two of these arguments are *non sequiturs* that require little discussion. The Court's previous findings on other issues shed no light on why the exclusion of Rinpark as a party-defendant in this action would result in fraud or injustice.

The third and fourth arguments present a closer call. The paradigmatic example of a situation where an alter-ego finding is necessary to prevent fraud or injustice is where a culpable entity transfers its assets to a seemingly unrelated entity (which is, in fact, an alter ego of the transferor) in an attempt to shield those assets from creditors. *See, e.g., RRX Industries*, 772 F.2d at 546 (upholding alter-ego finding where one corporation, which was sole counterparty to breached contract at issue, "transferred all of its [assets] to [an alter ego corporation] for no consideration" and "[f]ollowing the transfer, [the transferor] was simply an empty shell"). Indeed, this is the showing the FTC often makes when attempting to establish the existence of personal jurisdiction over a foreign entity under an alter-ego theory. *See, e.g., FTC v. On Point Global LLC*, 2020 WL 1812398, *2 (S.D. Fla. 2020)

("The Complaint alleges that the Individual Defendants owned and controlled the [foreign] companies, which 'exist[ed] primarily to hold the Defendants' assets often offshore.' This is sufficient to allege that the companies are mere instrumentalities of the Individual Defendants and that they are used for improper purposes."). But here, the FTC's theory is that Rinpark doesn't have any assets or bank accounts. It is therefore unclear why fraud or injustice would flow from excluding Rinpark as a party-defendant. Rinpark's inclusion would not expand the pool of assets available should the FTC prevail in this action.

The FTC's counter-arguments, raised during oral argument, lack merit. For example, the FTC suggested that Rinpark may have assets hidden in Uruguay that could be used to satisfy a judgment in this case (and, thus, it would be unjust to exclude Rinpark). The problem with this argument is that the SAC affirmatively alleges that Rinpark doesn't even have a bank account and that its "operations were funded solely" by other entities. (Doc. 205 ¶ 151.) The FTC cannot disregard its own allegations for purposes of avoiding dismissal under Rule 12(b)(2), *see Ranza*, 793 F.3d at 1068 (when ruling on a Rule 12(b)(2) motion, "uncontroverted allegations" in the complaint "must be taken as true"), and none of the FTC's remaining allegations plausibly suggests that Rinpark has any hidden assets. Paragraph 155 of the SAC, which alleges that the Nolands transferred over $300,000 to Uruguay, does not support the FTC's position because it does not allege that any of the transferred money went into Rinpark's coffers. Indeed, the evidence presented by the FTC during earlier proceedings suggested that the transfers actually went from the Domestic Entity Defendants to Noland in his personal capacity, without any Rinpark involvement. (Doc. 106 at 26-27; Doc. 224 at 22 n.8.) Nor may the FTC rely on statements that were allegedly made during a recent Rule 30(b)(6) deposition, because no evidence of those statements has been presented to the Court (and the FTC has not asked to supplement the record with them).

The FTC also argued that the Domestic Entity Defendants are undercapitalized. This argument fails for two reasons. First, as noted, "a showing of . . . under-capitalization, . . . by itself, is not sufficient to establish alter ego liability." *White Rosebay Shipping,*

2013 WL 441014 at *2. Second, the usual point of showing that a party-defendant is undercapitalized is to establish that the assets held by its alter ego need to be brought into the case to avoid fraud or injustice (*i.e.,* to make up for the undercapitalization). But as discussed above, the FTC's allegation here is that Rinpark doesn't have any assets. Thus, even accepting that the Domestic Entity Defendants are undercapitalized, the addition of Rinpark as a party-defendant would do nothing to address whatever harm may flow from that undercapitalization.

Finally, the FTC argued that the Court's focus on Rinpark's assets (or lack thereof) is misplaced because it is also seeking injunctive relief in this case, the availability of which doesn't depend on Rinpark's financial resources. Had the FTC alleged in a non-conclusory way that Rinpark was participating in or facilitating the Domestic Entity Defendants' challenged conduct, this argument might have merit. But because such allegations are lacking, it is difficult to see why Rinpark's presence or absence as a party-defendant will make any practical difference in this case. *Cf. Calvert v. Huckins*, 875 F. Supp. 674, 679-80 (E.D. Cal. 1995) ("Even if plaintiffs had made a sufficient *prima facie* showing of control, defendants' motion would still be granted since plaintiffs have produced no evidence whatsoever going to the second requirement for piercing the corporate veil—that failure to do so would 'sanction a fraud or promote injustice'. . . . [T]he court fails to see how dismissal of Centex and CXP will have any bearing whatsoever on plaintiffs' suit, or should they prevail, on their likely recovery."). The Court further notes that, because Mr. Noland—the person who allegedly controls Rinpark—is a party-defendant, any permanent injunction issued against him would seem have the practical effect of enjoining Rinpark.

For these reasons, Rinpark's motion to dismiss for personal jurisdiction is granted. This outcome makes it unnecessary to address the parties' alternative arguments concerning the FTC's extraterritorial authority, the applicability of Rule 9(b), and the application of Rule 12(e). Finally, the FTC's alternative request to conduct jurisdictional discovery (Doc. 233 at 12 n.6) is denied because the discovery period in this case, which was previously extended at the parties' request, has already closed. (Doc. 211.)

Accordingly,

**IT IS ORDERED** that Rinpark's motion to dismiss (Doc. 221) is **granted**.

Dated this 28th day of January, 2021.

Dominic W. Lanza
United States District Judge