**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Federal Trade Commission,

Plaintiff,

v.

James D Noland, Jr., et al.,

Defendants.

No. CV-20-00047-PHX-DWL

**ORDER**

Pending before the Court is a Rule 24 motion to intervene filed by a group of 710 individuals ("Proposed Intervenors") (Docs. 274, 312), as well as the Proposed Intervenors' motion to expedite disposition (Doc. 307). For the reasons stated below, the motion to intervene is denied and the motion to expedite disposition is granted.

**BACKGROUND**

I. Overview Of Parties, Claims, And Proposed Parties

This case concerns the business activities of Success By Health ("SBH"), which is "an affiliate-marketing program that sells coffee products and other nutraceuticals through its online platform and network of affiliates." (Doc. 106 at 1-2.) Plaintiff Federal Trade Commission (the "FTC") asserts, among other things, that SBH is an illegal pyramid scheme and that James Noland, Lina Noland, Thomas Sacca, and Scott Harris (together, the "Individual Defendants") have made false statements to SBH's affiliates. (Doc. 3.)

The Proposed Intervenors are SBH affiliates. (Doc. 274 at 1, 16-23 ¶¶ 1-101; Doc. 312.) As discussed below, a great deal of litigation activity has already occurred in this

case, much of it with the involvement of SBH affiliates, including the Proposed Intervenors.

II. Relevant Procedural History

On January 8, 2020, the FTC initiated this action. (Doc. 3.) That same day, the FTC moved for an *ex parte* temporary restraining order ("TRO") (Docs. 7, 8), which the Court substantially granted (Docs. 19, 38).[1] In the TRO, the Court appointed Kimberly Friday (the "Receiver") to serve as the receiver of SBH and affiliated entities. (Doc. 38 at 16.)

On January 17, 2020, the FTC filed an amended complaint. (Doc. 35.)

On February 6, 2020, the Individual Defendants filed their answer to the FTC's amended complaint. (Doc. 70.)

On February 10, 2020, the Receiver issued an initial report concluding that she "does not believe that the business can be operated without violating the TRO. The inaccurate marketing statements, the organization of the commission system, and the movement of large amounts of cash to the insiders strongly suggests that the business is structured in such a fashion that prevents Affiliates from realizing the promoted business opportunities." (Doc. 82-1 at 19.)

On February 12, 2020, the preliminary injunction hearing took place. (Doc. 86.) After the hearing, the Court took the matter under advisement. (*Id.*)

On February 18, 2020, the Individual Defendants filed an amended answer to the FTC's amended complaint. (Doc. 93-1.)

On February 27, 2020, the Court issued an order granting the FTC's motion for a preliminary injunction. (Doc. 106.) Among other things, this order authorized the Receiver to resume selling SBH's existing inventory of products. (*Id.* at 28.)

On May 12, 2020, the Receiver issued her second report. (Doc. 139-1.) Among other things, she reported that her efforts to resume selling SBH's existing inventory had

---

[1] The TRO was later amended. (Docs. 20, 21.) The final, unsealed version of the TRO was filed on January 17, 2020. (Doc. 38.)

been delayed by the COVID-19 pandemic and by her discovery that SBH had been operating without liability insurance, had been neglecting to collect sales tax, and had been using an ingredient that is illegal in the United States. (*Id.* at 4-6.) She further reported that product sales finally resumed during the week of May 11, 2020, that she had "terminated the multi-level marketing program and the commission structure" that had previously been in place, and that she had informed SBH's affiliates "that they will not earn commissions or otherwise benefit from their purchases or purchases by individuals formerly in their downline." (*Id.* at 7-8.)

On July 28, 2020, the Individual Defendants sought to compel the joinder of roughly 4,500 additional parties to this action under Federal Rule of Civil Procedure 19. (Docs. 167, 167-1.) Most or all of the proposed parties were SBH affiliates, many of whom are now among the 710 Proposed Intervenors. (Doc. 167 at 1-2; Doc. 167-1 at 2, 4; Doc. 167-2 at 2-3, 5, 7, 9, 11; Doc. 284 at 16.) The Court denied the motion because it was filed after the Individual Defendants filed their first responsive pleading. (Doc. 200 at 5-8.)

