**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>        Plaintiff,<br><br>v.<br><br>James D Noland, Jr., et al.,<br><br>        Defendants. | No. CV-20-00047-PHX-DWL<br><br>**ORDER** |
| Federal Trade Commission,<br>        Plaintiff,<br>v.<br>Netforce Seminars, *et al.*,<br>        Defendants. | No. CV-00-2260-PHX-DWL |

Plaintiff Federal Trade Commission ("FTC") moves the Court to modify the briefing schedule in in the above-captioned actions. For the reasons stated below, the motion is granted.

**BACKGROUND**

I.     The 2000 And 2020 Actions

In 2000, the FTC filed a complaint that charged Jay Noland with operating a multi-level marketing business called "Netforce Seminars" as an illegal pyramid scheme. *FTC v. Netforce Seminars*, 2:00-cv-002260 (D. Ariz. Nov. 29, 2000), Doc. 1 [hereinafter, "*Netforce Seminars*"]. In 2002, *Netforce Seminars* resolved with the issuance of a permanent injunction. *Id.*, Doc. 66. Among other things, the injunction "permanently

restrained and enjoined" Noland from (1) "engaging, participating or assisting in any manner or capacity whatsoever . . . in any prohibited marketing scheme," which included "a pyramid sales scheme," and (2) "making . . . any false or misleading statement or misrepresentation of material fact" "in connection with . . . any multi-level marketing program." *Id.*, Doc. 66 at 2-4. Although Noland was the only individual specified by name in the permanent injunction, it also applied to Noland's "agents, servants, employees, and those persons in active concert or participation with [Noland] who receive actual notice of this Order by personal service or otherwise." *Id.*, Doc. 66 at 3-4.

Nearly two decades later, in 2020, the FTC filed a new complaint against Noland. *FTC v. Noland*, 2:20-cv-00047 (D. Ariz. Jan. 8, 2020) (Doc. 3) [hereinafter, "*Noland*"]. This complaint charges Noland and several of his business associates, including Scott Harris and Thomas Sacca, with operating a multi-level marketing business called Success By Health ("SBH") as an illegal pyramid scheme. (*Id.*; *see also* Doc. 205 [Second Amended Complaint].) In February 2020, following an evidentiary hearing (Docs. 86, 105), the Court granted the FTC's motion for a preliminary injunction (Doc. 106). Among other things, the Court concluded that the FTC had demonstrated a likelihood of success on its claim that Noland, Harris, and Sacca were operating SBH as an illegal pyramid scheme (*id.* at 10-20) and had also demonstrated a likelihood of success on its claim that Noland, Harris, and Sacca had made false statements in connection with their operation of SBH (*id.* at 20-25).

Accordingly, the FTC filed a pair of motions in *Netforce Seminars* seeking to order Noland, Harris, and Sacca to show cause why they shouldn't be held in contempt for violating the permanent injunction that was issued in that action. *Netforce Seminars*, Docs. 78, 91. On July 6, 2020, after briefing from the parties, *id.* Docs. 82, 84, 98-100, the Court concluded that it was "premature to hold a full-blown contempt hearing" at that time. *Id.* Doc. 101 at 3. The Court reasoned that in order to obtain contempt sanctions, "the FTC must not only succeed on its allegations in [*Noland*] but prove those allegations by clear-and-convincing evidence," so in light of Noland, Harris, and Sacca's continued dispute of

those allegations, "it ma[de] sense—both as a matter of fairness to the defendants and as a matter of judicial efficiency—to resolve the issue of civil contempt" in *Netforce Seminars* "after the Court addresses the merits of the FTC's request for a permanent injunction" in *Noland*. *Id.*

The *Noland* case has now reached the dispositive motions stage, and the FTC has filed a motion for summary judgment as to liability. (Docs. 211, 285.)

II. *AMG Capital* And The FTC's Motion To Modify The Briefing Schedule

As the parties are well aware, a case pending before the Supreme Court, *AMG Capital Management, LLC v. FTC*, No. 19-508, may affect the scope of remedies available to the FTC should it prevail in *Noland*. (*See generally* Doc. 242.) The Supreme Court has heard oral argument but has not yet issued an opinion in that case.

Given the pendency of *AMG Capital* and the overlapping issues in *Noland* and *Netforce Seminars*, the FTC now moves to modify the briefing schedule in each action. (Doc. 309.)[1] Specifically, the FTC requests leave for the parties to file motions for summary judgment as to monetary remedies ("Remedies Motions") in *Noland* and a "Motion for Entry of Contempt Judgment and Imposition of Compensatory Sanctions" ("Contempt Motion") in *Netforce Seminars* within 30 days of the Supreme Court's ruling in *AMG Capital*. (*Id.* at 1-2.)

**DISCUSSION**

I. *Noland* Remedies Motions

The FTC argues that because *AMG Capital* will "clarify the extent of the FTC's authority to seek monetary relief," briefing the issue of monetary remedies in its earlier motion for summary judgment on liability would have been a waste of time and resources. (*Id.* at 2-3 ¶¶ 4-6.) Nevertheless, the FTC argues, "it would be a poor use of the parties' and the Court's time to skip summary judgment briefing as to monetary relief" because there is little factual dispute on the issue—the only uncertainty, according to the FTC, is "the law that will apply." (*Id.* at 3 ¶ 7.) The FTC therefore argues that "good cause" exists

---

[1] The FTC's motion in *Netforce Seminars* was filed at Doc. 102.

under Federal Rule of Civil Procedure 16(b)(4) to modify the briefing schedule in *Noland* (in which the dispositive motions deadline of March 12, 2021 has expired) to allow any Remedies Motions to be filed within 30 days of the *AMG Capital* decision. (*Id.* at 3-4 ¶¶ 8-9.)

