WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>  Plaintiff,<br><br>v.<br><br>James D. Noland, Jr., et al.,<br><br>  Defendants. | No. CV-20-00047-PHX-DWL<br><br>**ORDER** |

Pending before the Court are Plaintiff Federal Trade Commission's ("FTC") motion to compel (Doc. 322) and Defendants Jay Noland, Lina Noland, Scott Harris, and Thomas Sacca's (together, "the Individual Defendants") motion for a protective order (Doc. 344). For the following reasons, the motion to compel is granted in modified form and the motion for a protective order is denied.

**RELEVANT BACKGROUND**

The parties are familiar with the background of this case, which is set out in earlier orders. In a nutshell, the FTC alleges that the Individual Defendants operated Success by Health ("SBH") and related enterprises as an illegal pyramid scheme.

On January 8, 2020, the FTC filed a complaint seeking a permanent injunction and other equitable relief. (Doc. 3.) That same day, the FTC filed an *ex parte* motion for a temporary restraining order ("TRO") with an asset freeze and the appointment of a temporary receiver. (Docs. 7, 8.) On January 13, 2020, the Court granted the TRO, including the asset freeze, the appointment of a receiver, and other forms of relief. (Doc.

19.) On February 27, 2020, after briefing and oral argument, the Court granted a preliminary injunction providing for, *inter alia*, the continuation of the asset freeze and the repatriation of assets located abroad. (Docs. 106, 109.)[1]

The parties then engaged in fact discovery, which closed on December 23, 2020. (Doc. 211.) Among other things, the FTC sought information from nonparties Dr. Jeffrey and Ms. Amber Wright (collectively, "the Wrights"). (*See generally* Docs. 234, 237, 246, 248, 253.) The FTC alleges, based on documents and records it has discovered, that the Wrights, who are married to each other, have a close personal and professional relationship with Jay Noland and that this relationship has involved various financial transactions that may have been in violation of the preliminary injunction's asset freeze and foreign asset repatriation requirements. (*See generally* Doc. 248.) Among other things, the FTC alleges that the Wrights have sent at least $130,000 to the Individual Defendants and their creditors since the entry of the TRO. (Doc. 163-1 at 53-59, 61-64; Doc. 322 at 4-5; Doc. 322-1 at 9 ¶ 21.) It also alleges that, starting in July 2020, the Wrights started a new company, Mycobody International, Inc. ("Mycobody"), which sells a product called Mycoburn. (Doc. 322 at 5-6; Doc. 322-1 at 9-10 ¶ 22, 47-49, 51-52, 57-58, 60, 62-65.) The FTC contends that Mycoburn is nearly identical to one of SBH's products, G Burn. (Doc. 322 at 5-6.)

In November 2020, the FTC mailed a package to the Wrights that included, among other things, a notice under the Right to Financial Privacy Act of 1978 ("RFPA") stating that the FTC sought to subpoena America First Credit Union ("America First") for information concerning the Wrights' financial accounts. (Doc. 234 at 4-5; Doc. 237-2 at 1.) On November 20, 2020, the Wrights filed a motion to quash the America First subpoena under the RFPA. (Doc. 243.) After full briefing (Docs. 237, 246), the Court denied the Wrights' motion. (Doc. 248.)

Beginning in October 2020, the FTC also made several attempts to serve subpoenas

---

[1] The parties are currently briefing the legality of the receivership and asset freeze and the form, if any, they should take in the wake of the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021). (Docs. 325, 330, 334, 351-54.)

