WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D Noland, Jr., et al., | |
| Defendants. | |

On February 18, 2021, hundreds of Proposed Intervenors filed a motion to intervene in this action. (Doc. 274.) On April 2, 2021, after the motion had been fully briefed, the Court denied the motion to intervene as untimely (the "April Order") (Doc. 313).

On June 1, 2021, the Proposed Intervenors, now numbering "nearly 1,000" persons, filed a "renewed Rule 24 motion to intervene" (the "Renewed Motion"). (Doc. 358.) The Renewed Motion is fully briefed and neither side has requested oral argument. (Docs. 359, 361.) For the following reasons, the Renewed Motion is denied.

**BACKGROUND**

I. Overview Of Parties, Claims, And Proposed Parties

This case concerns the business activities of Success By Health ("SBH"), which is "an affiliate-marketing program that sells coffee products and other nutraceuticals through its online platform and network of affiliates." (Doc. 106 at 1-2.) Plaintiff Federal Trade Commission (the "FTC") asserts, among other things, that SBH is an illegal pyramid scheme and that James Noland, Lina Noland, Thomas Sacca, and Scott Harris (together,

the "Individual Defendants") have made false statements to SBH's affiliates. (Doc. 3.)

The Proposed Intervenors are SBH affiliates. (Doc. 274 at 1, 16-23 ¶¶ 1-101; Doc. 312.) As discussed in the April Order, a great deal of litigation activity has already occurred in this case, much of it with the benefit of input from SBH affiliates, including some of the Proposed Intervenors.

## II. Relevant Procedural History

### A. **Procedural History Before The April Order**

The Court incorporates by reference the extensive litigation history of this case set out in the April Order, including the many ways in which many SBH affiliates who are among the Proposed Intervenors have participated. (Doc. 313 at 2-5.)

### B. **The (Dismissed) Appeal Of The April Order**

On April 19, 2021, the Proposed Intervenors filed a notice of appeal of the April Order. (Doc. 318).

The Renewed Motion was filed on June 1, 2021, while the Ninth Circuit appeal was still pending. (Doc. 358.)

After the FTC argued in response to the Renewed Motion that the Court lacked jurisdiction to decide it while the original motion was on appeal (Doc. 359 at 1-3), the Proposed Intervenors moved to voluntarily dismiss their appeal (Doc. 361 at 6-7.)

On July 23, 2021, the Ninth Circuit dismissed the appeal. *FTC v. Noland*, 21-15767 (9th Cir. July 1, 2021), Docs. 9, 10.

On July 26, 2021, the Ninth Circuit's dismissal order was served on this Court, which acted as the mandate. (Doc. 378.) The Court accordingly now possesses jurisdiction to resolve the Renewed Motion.

### C. **Other Relevant Procedural History Since the April Order**

This case has continued to demand the active attention of the parties and the Court since the issuance of the April Order. The Court need not recount in detail the many motions the parties have filed and briefed, and the Court has resolved, since April 2, 2021. But the Court notes that between April 2, 2021 and June 1, 2021, when the Renewed

Motion was filed, 44 entries were filed on the docket, including some that involved discovery against two SBH affiliates who are among the Proposed Intervenors. (Docs. 314-57.)[1]

Additionally, the parties have extensively litigated the effect of the Supreme Court's April 22, 2021 decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021). Specifically, on the same day that *AMG Capital* was decided, the Court ordered the parties to meet and confer about the issues raised by *AMG Capital* and then submit a joint memorandum summarizing the parties' positions on those issues. (Doc. 325.)

On April 29, 2021, the parties filed their joint memorandum. (Doc. 330.)

On May 3, 2021, the Court held a telephonic status conference. (Doc. 334, 342.) Based on the joint memorandum and the parties' arguments during the status conference, the Court ordered the Individual Defendants to file any motion to dissolve or modify the preliminary injunction and receivership that are in effect in this case by May 21, 2021. (Doc. 334.)

On May 21, 2021, the Individual Defendants filed a "memorandum" on the "Effect of *AMG Capital Management* on this Case." (Doc. 352.) On May 28, 2021, the FTC filed a response to the memorandum. (Doc. 355.) On June 1, 2021, the Individual Defendants filed a reply. (Doc. 357.)

