**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

On July 27, 2021, Kimberly I. Friday ("the Receiver") announced that she has accepted "new employment that [will] not afford her the ability to retain her role as a court-appointed receiver" and stated that her resignation will take effect "after August 12, 2021." (Doc. 379.) In her resignation notice, the Receiver also recommended that the Court appoint Peter S. Davis, who has provided forensic accounting services to her throughout this case and has extensive experience serving as a court-appointed receiver in other matters, as her replacement. (*Id.*) Afterward, the FTC expressed its agreement with the Receiver's proposal to have Mr. Davis serve as her replacement. (Doc. 389.) However, after the Court solicited their views (Doc. 390), the Individual Defendants identified various reasons why they object to the Receiver's proposal. (Doc. 393.)

The Receiver's resignation is a surprising development that comes at a delicate time in this case. The Court has stated on several occasions that it is open to the idea of modifying or dissolving the receivership and asset freeze in light of the Supreme Court's April 2021 decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021).

However, due to the Individual Defendants' interlocutory appeal of the Court's denial of their earlier motion to dissolve or modify the preliminary injunction (which was filed, and denied, before *AMG Capital* was decided), the Court has been divested of jurisdiction over this issue for many months. Nor will the Court regain jurisdiction anytime soon. Although the Individual Defendants assert that the "mandate will issue on or before August 25, 2021" (Doc. 393 at 1), this appears to be a miscalculation. Under Rule 41(b) of the Federal Rules of Appellate Procedure, the "mandate must issue 7 days after the time to file a petition for rehearing expires." Meanwhile, under Rule 40(a)(1) of the Federal Rules of Appellate Procedure, although the default rule is that a petition for rehearing must be filed within 14 days after entry of judgment, this deadline is extended to 45 days when, as here, the underlying matter is a "civil case" and "one of the parties is . . . a United States agency." Thus, because the Ninth Circuit's decision in this case was issued on July 28, 2021, it follows that the Individual Defendant have until September 11, 2021 to file a petition for rehearing and, if no petition is filed,[1] the mandate will issue on September 18, 2021.

The confluence of all of these developments—the issuance of *AMG Capital*, the Receiver's unexpected resignation, and the divestiture of jurisdiction brought about by the Individual Defendants' interlocutory appeal—creates a dilemma. The Court cannot simply wait until September 18, 2021 to take any action because the Receiver intends to resign before then. In a previous order, the Court indicated that it was inclined to go along with the Receiver's proposal to appoint Mr. Davis as her replacement because that approach would preserve the status quo until the issuance of the mandate. (Doc. 390.) Having now considered the Individual Defendants' objections to that proposal (Doc. 393), as well as the Receiver's most recent report (Doc. 394-1), the Court acknowledges that the Receiver's proposal has flaws but concludes that it remains the best available option despite those flaws.

The most obvious downside to the replacement plan is that it will inevitably result

---

[1] The Individual Defendants clarify that "[t]here will be no petition for rehearing of that Ninth Circuit order, so it is just a matter of time before the mandate issues." (Doc. 393 at 1.)

in increased costs as Mr. Davis gets up to speed regarding his new responsibilities. Although the Court is hopeful that such costs can be kept to a minimum, due to Mr. Davis's extensive receivership experience and his previous work on this case, they will still exist. The Court is aware that the Individual Defendants have raised many objections throughout this case to what they view as excessive expenditures by the Receiver, so any development that would result in even more receivership-related expenditures—particularly when the question of the continued existence of the receivership will be back before the Court in the near future—is unfortunate.

Nevertheless, the alternatives proposed by the Individual Defendants are even more flawed. For example, the Individual Defendants argue that, because "*AMG Capital* makes it clear that the appointment of a receiver in a § 13(b) case is improper," it follows that "this court will be compelled to vacate its receivership order upon the Ninth Circuit's mandate" and "[j]ustice militates against appointing an interim receiver with associated costs for a two-week period." (Doc. 393 at 1.) There are several problems with this argument. First, the Court is not convinced that *AMG Capital* automatically requires the dissolution of the receivership in this action. The narrow holding of *AMG Capital* was that the FTC may not seek equitable monetary relief in a § 13(b) case, *see generally FTC v. SuperTherm Inc.*, 2021 WL 3419035, *6-7 (D. Ariz. 2021), but the purpose of the receivership in this action was not solely to safeguard assets in anticipation of a future monetary award under § 13(b) (instead, it was also to prevent ongoing harm) and the FTC's claims for monetary relief in this action are not limited to § 13(b). This discussion should not be read as prejudging whether the Court will, in fact, allow the receivership to remain in place once the mandate issues and the Court's jurisdiction to consider this issue is restored. The point is simply that the issue is more complicated than the Individual Defendants portray it to be. Second, the Individual Defendants' argument is also premised on the notion that there will only be a "two-week period" in which Mr. Davis's services are needed. But as discussed above, this is a miscalculation—it will be at least five weeks before the mandate issues.

