**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

Now pending before the Court are a pair of related motions: (1) the FTC's motion for preliminary injunction with asset freeze and receivership (Doc. 351); and (2) the Individual Defendants' motion to dissolve the preliminary injunction and stay or dismiss § 13(b) proceedings (Doc. 383). Both motions are fully briefed (Docs. 360, 363, 391, 396) and neither side has requested oral argument.

Although the Court was previously divested of jurisdiction over these motions (while the Individual Defendants pursued an interlocutory appeal of a related issue), the Ninth Circuit has now issued its mandate. (Doc. 409.) For the following reasons, the FTC's motion is granted and the Individual Defendants' motion is denied.

## RELEVANT BACKGROUND

The background details of this case are set out in extensive detail in earlier orders, including the recent order granting the FTC's motion for summary judgment as to liability. (Doc. 406.) In the interest of brevity, this summary will only address some of key developments bearing on the two pending motions.

In this action, the FTC accuses the Individual Defendants of operating a pair of related businesses—(1) Success By Health ("SBH"), a multi-level marketing enterprise involving coffee, other beverages, and nutraceutical products, and (2) VOZ Travel, a multi-level marketing enterprise involving travel package discounts—as pyramid schemes, of making false statements about the likelihood of earning substantial income through these enterprises, and of otherwise providing the means and instrumentalities for the commission of deceptive acts and practices. As for these three claims, the FTC seeks relief pursuant to § 13(b) of the FTC Act. Additionally, the FTC accuses the Individual Defendants of violating several FTC rules related to product-shipping and refund practices. As for these claims, the FTC seeks relief pursuant to § 19 of the FTC Act.

At the time this action was filed in January 2020, Ninth Circuit law authorized the FTC to seek equitable monetary remedies (such as restitution or disgorgement) pursuant to its authority under § 13(b) of the FTC Act. *FTC v. AMG Capital Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018). Accordingly, during the early stages of the case, the FTC successfully moved for a temporary restraining order ("TRO"), and then a preliminary injunction, based on its first two § 13(b) claims (*i.e.,* the pyramid-scheme claim and false-statements claim). (Docs. 19, 38, 106, 109.) The FTC did not, in contrast, seriously pursue preliminary injunctive relief based on its rule-based claims under § 19.

One component of the TRO and preliminary injunction was a freeze of the Individual Defendants' assets. The FTC's stated purpose in seeking the asset freeze was to provide for "consumer redress" (Doc. 8 at 7)—that is, to lock up the Individual Defendants' assets in anticipation of obtaining a future restitution award pursuant to its § 13(b) claims. Another component of the TRO and preliminary injunction was the appointment of a receiver to assume control over SBH and related entities. The Court granted this request, despite its extraordinary nature, in part because one of the principals of SBH and VOZ Travel, Jay Noland, was the subject of a permanent injunction issued in 2002, as part of an earlier FTC enforcement action involving an alleged pyramid scheme, and the evidence suggested that Noland's challenged conduct in this case likely constituted

a violation of the permanent injunction. (Doc. 106 at 27.)

Several months after the issuance of the preliminary injunction, the United States Supreme Court granted certiorari in *AMG Capital* (which, as noted, was the Ninth Circuit decision that, at the time this action was filed, authorized the FTC to seek equitable monetary remedies under § 13(b) of the FTC Act). Soon afterward, the Individual Defendants moved to dissolve or modify the preliminary injunction. (Doc. 187.) After full briefing, the Court denied the motion, reasoning that "even though the Individual Defendants very well may be correct that, once the dust settles [in *AMG Capital*], the FTC's ability to seek restitution and asset freezes will be significantly curtailed . . . this Court must follow existing Ninth Circuit precedent, which permits the FTC to seek restitution, to seek a freeze of assets held by non-parties, and to seek appointment of a receiver." (Doc. 224 at 3, cleaned up.) The Individual Defendants, in turn, pursued an interlocutory appeal of this order. (Doc. 239.)

On April 22, 2021—while the Individual Defendants' interlocutory appeal was still pending—the Supreme Court issued its decision in *AMG Capital*, holding that the FTC may not obtain "equitable monetary relief such as restitution or disgorgement" pursuant to its authority under § 13(b). *AMG Capital Mgmt., LLC v. FTC*, 141 S.Ct. 1341, 1344 (2021).