On August 12, 2020, the Receiver filed her third report. (Doc. 179-1.) The Receiver reported that restarting SBH product sales was complicated by difficulties with payment processing companies. (*Id.* at 4.) This led to a delay in sales until June 19, 2020, at which point sales resumed using a new payment processing company. (*Id.*) She stated that sales were "steady if not voluminous." (*Id.*) She offered products at a ten percent discount to encourage sales, particularly for products that had impending expiration dates. (*Id.* at 5.) She added that she had received a total of $255,140.83 in refund requests, and $20,976.80 in commission payment requests, and that the number of each type of request had declined in the prior three months. (*Id.* at 10-11.) She also noted her appreciation for James Noland's "substantial assistance" with technological and sales tax issues. (*Id.* at 5.)

On September 22, 2020, after briefing from the parties, the Court granted leave to the FTC to file a second amended complaint ("SAC"). (Docs. 182, 193, 198, 204.) The next day, the FTC filed the SAC. (Doc. 205.)

On October 19, 2020, the corporate defendants, represented by the Receiver,

answered the SAC. (Docs. 217, 218.)

On October 23, 2020, the Individual Defendants answered the SAC. (Doc. 222.)

On November 12, 2020, the Receiver issued her fourth report. (Doc. 229-1.) Among other things, she noted a downward trend in product sales. (*Id.* at 2-3.) She also determined that, "[g]iven the regulatory uncertainties on the federal level, and the patchwork of state statutes and regulations with varying restrictions and requirements, . . . sale of [SBH's] dietary supplements containing CBD is not a prudent business decision." (*Id.* at 3-4.) She reported that she was in regular contact with SBH affiliates, who generally contacted her about product orders or the status of this case, while requests for refunds and commission payments continued a downward trend. (*Id.* at 8.)

On December 23, 2020, fact discovery in this case closed. (Doc. 211.)

On February 5, 2021, the deadlines for expert disclosures for both parties as well as rebuttal experts expired. (*Id.*)

On February 12, 2021, the Receiver filed her fifth report. (Doc. 271-1.) Among other things, she reported a continued overall downward trend in product sales, as well as frequent contact from affiliates, who largely seek information regarding product orders or updates on this action, with only a few seeking refunds or commission payments. (*Id.* at 4-6.)

On February 18, 2021, the Proposed Intervenors filed their motion to intervene. (Doc. 274.) The Proposed Intervenors wish to intervene as a class, seek a declaratory judgment that the FTC's litigation of this action has violated their rights to association, contract, and to receive the benefits of their contracts with SBH, and also seek an injunction preventing the FTC from depriving them of the same. (Doc. 274 at 2-3, 28-31 ¶¶ 133-52.)

On March 11, 2021, the Proposed Intervenors' motion became fully briefed. (Docs. 282, 284.)

On March 12, 2021, the dispositive motions deadline passed. (Doc. 211.) That day, the FTC filed a motion for summary judgment as to liability. (Docs. 285-302.)

…

III. SBH Affiliates' Involvement In Earlier Stages Of The Litigation

From the litigation of the preliminary injunction onward, over 100 SBH affiliates have submitted over 300 unique declarations in support of the Individual Defendants' numerous motions and responsive briefing. (Doc. 282-1 at 1-2 ¶ 2-3.) This includes 41 signed declarations from SBH affiliates in opposition to the FTC's motion for preliminary injunction. (*Id.* at 1 ¶ 2.) There is some overlap between the affiliates who have previously filed sworn declarations in this case and the Proposed Intervenors. (*Id.* at 1-2 ¶¶ 2, 5.)

Some of the Proposed Intervenors have also contributed financially to the Individual Defendants' legal defense. (*Id.* at 3 ¶ 7.)

Since the commencement of this case, the Court has also received countless personal letters from SBH affiliates expressing their support for the Individual Defendants and the SBH enterprise and their discontent with the FTC, the Receivership, and these proceedings.