Noland, Harris, Sacca, and Lina Noland (together, the "Individual Defendants") respond that the FTC's motion "is premature and prejudicial." (Doc. 315 at 1.) They contend the motion "is premature because it presupposes the FTC will prevail" and "prejudicial because it forces the individual defendants to guess what the FTC considers the harm the FTC claims to want to redress is." (*Id.*) They assert they "should not have to wait for the Supreme Court's decision in *AMG Capital* to find out" what the FTC's theory of consumer harm is. (*Id.* at 2.) The FTC replies that it is commonplace for courts to allow parties to file separate summary judgment motions on liability and remedies. (Doc. 317 at 2.) The FTC also argues that the Individual Defendants have no reason to be "in the dark" about the relief it seeks or the harm it alleges because the FTC has repeatedly stated on the record that "it seeks restitution equal to Defendants' net revenues," has provided specific amounts for this figure in its MIDP responses, and briefed the issue of consumer harm in its motion for summary judgment as to liability. (*Id.* at 2-3; Doc. 317-1; *see also* Doc. 285 at 21-23.)

Rule 16(b)(4) allows the court to modify its scheduling order "only for good cause." This "'good cause' standard primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). The court may also "take into account any prejudice to the party opposing modification" but focuses primarily "upon the moving party's reasons for seeking modification." *Id.* Where the modification motion comes late in the proceedings and could have been brought earlier, the court may properly deny it, but may also grant it "based on an overall evaluation of the rights of the parties, the ends of justice, and judicial economy." *United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007) (cleaned up).

Here, although the FTC could have moved to modify the briefing schedule earlier

in the proceedings, the proposed modification serves the rights of the parties, justice, and judicial economy. The parties have long been aware of the potentially significant effects of *AMG Capital* on the availability of monetary remedies in the *Noland* action. (*See generally* Docs. 220, 227-28, 230, 242.) It will serve all parties' interests, as well as judicial economy, to brief that issue after *AMG Capital* is decided.

The Court is not persuaded that modifying the briefing schedule would prejudice the Individual Defendants. The Individual Defendants' only argument regarding prejudice is that they are "left in the dark as to what the harm (the logical predicate of a violation) the FTC seeks to redress is." (Doc. 315 at 1.) But the FTC's motion for summary judgment on liability includes two-and-a-half pages of briefing on consumer harm. (Doc. 285 at 21-23.) Further, in its MIDP responses and supplemental responses, the FTC has repeatedly informed the Individual Defendants that it "seeks equitable monetary relief from all Defendants, equal to Defendants' revenues obtained from consumers," and has provided updated amounts and details for its estimated figures over the course of discovery. (Doc. 317-1 at 6, 11, 17-20.) The Court therefore concludes that the Individual Defendants have no reason to be unfairly surprised about the harm the FTC seeks to remedy and would not otherwise be prejudiced by the revised briefing schedule.

II.     Contempt Motion

In a previous order in *Netforce Seminars* (Doc. 101 at 3), the Court concluded that the issue of civil contempt should be resolved "after the Court addresses the merits of the FTC's request for a permanent injunction" in *Noland*. Nevertheless, the FTC now argues that whether Noland, Harris, and Sacca are found in contempt should be resolved *before* the resolution of the FTC's request for a permanent injunction in *Noland*, because whether the three men violated the *Netforce Seminars* permanent injunction "may be relevant" in determining whether to impose "strong injunctive relief against them" in *Noland*. (Doc. 309 at 6 ¶ 15.) The FTC also wishes to resolve the issue of contempt "without the need for an evidentiary hearing." (*Id.* at 5-6 ¶¶ 13-14.) Thus, the FTC seeks leave "to submit a motion for entry of civil contempt and compensatory contempt sanctions based on the lack

of any disputed issue of material fact in [*Netforce Seminars*]" within 30 days of the decision in *AMG Capital*, just like the Remedies Motions. (Doc. 309 at 7 ¶ 16.) The Individual Defendants do not respond to the FTC's proposed schedule for the Contempt Motion.

The Court concludes that good cause exists to allow the FTC to file the Contempt Motion on the proposed schedule. The Court does not prejudge, however, whether an evidentiary hearing will ultimately be necessary for the FTC to meet its burden to show civil contempt by clear and convincing evidence.[2] Additionally, this grant of permission for the FTC to file its civil contempt motion earlier than previously contemplated does not necessarily mean the Court will *rule* on that motion before it rules on any pending dispositive motions in *Noland*—the Court will reevaluate the proper decisional sequence after the motions are briefed and *AMG Capital* has been decided.

Accordingly,

**IT IS ORDERED** that the FTC's motion for a modified briefing schedule (*Noland* Doc. 309, *Netforce Seminars* Doc. 102) is **granted**.

**IT IS FURTHER ORDERED** that the parties may file motions for summary judgment as to remedies in *FTC v. Noland*, 2:20-cv-00047, within 30 days of the issuance of an opinion in *AMG Capital Management, LLC v. FTC*, 19-508, and that the FTC may file a motion for entry of civil contempt and compensatory contempt sanctions in *FTC v. Netforce Seminars*, 2:00-cv-002260, within 30 days of the issuance of an opinion in *AMG Capital Management, LLC v. FTC*, 19-508.

Dated this 19th day of April, 2021.

Dominic W. Lanza
United States District Judge

---

[2] *See, e.g.*, *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) ("The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.") (internal quotation marks omitted).