directly upon the Wrights and Mycobody, which is registered at the Wrights' Utah home, with Amber Wright as the registered agent. (*Id.* at 6-7; Doc. 322-1 at 43; Doc. 322 at 2-3; Doc. 322-3 at 6-12, 14-20, 22-29.) During this time, the Wrights and the FTC corresponded regarding service of the subpoenas, with the FTC seeking a service waiver, service via email, and formal service, and the Wrights denying that they had been properly served and complaining of the FTC's "severe overreach." (Doc. 322-3 at 38-47.) Affidavits of service signed by the FTC's service processor state that the FTC unsuccessfully attempted to serve the Wrights and Mycobody six times. (Doc. 322-3 at 48-51.) The process server avows that the Wrights were "evading service" on some of these occasions, because he could observe activity in the house but neither of the Wrights would answer the door. (*Id.*) On November 17, 2020, on the seventh attempt, the Wrights also did not answer the door, but the processor observed Dr. Wright walking through the house and left the documents on the doorstep, informing one of the Wrights' children, who had answered the door, that Dr. Wright had been personally served. (*Id.* at 51.) In addition to this service attempt, the FTC mailed and emailed copies of the subpoenas to the Wrights. (Doc. 322-2 at 2 ¶ 2; Doc. 322-3 at 40-41.)

These subpoenas are the subject of the pending motion to compel and motion for a protective order. Because the Wrights never responded to the subpoenas, the FTC informed the Wrights that it would seek to compel compliance in the District of Utah, which the FTC ultimately did on December 23, 2020. (Doc. 253; Doc. 322-3 at 31.)

On April 15, 2021, Magistrate Judge Daphne A. Oberg of the District of Utah transferred the motion to this Court. (Doc. 321.)

On April 21, 2021, the motion to compel was docketed. (Doc. 322.)

On April 22, 2021, the FTC filed a notice of change in circumstances regarding the motion to compel. (Doc. 326.) The FTC stated that although it had not received any responsive documents from the Wrights or Mycobody at the time the motion to compel was filed, the Wrights produced eight pages of documents on December 28, 2020. (Doc. 326-1 at 4-12.) When producing these documents, the Wrights asserted that they had "not

been officially served" but were producing the documents "in the spirit of goodwill." (*Id.* at 5, 6.) Three of the eight pages of documents consist of sworn statements from Jeffrey Wright, Amber Wright, and Amber Wright on behalf of Mycobody to the effect that the Wrights had almost no responsive documents and explaining the few documents that were attached. (*Id.* at 5-6, 10.) The remaining five pages of documents consist of: (1) a Non-Disclosure Agreement between Amber Wright and Defendant Success By Media Holdings, Inc.; (2) a revenue report of Mycoburn sales from August to December 2020; and (3) a certification from Amber Wright that these sales records were records of regularly conducted activity. (*Id.* at 7-9, 11-12.)

On January 27, 2021, the FTC informed the Wrights via email that it believed the responses were incomplete as to all three subpoenas. (Doc. 326-1 at 14-17.) Among other reasons for the FTC's suspicions were Dr. Wright's statement in a December 22, 2020 email that the Wrights would find it difficult to timely comply with the subpoenas because a variety of individuals, including "an accountant, two lawyers, the appropriate manufacturing employees and a few others," would have to be contacted, as those individuals had access to the requested materials including "communications, contracts, agreements, etc." (Doc. 322-3 at 31.) Dr. Wright also stated in that email that he would "need a significantly large amount of time to sort through emails, text, messages [sic], hand written notes, etc." to ensure that confidential medical information was not disclosed. (*Id.* at 32.) The FTC argues these representations are inconsistent with the Wrights' eight-page December 28, 2020 production. (Doc. 326 at 2-3; Doc. 349 at 1-2.)

On May 7, 2021, the Wrights responded to the motion to compel, asserting that they "emailed all subpoena-requested documentation" to the FTC and that they "have no other communication or documentation that corresponds to the written subpoenas." (Doc. 345.) This response took the form of an unsworn letter bearing the e-signatures of the Wrights. (*Id.*)

That same day, the Individual Defendants filed a motion for a protective order preventing further discovery from the Wrights. (Doc. 344.) They argue, without citing

any authority, that the Wrights have complied with the subpoenas, that the requested discovery is duplicative of materials the Individual Defendants have already produced, and, even assuming additional documents exist, they would not be relevant. (*Id.* at 1.)