One June 15, 2021, the Court issued an order regarding the Individual Defendants' memorandum. (Doc. 362.) In the order, the Court noted its openness to revising the asset freeze and receivership provisions of the preliminary injunction in light of *AMG Capital*. (*Id.* at 1-2.) The Court observed, however, that the Individual Defendants filed a memorandum rather than a motion, so there was "no proper request for judicial relief pending before the Court" and accordingly declined to take any action at that time. (*Id.* at 2-3.) The Court also concluded that even if the Individual Defendants had filed a motion,

---

[1] The two Proposed Intervenors in question are Jeffrey and Amber Wright. (Docs. 322, 358-1 at 23.) The FTC moved to compel the Wrights to produce documents pursuant to a Rule 45 subpoena, which resulted in full briefing of that motion as well as a motion for a protective order filed by the Individual Defendants. (Docs. 322, 326, 344-45, 349-50.) The Court resolved these motions in a May 28, 2021 order. (Doc. 356.)

1 the Court did not have jurisdiction to dissolve or modify the asset freeze and receivership because the Individual Defendants had a pending appeal before the Ninth Circuit challenging the Court's October 27, 2020 order denying the Individual Defendants' motion to dissolve or modify the preliminary injunction. (*Id.* at 3-4.) The Court finally noted that, in a series of recent decisions, the Ninth Circuit did not seem to interpret *AMG Capital* in the expansive manner urged by the Individual Defendants. (*Id.* at 4.)

On July 28, 2021, the Ninth Circuit issued a memorandum disposition affirming the Court's denial of the Individual Defendants' motion to dissolve or modify the preliminary injunction. *FTC v. Noland*, 20-17324 (9th Cir. July 28, 2021), Doc. 60-1. The panel stated: "We leave it to the district court in the first instance to consider whether and to what extent the *decision* in *AMG Capital Management* . . . bears on the preliminary injunction." *Id.* at 3.

**DISCUSSION**

I. <u>Legal Standard</u>

"Rule 24 recognizes two types of intervention: (1) intervention of right; and (2) permissive intervention. Courts must permit intervention of right, but may permit or deny permissive intervention." 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 24, at 716 (2021). As in their original motion, the Proposed Intervenors in the Renewed Motion seek to intervene under both theories.

Intervention of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts in the Ninth Circuit employ a four-part test when analyzing intervention of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). These requirements are broadly construed because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation omitted). That said, "[f]ailure to satisfy any one of the requirements is fatal to the application," and the Court "need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Permissive intervention, on the other hand, is available "on timely motion" to "anyone . . . who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted). "The district court is given broad discretion to make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

II. <u>Analysis</u>

  A. **Parties' Arguments**

The Proposed Intervenors argue that "the factual and legal circumstances of this case have shifted markedly, necessitating that the Court now grant Proposed Intervenors' motion." (Doc. 358 at 1-2.) Factually, they argue, circumstances have changed because instead of there being 710 Proposed Intervenors, there are now "nearly 1,000." (*Id.* at 2.) Legally, they argue, *AMG Capital* has "laid bare" the unlawful nature of this FTC enforcement action, which means that the Proposed Intervenors should now have the opportunity to intervene. (*Id.*) As for timeliness, they argue that the "totality of the circumstances" inquiry weighs in their favor now, several months after their original motion was ruled untimely, because *AMG Capital* has shown that this action is unlawful, so "it is not only appropriate, but necessary" that intervention be permitted. (*Id.* at 11-12.) As for the remaining intervention factors, the Proposed Intervenors largely rehash—at

times verbatim—the arguments from their original motion. (*Id.* at 12-16 & n.3.)

The FTC responds, in relevant part, that the Renewed Motion should be treated as a motion for reconsideration, and, because the Renewed Motion fails to comply with the rules applicable to motions for reconsideration, it should be denied. (Doc. 359 at 3-5.) The FTC argues in the alternative that the Renewed Motion should be denied on the merits. (*Id.* at 5-6.)