The Individual Defendants also state that the Court can issue an indicative ruling under Rule 62(d)(1) regarding their pending (but still not fully briefed) post-*AMG Capital* motion to dissolve the receivership and preliminary injunction. (Doc. 393 at 2.)  But this proposal comes far too late.  The Receiver's resignation is imminent.  There is no time to wait for the motion to become fully briefed, and then consider it and issue an indicative ruling, and then wait to see how the Ninth Circuit responds to the indicative ruling.  Something needs to be done now.

Next, the Individual Defendants argue that the Court can "order[] the individual defendants to carry on the business of Success By Media as it has been carried on by the receiver." (*Id.*)  But this is just a backdoor attempt to dissolve the receivership—something the Court currently lacks jurisdiction to do.  Further, the Receiver's most recent report, issued earlier today, accuses the Individual Defendants of violating the terms of the preliminary injunction (by failing to provide a detailed description of the intended activities of their new business venture, "SBH Products, Inc."), of operating this new business venture in an illegal manner (by, among other things, using SBM's proprietary formulas and goodwill without permission), and of defrauding affiliates in an effort to raise legal defense funds for this case (by making false statements about the supposed existence of a bank account filled with withheld commissions, when in fact "there is no such account"). (Doc. 394-1 at 4-5.)  The Court recognizes that these accusations, as serious as they may be, are just accusations at this point and the Individual Defendants have not yet had an opportunity to respond.  Nevertheless, the presence of such accusations calls into question the Individual Defendants' assurance that they could be trusted to operate the business lawfully if the receivership were dissolved.  In a similar vein, the Court is currently in the process of reviewing the FTC's motion for spoliation sanctions (Doc. 259) and the FTC's motion for summary judgment on liability (Doc. 285) and hopes to resolve each motion soon.  Because the resolution of those motions has the potential to bear on the suitability of the Individual Defendants to resume control over the business of Success by Media, this provides even more reason to wait until the issuance of the mandate to decide, on the merits,

whether the receivership should remain in effect.

Finally, the Individual Defendants raise an objection that is specific to Mr. Davis—they contend that, because he (unlike the Receiver) is not a licensed attorney, he cannot serve as counsel for the Corporate Defendants. (Doc. 393 at 2.) This is a fair point, but the solution isn't to preclude Mr. Davis from serving as the Receiver's successor. As discussed in a previous order, it was the Receiver's decision, pursuant to her "authority 'do what she deems is necessary or advisable with regard to the employment of attorneys' by the Receivership Entities," to decline to hire the Individual Defendants' preferred law firm to represent the Corporate Defendants and to instead appoint herself as the Corporate Defendants' counsel. (Doc. 168 at 5.) Once Mr. Davis replaces the Receiver, he very well make a different choice as to the representation issue. Indeed, the Court would encourage Mr. Davis to consider allowing the Individual Defendants' current counsel to take over as the Corporate Defendants' counsel upon his appointment (assuming he can work through the privilege issues addressed in the order at Doc. 168 and assuming they are still interested in serving in this capacity, given the Corporate Defendants' limited remaining funds), given all of the changes that have occurred in this case since the Receiver made her initial representation decision (and given Mr. Davis's inability to serve as the Corporate Defendants' counsel).[2] But that is a decision for Mr. Davis to make.[3]

…

…

…

…

…

---

[2] If Mr. Davis allows the Individual Defendants' current counsel to take over the representation of the Corporate Defendants, counsel and the FTC are ordered to meet and confer about the additional discovery and other steps, if any, that must be taken to place the Corporate Defendants on the same footing as the Individual Defendants in this litigation. Afterward, the parties shall file a joint notice summarizing their positions.

[3] The Court does not view the pending Ninth Circuit appeal as precluding Mr. Davis from naming new counsel to represent the Corporate Defendants. The order under appeal (Doc. 168) only recognized the receiver's authority to make the representation decision, and that authority remains in place.

Accordingly, **IT IS ORDERED** that:

(1) The Receiver's motion to appoint a replacement (Doc. 379) is **granted**.

(2) Kimberly I. Friday is no longer bound by and is hereby discharged and released from her duties, obligations, and responsibilities as Receiver as set forth in the February 28, 2020 Order (Doc. 109), and any other orders of the Court related to her appointment as Receiver.

(3) Peter S. Davis is hereby substituted as Receiver for the Receivership Entities, as previously defined (Doc. 109 at 3), in this case and all matters before this Court and shall have all duties, obligations, and responsibilities previously bestowed upon Ms. Friday during her tenure as Receiver for the same, including those duties specified in the February 28, 2020 Order Imposing Preliminary Injunction and Other Relief Against Defendants (Doc. 109).

Dated this 12th day of August, 2021.

Dominic W. Lanza
United States District Judge