That same day, the Court ordered the parties to meet and confer about *AMG Capital*'s effect on this case and submit a joint memorandum summarizing their positions. (Doc. 325.) After the parties' submission of the joint memorandum (Doc. 330), as well as further proceedings and briefing (Docs. 334, 352, 355, 357), the Court concluded that it lacked jurisdiction to dissolve or modify the asset freeze and receivership in light of the Individual Defendants' then-pending appeal. (Doc. 362.)

On May 18, 2021, the FTC filed the pending motion for a preliminary injunction with asset freeze and receivership. (Doc. 351.) As discussed in more detail below, this motion essentially seeks to keep in place the preliminary injunction that was issued in February 2020 by identifying additional grounds for relief that are not implicated by *AMG Capital*. This motion later became fully briefed. (Docs. 360, 363.)

On July 28, 2021, the Ninth Circuit affirmed the Court's order denying the Individual Defendants' request to modify or dissolve the preliminary injunction, holding that the Court "correctly concluded" that the grant of certiorari in *AMG Capital* did not constitute a significant change in the law and "leav[ing] it to the district court in the first instance to consider whether and to what extent the *decision* in *AMG Capital* . . . bears on the preliminary injunction." *FTC v. Noland*, 854 F. App'x 898 (9th Cir. 2021).

On July 30, 2021—that is, two days after the issuance of the Ninth Circuit's decision—the Individual Defendants filed the pending motion to dissolve the preliminary injunction and stay or dismiss the FTC's § 13(b) claims. (Doc. 383.) This motion later became fully briefed. (Docs. 391, 396.)

On August 30, 2021, after full briefing, the Court granted the FTC's motion for spoliation sanctions against the Individual Defendants, concluding that "[t]he Individual Defendants' systematic efforts to conceal and destroy evidence are deeply troubling and have cast a pall over this action." (Doc. 401 at 2.)

On September 9, 2021, after full briefing, the Court granted the FTC's motion for summary judgment as to liability on all of its claims against the Individual Defendants. (Doc. 406.)

On September 22, 2021 (yesterday), the Court received notice that the mandate had issued in the Individual Defendants' interlocutory appeal related to the preliminary injunction. (Doc. 409.) The issuance of the mandate had the effect of restoring the Court's jurisdiction to rule on the two pending motions related to the preliminary injunction.

**DISCUSSION**

I.  The FTC's Motion

    A.  **The Parties' Arguments**

When granting the FTC's original request for a preliminary injunction, the Court only made findings of fact with respect to two of the FTC's claims—its pyramid-scheme and false-statements claims under § 13(b). (Doc. 106 at 10 ["The FTC alleges that (1) Defendants are operating an illegal pyramid scheme, (2) Defendants have made false and

misleading representations, and (3) Defendants have violated two FTC rules governing refunds and shipping time. During oral argument, however, the FTC clarified that the rules violations, standing alone, likely would not warrant injunctive relief. Accordingly, the Court focuses on the first two allegations."].) Based on those findings, the Court held that an asset freeze and receivership were warranted. (*Id.* at 26-29.)

In its renewed motion for a preliminary injunction, the FTC acknowledges that the asset-freeze component of the earlier order cannot be sustained on the current record. (Doc. 351 at 1, 15.) This is because the sole purpose of the asset freeze was to preserve funds that could be used to satisfy a future monetary judgment based on the FTC's § 13(b) claims, but following *AMG Capital*, such claims may no longer give rise to monetary awards. (*Id.*) Nevertheless, the FTC urges the Court to keep the asset freeze in place because it is likely to secure a monetary judgment against the Individual Defendants based on its § 19 claims (and/or based on its contempt claim in a separate action related to the 2002 permanent injunction) and *AMG Capital* does not undermine its authority to obtain monetary remedies based on such claims. (*Id.* at 13-17.) Finally, as for the receivership component of the earlier order, the FTC argues that it remains valid post-*AMG Capital* because it was imposed for a purpose other than satisfying a future § 13(b)-based monetary judgment (*i.e.,* to prevent ongoing consumer harm). (*Id.* at 1.) The FTC also contends the need for a receivership is amplified by the Individual Defendants' "misconduct since entry of the Preliminary Injunction." (*Id.* at 1, 15-16.)