**DISCUSSION**

I. Legal Standard

"Rule 24 recognizes two types of intervention: (1) intervention of right; and (2) permissive intervention. Courts must permit intervention of right, but may permit or deny permissive intervention." 1 Gensler, Federal Rules of Civil Procedure, Rules & Commentary, Rule 24, at 716 (2021). The Proposed Intervenors seek to intervene under both theories.

Intervention of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts in the Ninth Circuit employ a four-part test when analyzing intervention of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). These requirements are broadly construed because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation omitted). That said, "[f]ailure to satisfy any one of the requirements is fatal to the application," and the Court "need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Permissive intervention, on the other hand, is available "on timely motion" to "anyone . . . who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted). "The district court is given broad discretion to make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

II. <u>Analysis</u>

The Proposed Intervenors argue that all the factors governing both forms of intervention are satisfied here. (Doc. 274 at 6-12.) The FTC opposes the motion, arguing that the Proposed Intervenors lack Article III standing to pursue the claims they seek to advance through intervention, their motion is untimely, and the remaining intervention factors are not satisfied. (Doc. 282 at 6-15.)

A. **Timeliness**

In determining the timeliness of a motion to intervene, courts consider "three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (internal quotation marks omitted). "[T]he crucial date for assessing the timeliness of a motion to intervene is when

proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). The same three timeliness factors apply to requests for intervention as of right and permissive intervention. *Wilson*, 131 F.3d at 1308. "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than . . . with intervention as of right." *Id.* "[A]ny substantial lapse of time weighs heavily against intervention." *Id.* at 1302 (internal quotation marks omitted).

1. Stage Of The Proceeding

This case began over thirteen months before the Proposed Intervenors filed their motion. The intervening period was jam-packed with litigation activity. For example, the Court issued a TRO. After substantial litigation and briefing that included declarations from SBH affiliates, some of whom are among the Proposed Intervenors,[2] the Court also issued a preliminary injunction. The FTC twice amended its complaint and the defendants answered each amendment. The Individual Defendants attempted, without success, to join many of the Proposed Intervenors as parties pursuant to Rule 19. Fact discovery opened and closed. And the Receiver filed five reports documenting the status of SBH's sales and her ongoing interactions with SBH affiliates, including her efforts to meet their refund and commission payment requests.

These events, as well as the others recounted at length in the background section of this order, are only some of the key milestones that occurred before the Proposed Intervenors filed their motion. The parties have actively litigated this case. Other relevant orders that have come after full briefing from the parties—often with the benefit of sworn statements from the Proposed Intervenors[3]—include: (1) an August 8, 2020 order denying the Individual Defendants' motion to release one of the corporate defendants from the Receiver's control (Doc. 177); (2) an October 27, 2020 order granting in part and denying

[2] *See, e.g.*, Doc. 85-1 at 2; Doc. 283-1 at 1; Doc. 85-1 at 10; Doc. 274 at 15-16, 19 ¶¶ 33-35, 31; Doc. 85-1 at 13; Doc. 274 at 15-16, 20-21 ¶¶ 57-59, 31; Doc. 85-1 at 24; Doc. 274 at 15-16, 18 ¶¶ 21-23, 31.

[3] *See, e.g.*, Doc. 187-5 at 2; Doc. 274 at 15-16, 20 ¶¶ 51-56, 31; Doc. 187-5 at 26; Doc. 283-1 at 1.

in part the Individual Defendants' motion to amend their answer and assert counterclaims (Doc. 223); (2) an October 27, 2020 order denying the Individual Defendants' motion to dissolve or modify the preliminary injunction (Doc. 224); (4) a November 13, 2020 order granting in part and denying in part the Individual Defendants' motion for relief regarding one of their travel enterprises (Doc. 231); (5) a December 3, 2020 order denying the Individual Defendants' motion to stay proceedings (Doc. 242); and (6) a December 10, 2020 order denying Jeffrey and Amber Wright's (who are among the Proposed Intervenors[4]) motion to quash a third-party subpoena to their bank (Doc. 248).