On May 14, 2021, the FTC filed a reply in support of its motion to compel. (Doc. 349.) "The FTC recognizes that there may be little the Court can do should the Wrights maintain . . . that neither they nor their agents have any responsive documents" and requests the Court order that the Wrights:

> re-search their documents (including emails and text messages) and to direct their "accountant, two lawyers, [and] manufacturing employees" to do the same, and then either
> (1) produce documents sufficient to identify the manufacturer and formulation of Mycoburn (in addition to any other responsive documents, including responsive communications between the Wrights' agents and the Defendants), or
> (2) file with the Court a sworn statement that they and their accountants, lawyers, and manufacturing employees have conducted the additional search and could not find a single responsive document, including any document identifying the manufacturer or formulation of Mycoburn.

(*Id.* at 2-3.) The FTC adds that "[i]n lieu of the search for documents identifying the manufacturer and formulation, the FTC would accept a sworn statement from the Wrights that identifies the manufacturer and formulation." (*Id.* at 3.)

The same day, the FTC filed a response to the Individual Defendants' motion for a protective order. (Doc. 350.) The FTC argues the motion is untimely and that the Individual Defendants have not met their burden. (*Id.* at 1-3.)

The deadline for the Individual Defendants to file a reply has passed, and therefore both motions are ripe for review.

**DISCUSSION**

I.   Motion To Compel

The Court concludes that the motion to compel, as the FTC has modified it in its reply, should be granted for the following reasons.

First, it appears that the Wrights no longer dispute the sufficiency of the FTC's efforts to serve the subpoenas, instead arguing they have complied with the subpoenas

- 5 -

(which indicates service and receipt).  (Doc. 345.)[2]  Nor do the Wrights object to the subpoenas on any other ground, such as relevance.  (*Id.*)

Second, the FTC has raised legitimate reasons to question whether the Wrights' eight-page production on December 28, 2020 was complete.  The Wrights have made no attempt to reconcile that production with Dr. Wright's statement on December 22, 2020, only six days earlier, that they would need additional time to comply in light of the large number of responsive documents and custodians.  Additionally, although the Wrights asserted in their May 7, 2021 letter to this Court that the December 28, 2020 production was complete, they did not sign that letter under penalty of perjury.  Accordingly, the Court finds, in this instance, that a limited compulsion order as proposed in the FTC's reply (with a few modifications, as set out below) would give the Court and the parties assurance that the Wrights have complied with the subpoenas, while not unduly burdening them. *Compare Optimize Tech. Sols., LLC v. Staples, Inc.*, 2014 WL 1477651, *1 (N.D. Cal. 2014) (not compelling production when third party "Adobe asserts that it does not have any other responsive documents and has conducted a second search in response to Optimize's specific request . . . . [and] has certified its discovery responses are 'complete and correct' in accordance with Rule 26(g)(1)(A).").

Third, the Court has a duty to protect third parties like the Wrights and Mycobody from significant expense, Fed. R. Civ. P. 45(d)(2)(B)(ii), but in this instance the additional costs to the Wrights and their agents of running a second search are warranted for the reasons stated in the preceding paragraph.  The costs are also not likely to be significant, because: (1) the Wrights have been aware of the subpoena for at least five months and should not have difficulty determining where to search or which of their agents to enlist in the effort; (2) the Wrights may submit a sworn statement as to Mycoburn's manufacturer and formulation instead of having to locate and produce the underlying documentation; and (3) should these searches prove fruitless, the Wrights can sign a sworn statement to

---

[2] In any event, the Court notes that Rule 45 does not require personal service but rather "a manner of service reasonably designed to ensure actual receipt of [the] subpoena." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 2019 WL 3208114, *2-3 (D. Ariz. 2019) (internal quotation marks omitted) (alteration in original).