The Proposed Intervenors reply that the Renewed Motion "is not, as the FTC contends, a motion for reconsideration of the Court's prior ruling." (Doc. 361 at 2.) They also reassert that *AMG Capital* renders the Renewed Motion timely, because *AMG Capital* "requires a careful reexamination of the legitimacy of this action." (*Id.* at 3.) They argue that although they seek the same outcome as the Individual Defendants, they "are independently interested in continuing their own thriving businesses, which have been considerably harmed by the FTC's action in this matter." (*Id.* at 3-4.) They contend they "offer a uniquely valuable and credible perspective on the allegations against the defendants." (*Id.* at 4.)[2]

B. **Merits**

The Proposed Intervenors avow that they are not seeking reconsideration of the April Order, which denied their earlier intervention request on untimeliness grounds. Instead, their theory seems to be that they are bringing a standalone intervention motion predicated on the impact of *AMG Capital* and the swelling of their ranks to nearly 1,000 persons. The Renewed Motion is denied on the merits.[3]

---

[2] The Proposed Intervenors also contend they have standing to intervene in this action. (Doc. 358 at 10-11; Doc. 361 at 1.) The FTC does not argue otherwise. (Doc. 359.) As noted in the April Order, in some FTC enforcement actions, nonparties who have suffered financial harm as a result of the action have been found to have Article III standing to intervene. *FTC v. Nudge, LLC*, 2020 WL 6881846, *3 (D. Utah 2020) ("The injury they claim is the loss of monthly payments due to them . . . since the entry of the of the injunction in this case. This injury is neither speculative nor hypothetical . . . .").

[3] Were the Court to construe the Renewed Motion as a motion for reconsideration, it would be denied under LRCiv 7.2(g) because it repeats many of the written arguments the Proposed Intervenors made in their original motion. LRCiv 7.2(g)(1). Further, the Renewed Motion was filed 60 days after the April Order was issued and 39 days after the Supreme Court's *AMG Capital* decision was issued, rendering it untimely. LRCiv 7.2(g)(2).

- 6 -

1.     Timeliness

As noted in the April Order, when determining the timeliness of a motion to intervene, courts consider "three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (internal quotation marks omitted). "[T]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). The same three timeliness factors apply to requests for intervention as of right and permissive intervention. *Wilson*, 131 F.3d at 1308. "In the context of permissive intervention, however, [courts] analyze the timeliness element more strictly than . . . with intervention as of right." *Id.* "[A]ny substantial lapse of time weighs heavily against intervention." *Id.* at 1302 (internal quotation marks omitted).

The April Order explained at length why the Proposed Intervenors' original motion was untimely. (Doc. 313 at 6-12.) Unsurprisingly, the same factors that weighed against a finding of timeliness four months ago weigh against a finding of timeliness now, and the Court adopts the reasoning of the April Order for purposes of resolving the Renewed Motion.

The Court also notes that the FTC has now filed not one but two pending motions for summary judgment, one of which is already fully briefed. (Docs. 285, 335, 370, 365.) There is also a pending motion for preliminary injunction wherein the FTC seeks an asset freeze and receivership to preserve funds for a monetary judgment under Section 19 of the FTC Act. (Docs. 351, 360, 363.) Thus, this proceeding is at an even more advanced stage and sensitive time than it was before, and the first and second timeliness factors weigh even more strongly against the Proposed Intervenors now.

As for the remaining timeliness factor, the reason for and length of the delay, the Proposed Intervenors seem to suggest that the delay in this instance is justified because the

decision in *AMG Capital* has shifted the legal landscape. Indeed, *AMG Capital*, and the addition of close to 300 additional Proposed Intervenors, are the two bases for the Proposed Intervenors' assertion that the Renewed Motion should be granted. The Court disagrees on both counts.

First, the Proposed Intervenors fail to demonstrate that *AMG Capital* in any way alters the timeliness analysis. As discussed in the April Order, the Proposed Intervenors became aware as early as January 2020 (and by no later than September 2020) that their protected interests were being affected by this litigation and that the existing parties were purportedly not protecting those interests. (Doc. 313 at 10.) Although the Proposed Intervenors may view *AMG Capital* has providing additional support for the arguments they wish to advance, they have been aware of those arguments for a very long time. Tellingly, the proposed complaint the Proposed Intervenors attached to the Renewed Motion (Doc. 358-2) appears to be identical in substance (except for the addition of the new Proposed Intervenors) to the proposed complaint they attached to the original motion (Doc. 274 at 15-32). This underscores that *AMG Capital* did not somehow result in the Proposed Intervenors discovering the existence of protected interests of which they were previously unaware. And as the Ninth Circuit has emphasized, "[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith*, 830 F.3d at 854. "A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004). Accordingly, the reason-for-and-length-of-delay factor still weighs strongly against a finding of timeliness.