The Individual Defendants oppose the FTC's motion. (Doc. 360.) As an initial matter, the Individual Defendants sharply criticize the litigation conduct of the FTC in this and other cases, accusing the FTC of engaging in a decades-long scheme of "calculating effrontery" and "conniving expansion of its powers" and faulting the FTC for failing to display any "contrition" or "self-examination" after the "smackdown" in *AMG Capital*. (Doc. 360 at 1-3.) The Individual Defendants also contend that the FTC's current request amounts to "ask[ing] for the same sort of relief it got illegally under § 13(b) by changing its horse in midstream to get the same thing under § 19" (*id.* at 3); argue that the true

consumer harm in this case has been caused by the receiver's takeover of SBH, not by their conduct that preceded the takeover (*id.* at 4-7); and spend several pages, as they have in other filings in this case, explaining why they believe the accusations against them are the product of a grudge held by a former colleague (*id.* at 7-9.) On the merits, the Individual Defendants identify three reasons why the FTC's § 19 claims do not provide a valid basis for injunctive relief: (1) the § 19 violations in this case were committed by corporate entities and "[i]f a corporation violated a rule, than [sic] it is the corporation that is sued, not the principals of the corporation" (*id.* at 9-10); (2) an "important part of the statute is the requirement of the violation of either a rule or a final cease-and-desist order" and "[n]one of the defendants violated a cease-and-desist order" (*id.* at 10); and (3) although SBH "technically did violate both the Merchandise Rule and the Cooling-off Rule," the FTC has not establish any "harm" or "damage" arising from the rule violations (*id.* at 10-12). Finally, as for the FTC's suggestion that the asset freeze should be kept in place so assets are available to satisfy a future monetary judgment in the contempt action related to the 2002 permanent injunction, the Individual Defendants respond that (1) the permanent injunction issued against Noland in 2002 was "obtained through an abuse of section 13(b)" and (2) in any event, "seeking relief in this 2020 case for a claimed violation of the 2002 case is inappropriate" because "the 2002 case . . . has not been consolidated in this matter." (*Id.* at 12-13.)

B. **Analysis**

The FTC's motion is granted. First, the Court agrees with the FTC that *AMG Capital* does not undermine the receivership component of the original order granting a preliminary injunction. The purpose of the receivership was not merely to preserve assets in anticipation of a future award of monetary remedies pursuant to the FTC's § 13(b) claims—to the contrary, a key reason why the Court imposed the receivership was to prevent ongoing and future harm, by ousting the Individual Defendants from their management positions in entities that were likely functioning as pyramid schemes and making false income representations. (Doc. 106 at 27, 29 [emphasizing that "it would be

inappropriate to allow Defendants to continue having any role in running a business that is likely deceiving and harming consumers" and that "the Court finds that extensive injunctive relief is necessary to protect consumers from further harm"]; Doc. 342 at 35 ["[T]here were two different grounds on which the FTC was seeking the imposition of receivership. In part it was to preserve assets for a future award . . . . But in part the FTC also sought . . . a receivership based on a fear that because of the past violations new management needed to be put into the company to prevent consumers from continuing to be harmed by false statements and by pyramid scheme type conduct."].)

During earlier proceedings in this case, the Court identified an array of cases recognizing that courts have the equitable authority to appoint a receiver for the purpose of preventing future harm. (Doc. 342 at 35-37.) The FTC cited these (and additional) cases in its motion, explicitly arguing that the Court had "authority to appoint a receiver for reasons unrelated to the asset freeze—namely, to prevent future violations during this litigation" (Doc. 351 at 12-13),[1] and the Individual Defendants failed to address or dispute this point in their response. The Court takes this silence as a concession that that receivership component of the preliminary injunction is unaffected by *AMG Capital*.

At any rate, even if the Individual Defendants hadn't conceded the point, the Court would reach this conclusion. As discussed in prior orders in this case, *AMG Capital* "overruled existing Ninth Circuit law in [only] one respect, by holding that the FTC may not obtain a particular category of relief—'equitable monetary relief such as restitution or disgorgement'—pursuant to its authority under § 13(b) to seek a permanent injunction." (Doc. 406 at 30.) *AMG Capital* did not, in contrast, overrule "the Ninth Circuit's previous holdings . . . that the FTC may (as in this case) rely on § 13(b) to seek a permanent injunction to restrain conduct that violates a law the FTC is tasked with enforcing . . .

---

[1] The cases cited by the FTC include *SEC v. Bowler*, 427 F.2d 190, 198 (4th Cir. 1970) ("[A] receiver is permissible and appropriate where necessary to protect the public interest and where it is obvious, as here, that those who have inflicted serious detriment in the past must be ousted."), and *SEC v. S&P Nat'l Corp.*, 360 F.2d 741, 750-51 (2d Cir. 1966) ("[W]e cannot say the trial judge was unjustified in . . . the appointment of a receiver . . . [where a] primary purpose of the appointment was promptly to install a responsible officer of the court who could bring the companies into compliance with the law . . . .").

irrespective of whether the FTC has initiated administrative proceedings related to that conduct and irrespective of whether the conduct qualifies as 'routine fraud' or violates a rule promulgated by the FTC." (*Id.*, citations omitted.) Thus, even after *AMG Capital*, the FTC's pyramid-scheme and false-statements claims against the Individual Defendants remain valid and may give rise to the issuance of a permanent injunction under § 13(b).