The Proposed Intervenors' motion thus comes far too late. Other courts have denied motions to intervene as untimely under analogous circumstances. *See, e.g.*, *Wilson*, 131 F.3d at 1303 (affirming denial of motion to intervene due to its untimeliness, where "complaints had been filed," the "court had issued a temporary restraining order, and subsequently a preliminary injunction," "defendants had filed an answer," and "the district court and the original parties had covered a lot of legal ground together," because such developments "weigh[ed] heavily against allowing intervention as of right under Rule 24(a)(2)"); *Stupak-Thrall v. Glickman*, 226 F.3d 467, 474-75 (6th Cir. 2000) (motion untimely where "discovery was closed, the experts were producing their reports," and "the dispositive motion deadline . . . was only seven weeks away"); *Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439, *1 (C.D. Cal. 2017) ("[T]he issue was only brought to the Court's attention . . . after discovery had closed . . . . A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'").

The timing of this intervention motion also contrasts sharply with cases where intervention was found to be timely. *See, e.g.*, *Droplets, Inc. v. Yahoo! Inc.*, 2019 WL 9443778, *4 (N.D. Cal. 2019) (intervention timely where the case was "still in its relatively early stages," *i.e.* the court had not "addressed the merits of any party's substantive claims or defenses" or "set a discovery or expert report deadline"); *Sage Electrochromics, Inc. v.*

---

4 *See* Doc. 274 at 15-16, 17 ¶¶ 9-11; Doc. 283-1 at 2.

*View, Inc.*, 2013 WL 6139713, *2 (N.D. Cal. 2013) (intervention timely where the case was "still in its relatively early stages" and the court had not yet "addressed the merits of any party's substantive contentions, and [had] not yet even [] set a final case schedule").

Accordingly, the stage-of-proceeding factor weighs heavily against a finding of timeliness.

2. Prejudice

"[P]rejudice to existing parties is the most important consideration in deciding whether a motion for intervention is untimely." *Smith*, 830 F.3d at 857 (internal quotation marks omitted). Intervention may be prejudicial to other parties where it "would complicate the issues and prolong the litigation," *United States v. Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996), or where "a lot of water has passed under the litigation bridge." *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004). However, prejudice cannot be based solely on "the fact that including another party in the case might make resolution more difficult." *Smith*, 830 F.3d at 857.

The Proposed Intervenors argue that the FTC "cannot be prejudiced by this Court considering the perspective of . . . consumers regarding SBH's conduct, as well as the effect of these proceedings on those consumers, when the FTC asserts its claims are ostensibly based on an interest in protecting the consumers." (Doc. 274 at 8.) They also point out that, in the FTC's response brief, "the FTC does not even assert that it would be prejudiced" by intervention. (Doc. 284 at 5.)

It is true that the FTC didn't explicitly state that it would be prejudiced by intervention. Further, the Proposed Intervenors state that they do not intend to conduct any additional discovery and are amenable to an expedited schedule for taking discovery against them should such discovery be sought by the existing parties. (Doc. 284 at 5.) Nevertheless, and as discussed in more detail below, the Proposed Intervenors appear to seek Rule 23 class certification to pursue a novel avenue of declaratory and injunctive relief in the final stages of a civil FTC enforcement action. (Doc. 274 at 15-31.) This will necessarily "inject new issues into the litigation that at this late date would prejudice the

parties." *Alisal Water Corp.*, 370 F.3d at 922. Although the increased difficulty of resolving the litigation cannot alone constitute prejudice, the Court finds that the proposed intervention comes at a sensitive time in the case, as discovery has closed and a summary judgment motion has already been filed. Moreover, the Proposed Intervenors do not adequately explain how injecting their proposed Rule 23 class certification (Doc. 274 at 28-29 ¶¶ 133-44) or reviewing the FTC's civil enforcement action under 5 U.S.C. § 702 (Doc. 274 at 30 ¶ 146) while its outcome is still undetermined would *not* result in prejudice to the parties' ability to resolve this case.

For these reasons, the prejudice factor weighs against a finding of timeliness (or, at most, is neutral).