that effect. *Cf. Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 58 (N.D. Tex. 2015) ("The Court finds that, with its modifications to the Subpoena's document requests, cost-shifting or deviation from the general assumption that the complying party bears the costs of production is not warranted under all of the circumstances here . . . ."); *Andra Grp., LP v. JDA Software Grp, Inc.*, 312 F.R.D. 444, 456-58 (N.D. Tex. 2015) (granting motion to compel and not imposing cost-shifting measures after modifying subpoena). *See also* 1 Gensler, Federal Rules of Civil Procedure: Rules & Commentary, Rule 45, at 1356 (2021) ("It is important to emphasize that the court . . . can alter the scope or conditions of compliance in ways that minimize or avoid the expenses associated with compliance.").

II.     Motion For A Protective Order

Federal Rule of Civil Procedure 26(c)(1) allows "[a] party or any person from whom discovery is sought" to "move for a protective order." If "good cause" is shown, a court may issue such an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*

The party seeking a protective order "has the burden of proving good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (internal quotation marks omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal quotation marks omitted).

As a preliminary matter, the Individual Defendants have not demonstrated they have standing to seek a protective order. Although "[a] party can move for a protective order in regard to a subpoena issued to a non-party," it may do so only if "it believes its own interests are jeopardized." *In re REMEC, Inc. Sec. Litig.*, 2008 WL 2282647, *1 (S.D. Cal. 2008). *See also* 1 Gensler, Rule 26, at 868 ("The moving party may only seek to protect its own interests and may not seek to assert the rights of others."). The Individual

Defendants have not asserted in any way that their interests are jeopardized by the subpoena to the Wrights and Mycobody, instead complaining of "needlessly involving a third party." (Doc. 344 at 2.) On this record, the Individual Defendants have not shown standing.

Leaving this difficulty aside, the Individual Defendants have not met their burden of showing that specific harm or prejudice would result absent a protective order. The Individual Defendants make no effort to explain how specific harm or prejudice would result from compliance with the subpoenas, instead broadly arguing that the discovery is duplicative, irrelevant, and that the Wrights and Mycobody have already complied. (Doc. 344.) As explained above, further verification as to the completeness of the December 28, 2020 production is warranted. Additionally, the Individual Defendants fail to elaborate on their theory that the proposed discovery is irrelevant and duplicative. Such broad, generalized arguments fail to establish good cause for a protective order. *Cf. Victorino v. FCA US LLC*, 2018 WL 1449528, \*2 (S.D. Cal. 2018) (concluding that similar arguments failed to meet Rule 26(c) burden).

Accordingly,

**IT IS ORDERED** that the FTC's motion to compel (Doc. 322), as modified in its reply (Doc. 349), is **granted**. Within 21 days of the date of this order, Jeffrey Wright, Amber Wright, and Mycobody shall:

(1) Conduct another search for responsive documents, including emails and text messages;

(2) Direct their accountant(s), lawyer(s), manufacturing employee(s), and any other persons who have access to responsive materials (collectively, the "agents") to conduct a search for potentially responsive documents to which the agents have access; and

(3) Upon the completion of steps (1) and (2), produce any responsive documents, including responsive, non-privileged documents between the Wrights' agents and the Defendants.

  (4) If no additional responsive documents can be found, Jeffrey Wright, Amber Wright, and Mycobody shall file a sworn statement that they and the agents have conducted the additional search and could not find any responsive documents, including any document identifying the manufacturer or formulation of Mycoburn.

  (5) In lieu of searching for documents sufficient to identify the manufacturer and formulation of Mycoburn, Jeffrey and/or Amber Wright may prepare a sworn statement identifying the manufacturer and formulation of Mycoburn.

**IT IS FURTHER ORDERED** that the Individual Defendants' motion for a protective order (Doc. 344) is **denied**.

Dated this 28th day of May, 2021.

Dominic W. Lanza
United States District Judge