Second, the Court is unpersuaded that the growth of the Proposed Intervenors' purported class from 710 to "nearly 1,000" persons has any effect on the timeliness analysis of Rule 24. As with their *AMG Capital*–based arguments, the Proposed Intervenors' argument that their greater numbers weigh in favor of intervention is unsupported by legal authority or proper analysis of factors relevant to the Rule 24 timeliness inquiry.

- 8 -

The balance of the timeliness factors continues to weigh strongly against a finding of timeliness.

### 2. Other Considerations

In the April Order, the Court raised a number of considerations in addition to timeliness that weighed against granting intervention, including that (1) the Proposed Intervenors' request to intervene in an FTC enforcement action while proceeding as a putative class is highly unusual and perhaps unprecedented; (2) courts generally deny requests by nonparties to intervene in FTC enforcement actions because there is a presumption that the FTC, as a government litigant, adequately protects its constituents' interests—a presumption that can be overcome based exceptions that are inapplicable here; and (3) a proposed intervenor generally cannot intervene simply on the basis that the action is resulting in disruption of his or her business. (Doc. 313 at 12-14.)

The Renewed Motion fails to address the first and third points. The Proposed Intervenors do add a new paragraph arguing that the FTC should not enjoy the presumption of adequately protecting its constituents' interests because this action "is both unsupported by the plain language of the FTC Act and had the intent and effect of avoiding the procedural safeguards and rulemaking process contemplated by Sections 5 and 19 of the law." (Doc. 358 at 14.) But this argument ignores the legal authority in the April Order suggesting that intervention in FTC enforcement actions appears generally to be limited to instances where the proposed intervenor wants to challenge the disposition of a single asset. *See, e.g.*, *FTC v. Nudge, LLC*, 2020 WL 6881846, *3 (D. Utah 2020) (intervention granted so married couple could pursue the claim that restrained company should be allowed to continue making payments to them pursuant to a settlement agreement executed before the enforcement action arose); *FTC v. Loss Mitigation Servs. Inc.*, 2009 WL 10673186, *2 (C.D. Cal. 2009) (intervention granted so entity could pursue the claim that it was the true owner of a bank account containing just over $175,000 that the court-appointed received "wrongly took possession of"). As the April Order noted, such circumstances are a far cry from engrafting a 1,000-member class action onto an FTC enforcement action after

discovery has already closed (and one summary judgment motion has already become fully briefed) in order to challenge, among other things, the propriety of the FTC's decision to pursue the enforcement action in the first instance. (Doc. 313 at 12-13.)

Further, even if the Proposed Intervenors believe the FTC is not adequately representing their interests, they have conceded that "the Proposed Intervenors and the defendants are seeking the same outcome to this litigation." (Doc. 361 at 3.) Thus, although the Proposed Intervenors may be "independently interested in continuing" their SBH businesses and offering their "uniquely valuable and credible perspective on the allegations against the defendants," the Proposed Intervenors have failed to show that their interests are not adequately protected by the Individual Defendants who, as conceded, seek the same outcome in this case and are actively seeking to dismiss the action and/or dissolve the permanent injunction. (*See, e.g.*, Doc. 383 [motion to dissolve the preliminary injunction order and motion to stay or dismiss § 13(b) proceedings filed on July 30, 2021].)

The Court acknowledges that the Proposed Intervenors have strongly held and passionate views about the FTC's allegations and other aspects of this case. As noted in the April Order, the Court has been made aware of these views through the many declarations submitted by some of the Proposed Intervenors. The outcome of this order should not be taken as a signal that the Court is unmindful or dismissive of the Proposed Intervenors' concerns. Instead, the Court's conclusion reflects its duty to follow the law, which clearly compels the denial of this unusual and untimely intervention motion.

Accordingly,

**IT IS ORDERED** that the Proposed Intervenors' renewed Rule 24 motion to intervene (Doc. 358) is **denied**.

Dated this 2nd day of August, 2021.

Dominic W. Lanza
United States District Judge