Moreover, under longstanding Ninth Circuit law, district courts have "inherent equitable power to issue provisional remedies ancillary" to a request for "final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). *Accord FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982) ("It is clear that, because the district court has the power to issue a permanent injunction [pursuant to § 13(b) of the FTC Act] to enjoin acts or practices that violate the law enforced by the Commission, it also has authority to grant whatever preliminary injunctions are justified by the usual equitable standards . . . ."].) Nothing in *AMG Capital* calls these principles into question. Thus, just as it remains permissible, post-*AMG Capital*, to issue a permanent injunction under § 13(b) of the FTC Act for the purpose of preventing future deceptive conduct that might harm consumers, it remains permissible, post-*AMG Capital*, to issue a preliminary injunction that includes a receivership component if the purpose of the receivership is to prevent the same sort of ongoing harm that the ultimate object of the § 13(b) litigation—the issuance of a permanent injunction—is intended to achieve.

For these reasons, even if the FTC hadn't proffered the rule-related § 19 violations as an additional basis on which to justify the receivership, the Court would allow the receivership to remain in place. Significantly, the case for imposing a receivership has only grown stronger since the February 2020 preliminary injunction hearing. At that time, the Court simply made a finding that the FTC was *likely* to prevail on its pyramid-scheme and false-statement claims against the Individual Defendants. (Doc. 106 at 10-25.) But now, there is no need for the "likely" disclaimer—the Court recently granted summary judgment in the FTC's favor on all of its claims against the Individual Defendants. (Doc. 406.) Additionally, the Court recently found (in the course of granting the FTC's motion

for spoliation sanctions) that the Individual Defendants had engaged in "systematic efforts to conceal and destroy evidence [that] are deeply troubling and have cast a pall over this action." (Doc. 401 at 2.) Thus, although the Court expressed some doubt—during hearings that preceded the issuance of the summary judgment and spoliation orders—about whether it made sense to keep the receivership in place post-*AMG Capital* (Doc. 342 at 37-38), the Court now concludes that it would be unwise to eliminate the receivership and allow the Individual Defendants to resume control over SBH and VOZ Travel. *Cf. SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963) ("The district court was vested with inherent equitable power to appoint a trustee-receiver under the facts of this case. The prima facie showing of fraud and mismanagement . . . is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of Kellco's affairs for the benefit of those shown to have been defrauded.").

The continuation of the asset freeze presents a closer call. Everybody agrees that, in light of *AMG Capital*, the FTC's § 13(b) claims no longer provide a basis for keeping the asset freeze in place. Nor is the Court persuaded by the FTC's argument that it would be permissible to maintain an assert freeze in this case due to the possibility that the FTC might obtain a future monetary award in a different case (the contempt action related to the 2002 permanent injunction). Thus, whether the asset freeze should remain in place turns on whether the FTC has established an entitlement to preliminary relief based on its § 19 claims.

The Individual Defendants' first and second arguments related to the § 19 claims require little discussion. The Court has already found, in the summary judgment order, that the Individual Defendants committed the alleged § 19 violations and are liable for any monetary harm arising from those violations. (Doc. 406 at 48-54.) Nor does the FTC need to show that the Individual Defendants violated a cease-or-desist order—as the FTC correctly points out in its reply, a § 19 violation may be predicated on a rule violation *or* the violation of a cease-and-desist order and "the FTC has alleged rule violations here."

(Doc. 363 at 3, emphasis added.)