3. The Reason For And Length Of The Delay

The Proposed Intervenors assert in conclusory fashion that they "acted promptly after their rights were affected by this case." (Doc. 274 at 8.) Elsewhere in their motion, however, they acknowledge their keen awareness of the "numerous motions and applications" that have purportedly "negatively affected the rights of SBH of affiliates," including the TRO (issued in January 2020), the preliminary injunction (issued in February 2020), and the FTC's filing of the SAC (in September 2020). (*Id.* at 7.) Additionally, in their reply, they contend that September 21, 2020, when the Court denied the Individual Defendants' motion to dismiss or compel joinder under Rule 19, was when they first had any "basis upon which to believe that the Court would decline to require or permit their direct, active participation in this action." (Doc. 284 at 5.)

There is simply no good explanation for the Proposed Intervenors' massive delay in requesting intervention. According to the Proposed Intervenors, the earliest date on which their protected interests arose was January 13, 2020 (issuance of TRO) and the latest was September 21, 2020 (denial of Rule 19 motion). Their intervention motion, however, was not filed until February 18, 2021. (Doc. 274.) Thus, at the bare minimum, the Proposed Intervenors delayed nearly five months after their interests arose. As the FTC points out, this exceeds what courts have found to be an unjustifiable delay. *See, e.g.*, *FTC v. Cardiff*,

2020 WL 766336, *4 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) (delay of nearly two months after protected interest arose was untimely and "[a]ny purported 'steps' taken during that time period are insufficient to justify" the delay). Further, as noted, "any substantial lapse of time weighs heavily against intervention." *Wilson*, 131 F.3d at 1302 (internal quotation marks omitted).

The Proposed Intervenors argue they have not been "dilatory" because it took them "just a few months" to get organized, retain counsel, and file the motion. (Doc. 274 at 9; Doc. 284 at 5.) But this hardly explains why, after months of active, and at times contentious, litigation, in which several of the Proposed Intervenors themselves participated, it was only in September 2020 that they could even begin to get organized. After all, at least some of the Proposed Intervenors have been aware of the effects of the TRO, preliminary injunction, and other aspects of this litigation from the outset. For example, in opposing the preliminary injunction, among the exhibits proffered by the Individual Defendants were declarations by SBH affiliates, at least sixteen of whom rank among the Proposed Intervenors. (Doc. 282-1 ¶ 2. *See, e.g.*, Doc. 85-1 at 2; Doc. 283-1 at 1; Doc. 85-1 at 10; Doc. 274 at 15-16, 19 ¶¶ 33-35, 31; Doc. 85-1 at 13; Doc. 274 at 15-16, 20-21 ¶¶ 57-59, 31; Doc. 85-1 at 24; Doc. 274 at 15-16, 18 ¶¶ 21-23, 31.) In addition, in her May 12, 2020 report, the Receiver stated that she had spent the previous three months "communicating with affiliates and consumers regarding requests for refunds and the status of litigation" after "widely distributing her email address and phone number." (Doc. 139-1 at 3, 8.) These regular communications have reportedly continued ever since. (Doc. 179-1 at 10-11; Doc. 229-1 at 8; Doc. 271-1 at 4-6.) "A party *must* intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *Alisal Water Corp.*, 370 F.3d at 923 (emphasis added). The record shows that many of the Proposed Intervenors knew or had reason to know about their interests in this litigation as early as January or February 2020, one year before they moved to intervene.

Accordingly, the reason-and-length-of-delay factor weighs strongly against a finding of timeliness.

4. Balancing

Because the first and third factors weigh strongly against a finding of timeliness, while the second factor weighs somewhat against a finding of timeliness (and is at most neutral), the motion to intervene is untimely.

B. **Other Considerations**

Because the Proposed Intervenors' motion is untimely, the Court "need not reach any of the remaining elements of Rule 24." *Wilson*, 131 F.3d at 1302. Nor does the Court reach the FTC's argument that the Proposed Intervenors lack standing because they cannot assert an interest in an unlawful pyramid scheme. (Doc. 282 at 10-11.)[5]

The Court notes, however, that the Proposed Intervenors' request is highly unusual and perhaps unprecedented. The Proposed Intervenors do not cite any precedent, nor did the Court uncover any in its own research, for nonparties to intervene in an FTC enforcement action while proceeding as a putative class.