The Individual Defendants' final argument is that an asset freeze isn't warranted because the FTC hasn't established that the rule violations caused any harm. In reply, the FTC contends that its "undisputed evidence [shows] that the rule violations tainted over $1 million in sales." (Doc. 363 at 9.) The FTC further argues that, because an asset freeze is intended to maintain the status quo, it doesn't need to conclusively prove its loss theory at this juncture. (*Id.*)

The Court is persuaded by the FTC's point about maintenance of the status quo. This isn't a case where there are remaining questions about § 19 liability. The Individual Defendants' liability as to the § 19 claims has already been established via summary judgment (Doc. 406) and the FTC's separate motion for summary judgment as to monetary remedies is fully briefed (Docs. 365, 392, 398). In that motion, the FTC has developed a theory as to why the Individual Defendants should be held liable for $1,156,865.50 in damages based on the rules violations. (Doc. 365 at 1.) Although the Individual Defendants have identified various grounds for challenging that damages methodology, the bottom line is that the FTC has advanced a non-frivolous reason why a substantial damages award may be in the offing in the near future. Ninth Circuit law supports the continuation of an asset freeze in these circumstances. *See, e.g., SEC v. Liu*, 851 F. App'x 665, 667-69 (9th Cir. 2021) (affirming "the district court's entry of an asset freeze preliminary injunction" where "the district court correctly found that the SEC is likely to prevail on the merits because liability had already been established," "[a]ny finding of an amount of equitable relief would be premature at this stage of the proceedings," and "[n]othing in our caselaw required the district court to make a finding as to the amount of equitable remedies prior to final judgment") (citations omitted); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) ("A court has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order to preserve the *possibility* of equitable remedies.") (emphasis added).[2]

---

[2] In an amicus brief, approximately 1,000 SBH affiliates repeat many of the Individual Defendants' criticisms of the FTC's litigation tactics and urge the Court to

Finally, as a housekeeping matter, the FTC suggests that, upon the granting of its motion, the Court should strike the asset-freeze and receivership provisions from the original preliminary injunction and issue a new preliminary injunction containing functionally identical provisions. (Doc. 351 at 10 n.4.) It is unclear to the Court why such steps are necessary in light of the clear findings set forth in this order, which identify the reasons why the asset freeze and receivership should remain in place. Nevertheless, if the FTC wishes to be further heard on why it is necessary to formally modify the old preliminary injunction and issue a new preliminary injunction, the FTC may submit a motion to that effect.

II.     The Individual Defendants' Motion

In their motion, the Individual Defendants argue that, in light of *AMG Capital*, the Court must dismiss the FTC's § 13(b) claims and dissolve the preliminary injunction. (Doc. 383.) In the Individual Defendants' view, *AMG Capital* holds that "jurisdiction to resolve [§ 13(b)] claims is exclusively vested in an ALJ proceeding," so the FTC erred by filing its § 13(b) claims before this Court in the first instance (and/or by failing to file an administrative complaint within 20 days of TRO issuance) and the Court erred by granting any relief based on those claims. (*Id.* at 5.) The Individual Defendants contend that the only claims properly before this Court are the FTC's rule-based claims under § 19, and because "[t]hose alleged violations are not happening now, and there is no threat these alleged violations will ever happen again (now that defendants now about these rules), . . . there is no need for injunctive relief to prevent what would never happen." (*Id.*)

These arguments lack merit. As discussed above and in prior orders (Doc. 406 at 29-32), *AMG Capital* only undermines the FTC's ability to seek monetary remedies

dissolve the preliminary injunction, asset freeze, and receivership because (1) "the purpose of these measures . . . [was] to freeze the Defendants' assets for consumer redress," but that purpose is no longer valid in light of *AMG Capital*; and (2) "[t]he FTC . . . cannot obtain monetary relief under Section 19 of the FTC Act in this case" because "Section 19 specifically requires a violation of a trade regulation rule or a cease-and-desist order as a prerequisite to monetary relief." (Doc. 388 at 3-7.) These arguments fail for the same reasons as the Individual Defendants' arguments—the receivership wasn't imposed solely for purposes of securing assets for a future § 13(b) award (instead, it was also intended to prevent ongoing and future harm) and monetary remedies are available pursuant to the FTC's § 19 claims because they are expressly based on rules violations.

- 11 -

pursuant to its § 13(b) claims—it does not, in contrast, undermine the FTC's ability to seek preliminary and permanent injunctive relief (including the imposition of a receivership) based on such claims without regard to the existence of administrative proceedings. Thus, the Individual Defendants' dissolution and dismissal arguments are based on a faulty premise. Moreover, as discussed in Part I above, the now-established § 19 violations justify the asset freeze.

Accordingly, **IT IS ORDERED** that:

(1)  The FTC's motion for preliminary injunction with asset freeze and receivership (Doc. 351) is **granted**.

(2)  The Individual Defendants' motion to dissolve preliminary injunction and stay or dismiss § 13(b) proceedings (Doc. 383) is **denied**.

Dated this 23rd day of September, 2021.

Dominic W. Lanza
United States District Judge