Courts have tended to deny requests by nonparties to intervene in FTC enforcement actions. *See, e.g.*, *FTC v. Johnson*, 800 F.3d 448, 450-51 (8th Cir. 2015). As the FTC points out, there is a "presumption that the United States, as a government litigant, is adequately protecting" its constituents' interests. *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002). *See also Johnson*, 800 F.3d at 452 ("We presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation."); *FTC v. First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001) ("[The adequate protection] standard changes when a government entity is a party and asserts its status as a guardian or representative of all of its citizens, as the FTC does here. In such a circumstance, the governmental entity deserves special consideration and deference as an adequate representative of the interests of would-be intervenors."). Here, those

[5] The Court notes that in some FTC enforcement actions, nonparties who have suffered financial harm as a result of the action have been found to have Article III standing to intervene. *FTC v. Nudge, LLC*, 2020 WL 6881846, *3 (D. Utah 2020) ("The injury they claim is the loss of monthly payments due to them . . . since the entry of the of the injunction in this case. This injury is neither speculative nor hypothetical . . . .").

constituents include the Proposed Intervenors.

To be sure, this presumption has been overcome from time to time in FTC enforcement actions, such as in cases where the government's and proposed intervenor's interests were "diametrically opposed." *FTC v. Loss Mitigation Servs. Inc.*, 2009 WL 10673186, *4 (C.D. Cal. 2009). *See also FTC v. Nudge, LLC*, 2020 WL 6881846, *5 (D. Utah 2020) ("The Sloans' objectives are not the same as the government agency plaintiffs in this case."). But in the few cases allowing such intervention that the Court was able to uncover through its own research (none were cited by the Proposed Intervenors), the scope of the requested intervention was quite narrow and involved a single non-party (or single married couple) challenging the FTC's plan to dispose of a particular asset. *See, e.g., Loss Mitigation Servs.*, 2009 WL 10673186 at *2 (intervention granted so entity could pursue the claim that it was the true owner of a bank account containing just over $175,000 that the court-appointed received "wrongly took possession of"); *Nudge*, 2020 WL 6881846 at *3 (intervention granted so married couple could pursue the claim that restrained company should be allowed to continue making payments to them pursuant to a settlement agreement executed before the enforcement action arose). That is a far cry from what the Proposed Intervenors are requesting here—engrafting a 700+ member class action onto an FTC enforcement action, after discovery has already closed, so they can not only challenge the disposition of frozen assets but also challenge the FTC's discretionary decision to pursue an enforcement action against SBH in the first instance. (Doc. 274 at 4 ["Intervenors are prepared . . . to present to this Court their evidence that the FTC has misled the Court as to the nature of SBH's business model and disclosures to affiliates and as to the opinions and experiences of the affiliates who have actually operated under SBH's business model.").

Intervention also may be denied under the "significantly protectable interest prong," on the ground that it is not enough for a proposed intervenor to show "disruption to [his] business occurred as a direct result of the issuance of the temporary restraining order" because a "mere interest in property that may be impacted by litigation is not a passport to the litigation itself." *FTC v. Pricewert LLC*, 2010 WL 94264, *1 (N.D. Cal. 2010) (internal

quotation marks omitted). As the Ninth Circuit has observed, "[t]o hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself." *Alisal Water Corp.*, 370 F.3d at 920 n.3. Further, some courts have held that where property subject to an asset freeze and a preliminary injunction is being administered by a receiver, the proposed intervenor's interests in those assets are adequately protected by the process established under the receivership—and, thus, there is no need to separately allow for intervention. *CFTC v. Rust Rare Coin Inc.*, 811 F. App'x 497, 500 (10th Cir. 2020).

At any rate, the Proposed Intervenors' motion is denied because it is untimely.

Accordingly,

**IT IS ORDERED** that the Proposed Intervenors' Rule 24 motion to intervene (Doc. 274) is **denied**.

**IT IS FURTHER ORDERED** that the Proposed Intervenors' motion to expedite disposition (Doc. 307) is **granted**.

Dated this 2nd day of April, 2021.

Dominic W. Lanza
United States District Judge