**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D Noland, Jr., et al., | |
| Defendants. | |

Pending before the Court are two motions: (1) the "Individual Defendants' and Counsel's Motion to Represent Corporate Defendants" (Doc. 451);[1] and (2) the FTC's "Motion to Apply Summary Judgment Order To The Corporate Defendants" (Doc. 463). For the following reasons, both motions are denied without prejudice.

**RELEVANT BACKGROUND**

This is an FTC enforcement action in which several individuals ("the Individual Defendants") are accused of violating various provisions of the FTC Act, including provisions prohibiting false statements and pyramid schemes, while operating a group of related entities ("the Corporate Defendants"). (Doc. 168 at 1.)

At the outset of the case, the Court granted the FTC's *ex parte* request to appoint a receiver to assume control over the Corporate Defendants and related entities. (*Id.* at 1-2.) Nevertheless, the Individual Defendants were allowed to continue controlling the legal

---

[1] This motion is currently lodged under seal. An unsealed version will eventually be filed on the docket, but the parties are in the process of briefing whether certain portions of the motion and attached exhibits may be filed under seal.

representation of the Corporate Defendants. (*Id.*) The Individual Defendants retained attorneys from the law firm of Gordon Rees Scully Mansukhani, LLP (collectively, "Gordon Rees") to jointly represent them and the Corporate Defendants. (*Id.*)

Gordon Rees vigorously defended both sets of defendants during the early stages of the case, including during a contested preliminary injunction hearing. (*Id.* at 2-3.) Following that hearing, the Court ruled in the FTC's favor, finding that the FTC was likely to succeed on some of its claims, that the receivership should remain in place, and that an asset freeze should also remain in place. (*Id.* at 2-3.)

As these proceedings were unfolding, the receiver issued a report summarizing her findings and observations after her first few weeks on the job. (*Id.* at 2.) "The upshot was that [she] did not believe the business [could] be operated without violating the TRO . . . in light of the inaccurate marketing statements, the organization of the commission system, and the movement of large amounts of cash to the insiders" and that "it would be inadvisable to continue operations pending the outcome of the case." (*Id.*, cleaned up.)

About a month after the issuance of the preliminary injunction, Gordon Rees moved to withdraw, without client consent, for ethical reasons. (*Id.* at 3.) The Individual Defendants did not respond to this request. (*Id.*) The receiver filed a response clarifying that, although she did not oppose Gordon Rees's request, she was also "not aware of a good faith basis to oppose most aspects of the FTC's complaint against the corporate defendants" and thus did "not anticipate spending the Receivership Estate's limited resources to fight a losing battle." (Doc. 123 at 2-3.) The receiver stated that, if Gordon Rees's withdrawal request were granted, she anticipated "reach[ing] a non-litigated resolution with the FTC that would allow the companies an opportunity to conduct an orderly wind down. This would facilitate the goal of ensuring that those individuals and entities damaged by the companies' conduct received the most they could from the companies' limited assets." (*Id.* at 3.)

The Court granted Gordon Rees's withdrawal request. (Doc. 168 at 4.) Following the withdrawal, the Individual Defendants were briefly unrepresented. (*Id.*) In contrast,

because corporate entities cannot proceed *pro se* in federal court, the Court substituted the receiver (who is also an attorney) as counsel for the Corporate Defendants. (*Id.*)

Soon afterward, attorneys from the law firm Williams|Mestaz, LLP (collectively, "Williams|Mestaz") filed a notice of appearance on behalf of both the Individual Defendants and the Corporate Defendants. (*Id.*) In response, the Court issued an order "stating that it was 'unclear' whether [Williams|Mestaz's] attempt to appear on behalf of the Corporate Defendants was permissible in light of the fact that [the receiver], who seemed to have the power (per the preliminary injunction) to choose their counsel, had just stated that she didn't intend to spend any more of their money fighting the FTC's allegations." (*Id.*) Thus, the Court ordered Williams|Mestaz and the receiver to meet and confer about the representation issue. (*Id.*)

Several months later, after Williams|Mestaz and the receiver were unable to reach an agreement, the Individual Defendants filed a motion to allow Williams|Mestaz to represent the Corporate Defendants over the receiver's objection. (*Id.* at 4-5.)

The FTC opposed the Individual Defendants' motion. (Doc. 155.) Notably, one of the FTC's proffered reasons why the motion should be denied was that "the FTC and Receiver have agreed not to seek a non-litigated (*i.e.*, default or settlement) resolution of the claims against the Corporate Defendants until the case is resolved as to the Individual Defendants. This eliminates the possibility of an incongruous result in which, for example, the Corporate Defendants concede liability, but the FTC, in its case against the Individual Defendants, fails to prove that the Corporate Defendants acted unlawfully." (*Id.* at 4-5.)

In a July 2020 order, the Court denied the Individual Defendants' motion. (Doc. 168.) At the outset, the Court acknowledged that the "issue presented here—whether a court-appointed receiver in an FTC enforcement action may, before a final adjudication of liability has been made, decline to hire a particular law firm to represent a corporate defendant (over the objection of the entity's owners and officers) due to the belief that the expenditure of funds on legal fees would be wasteful and dissipate the pool of assets potentially available to victims at the conclusion of the case—appears to be a novel one."

(*Id.* at 7.) After further acknowledging that "the Individual Defendants' arguments have some force," the Court concluded that the Individual Defendants should not be allowed to override the receiver's choice of counsel for the Corporate Defendants for the following "interrelated reasons": (1) the general rule is that, when a receiver is appointed, the corporation's management loses the power to control the corporation's affairs, including the choice of counsel; (2) a variety of "practical problems" would flow from accepting the Individual Defendants' position, including the creation of potential conflicts of interest under Arizona's ethical rules; (3) the dispute wasn't just about representation, but about *funding* for the representation, and the Individual Defendants were not entitled to unfreeze assets that were bound up by the asset-freeze order in light of the current posture of the case; and (4) "although the concept of harmlessness is often inapplicable when considering issues pertaining to the choice of counsel, it is difficult to see how any appreciable harm would flow from declining to allow [Williams|Mestaz] to represent the Corporate Defendants at this juncture of the case" because "the FTC has agreed to delay pursuing its claims against the Corporate Defendants until its litigation against the Individual Defendants has concluded." (*Id.* at 8-13.)

The litigation continued in this posture through the end of 2020 and into 2021. During this period, Williams|Mestaz filed an answer to the FTC's operative complaint on behalf of the Individual Defendants (Doc. 222) and the receiver filed an answer on behalf of the Corporate Defendants (Docs. 217, 218).

In March 2021, the FTC filed a motion for summary judgment as to liability. (Doc. 285.) Williams|Mestaz filed a response on behalf of the Individual Defendants (Doc. 348) but the receiver did not file a response on behalf of the Corporate Defendants.

In April 2021, the legal landscape underlying some of the FTC's claims in this action shifted by virtue of the Supreme Court's decision in *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021). There, the Supreme Court held—contrary to the rule that had previously been in place in the Ninth Circuit—that the FTC may not obtain "equitable monetary relief such as restitution or disgorgement" pursuant to its authority under § 13(b)

of the FTC Act. *Id.* at 1344. This decision was significant because the asset freeze the FTC had obtained at the outset of this case, in reliance on then-valid Ninth Circuit authority, was intended "to lock up the Individual Defendants' assets in anticipation of obtaining a future restitution award pursuant to" the FTC's claims under § 13(b) of the FTC Act. (Doc. 412 at 2-3.) Based on this development, the FTC has since clarified that it is only seeking monetary remedies pursuant to Counts Four, Five, and Six of its complaint, which are claims under § 19 of the FTC Act, and not pursuant to its § 13(b) claims. (Docs. 351, 365.)

The case took another turn in July 2021, when the receiver unexpectedly announced that she had accepted employment at a new law firm that would interfere with her ability to continue working as the receiver. (Doc. 379.) After soliciting briefing from the parties on how to proceed, the Court appointed a replacement receiver, Peter Davis. (Doc. 395.) In the replacement order, the Court suggested that Mr. Davis consider allowing the Individual Defendants' counsel to assume representation of the Corporate Defendants, "assuming he can work through the privilege issues addressed in the [July 2020 order] and assuming they are still interested in serving in this capacity, given the Corporate Defendants' limited remaining funds," but made clear that this was "a decision for Mr. Davis to make." (*Id.* at 5.)

The next relevant development occurred on September 29, 2021, when the Court issued a lengthy order resolving the FTC's motion for summary judgment on liability. (Doc. 406.) Critical to the Court's analysis was that the Individual Defendants only addressed some of the FTC's arguments and wholly failed to address other arguments that provided an independent pathway to liability.[2] Accordingly, the Court granted the FTC's

---

[2] *See, e.g.*, Doc. 406 at 35 ("The Individual Defendants largely ignore the FTC's evidence and arguments related to the VOZ Travel program. Whatever the reason for this approach, it effectively dictates the outcome here—the FTC's initial evidentiary submissions are sufficient to meet its burden of production on the pyramid-scheme claim as applied to VOZ Travel and, because that evidence is essentially undisputed, it follows that the FTC is entitled to summary judgment [on Count One]."); *id.* at 43 ("The FTC is entitled to summary judgment on Count Two for the simple reason that the Individual Defendants do not even attempt to defend some of the categories of misrepresentations identified in the FTC's motion. As noted, the FTC specifically argues that Individual

motion in full as to the Individual Defendants. However, as for the Corporate Defendants, the Court clarified that it was not making any liability findings because it construed the FTC's motion as not applying to them. (*Id.* at 52 ["The Court notes . . . that the FTC has stated it will not pursue its claims against the Corporate Defendants while they are under a receivership and lack counsel independent of the Receiver. Accordingly, the Court's conclusion that there is no genuine dispute of fact about the common enterprise among the Corporate Defendants is, like the rest of this order, not binding on the Corporate Defendants should they seek to contest at a later date any of the FTC's allegations against them."].)

On October 1, 2021, Williams|Mestaz moved to withdraw, without client consent, from the representation of the Individual Defendants. (Doc. 417.) After the Individual Defendants failed to respond to this motion, it was granted. (Doc. 425.) Soon afterward, the Individual Defendants' current counsel, attorneys from The Cochell Law Firm ("Cochell"), filed a notice of appearance on their behalf. (Doc. 428.)

The next relevant development occurred on November 23, 2021, when the Court issued an order resolving the FTC's motion for summary judgment on monetary remedies. (Doc. 438.) That motion, which was filed in June 2021 (Doc. 365), was again opposed by Williams|Mestaz on behalf of the Individual Defendants (Doc. 392) but not by the receiver on behalf of the Corporate Defendants. As discussed above, in light of *AMG Capital*, the FTC only sought monetary remedies pursuant to its claims under § 19 of the FTC Act. (Doc. 365.) The Court concluded that the FTC was not entitled to summary judgment with respect to remedies on those claims (even though the Individual Defendants' liability had been established via the September 29, 2021 summary judgment order) because "the all-or-nothing methodology presented in the FTC's motion papers . . . fails to account for the inherent value of the product that consumers ultimately received, even if the product was shipped late" and otherwise "fails to account for the inherent value of the products and services received by consumers, thereby creating a windfall." (Doc. 438 at 7, 14.)

---

Defendants made false income claims regarding VOZ Travel.").

One week later, on November 30, 2021, the FTC filed a notice of readiness for the final pretrial conference ("FPTC"). (Doc. 442.) In this notice, the FTC further suggested that the Court delay scheduling the FPTC until, *inter alia*, "the parties or the Court have resolved the issue of the Corporate Defendants' representation and/or the question whether the Court's liability ruling against the Individual Defendants applies to the Corporate Defendants." (*Id.* at 2.)

On December 20, 2021, the Individual Defendants filed a response to the FTC's notice. (Doc. 446.) Among other things, the Individual Defendants asserted in this filing that (1) the FTC will never be able to obtain a monetary award against them because the FTC has never disclosed a damages methodology for its § 19 claims apart from the methodology that was deemed inadequate in the November 23, 2021 summary judgment order (*id.* at 3-4); (2) although the Individual Defendants' prior counsel "did not defend his clients on the VOZ allegations," the Corporate Defendants "should be afforded the opportunity" to defend against those claims (*id.* at 4-5); and (3) the Individual Defendants' current counsel, Cochell, should be allowed to represent the Corporate Defendants (*id.* at 5-7).

On December 22, 2021, the FTC filed a reply in which it, among other things, agreed "that the Corporate Defendant issues should be resolved before the case proceeds." (Doc. 447 at 2.)

To that end, on January 18, 2022, the Individual Defendants filed one of the motions now pending before the Court—a motion to allow Cochell represent the Corporate Defendants. (Doc. 451.)

On January 31, 2022, the FTC filed an opposition. (Doc. 462.)

That same day, the FTC filed the other motion now pending before the Court—a motion to apply the summary judgment order on liability against the Corporate Defendants. (Doc. 463.)

On February 1, 2022, the receiver filed an opposition to the Individual Defendants' motion. (Doc. 464.)

- 7 -

On February 7, 2022, the Individual Defendants filed a reply in support of their motion. (Doc. 465.)

On February 14, 2022, the Court issued a tentative ruling.

That same day, the Individual Defendants filed a response to the FTC's motion. (Doc. 470.)

On February 17, 2022, the Court heard oral argument. During oral argument, all parties essentially agreed with the tentative ruling, which is largely unchanged here. The FTC further agreed that, in light of that outcome, the Court could rule on (and deny without prejudice) its motion to apply the summary judgment ruling against the Corporate Defendants without awaiting further briefing.

**DISCUSSION**

I. Representation Motion

    A. **The Parties' Arguments**

The Individual Defendants argue that Cochell should be allowed to represent the Corporate Defendants. (Doc. 451.) In large part, the motion consists of a preview of the new arguments and evidence that the Corporate Defendants would advance (which the Individual Defendants' previous counsel failed to advance) if allowed to mount a defense on the issue of liability. (*Id.* at 2-8, 10-14.) The Individual Defendants also reiterate their position that the FTC will be unable to obtain a monetary award against any defendant because the FTC failed to disclose a valid damages methodology pertaining to its § 19 claims before the close of discovery. (*Id.* at 9.) Additionally, the Individual Defendants state that the circumstances have changed since their previous representation request was denied in July 2020 because Cochell "has agreed to represent the Corporate Defendants *without charge* to the Receivership Estate." (*Id.* at 1, 14.) Finally, the Individual Defendants contend that the receiver and his chosen attorney "have a conflict of interest" in representing the Corporate Defendants because they have limited financial resources, a lack of expertise in FTC-related matters, and "are beholden to the FTC for future receivership assignments." (*Id.* at 1, 14-15.)

The FTC opposes the Individual Defendants' motion. (Doc. 462.) The FTC contends that the motion is functionally a request for modification or reconsideration of the July 2020 order. (*Id.* at 7-10.) With this understanding in mind, the FTC argues that the Individual Defendants have not established an entitlement to relief because they "cite no case law, statute, or rule requiring the Receiver to relinquish control of the Corporate Defendants' litigation strategy and representation, much less any *new* law or facts that warrant[] modification of the Preliminary Injunction, reconsideration of the Court's denial of the first Representation Motion, or deviation from the law of the case." (*Id.* at 7-10.) The FTC also notes that the Individual Defendants seem to have abandoned the theories on which their previous representation-related challenge was premised (*i.e.*, allowing the receiver to choose the Corporate Defendants' counsel would violate the First and Fifth Amendments) and now rely solely on "an inapt citation to an Arizona ethics rule." (*Id.* at 10-11 & n.2.) Next, the FTC argues that there is no practical reason to grant the motion because (1) the "new" arguments the Corporate Defendants plan to raise on the issue of liability are not really new and, at any rate, are meritless (*id.* at 11-13); (2) the Individual Defendants will be able to raise their disclosure-related objection to the FTC's § 19 damages methodology irrespective of how the representation issue is resolved (*id.* at 13-14); (3) the receiver does not have a conflict of interest in representing the Corporate Defendants (*id.* at 14-15); and (4) any failures of the Individual Defendants' previous counsel in contesting the issue of liability do not entitle the Individual Defendants to a "do-over" (*id.* at 15). Finally, the FTC notes that the Individual Defendants' motion makes no attempt to address the portion of the July 2020 order identifying various practical problems that would arise from granting their request, including "that the Corporate Defendants have various potential claims against the Individual Defendants, raising a conflict in having the same counsel for both groups." (*Id.* at 15-16.) For these reasons, the FTC urges the Court to deny the motion, apply the summary judgment ruling on liability to the Corporate Defendants,[3] and hold a trial on "Section 19 monetary remedies against both the Individual

---

[3] The FTC elaborates on this argument in its motion to apply the summary judgment order to the Corporate Defendants, arguing that the Court misunderstood the summary

- 9 -

Defendants and Corporate Defendants. . . . [E]ven if the Corporate Defendants are unrepresented, any arguments they could make will be adequately presented by the Individual Defendants." (*Id.* at 16-17.)

The receiver also opposes the Individual Defendants' motion. (Doc. 464.) As an initial matter, the receiver suggests that he is surprised by the FTC's contention that the Corporate Defendants should be bound by the liability findings in the summary judgment order and that the issue of damages should be tried against both sets of defendants simultaneously, because "[f]or most of the case, the Receiver has operated under the assumption that the FTC would first try its case against the Individual Defendants, and that the Corporate Defendants' issues would be resolved by some form of post-adjudication agreement. The FTC, however, has now indicated that it will seek to obtain judgment against the Corporate Defendants." (*Id.* at 2.) The receiver adds: "[T]he Receiver ha[s] always anticipated that the legal fate of the Corporate Defendants would abide the result of the disputes between the FTC and the Individual Defendants." (*Id.* at 8.) Nevertheless, on the merits, the receiver argues that even though Cochell's offer to represent the Corporate Defendants at no cost "certainly ma[kes] their request more attractive" (*id.* at 3), the request is ultimately unworkable for the following reasons: (1) the management of the representation would still consume some financial resources, and because the receivership estate currently "likely has less than $75,000 of remaining value," such management "would necessarily consume much of what remains and would almost certainly require the complete liquidation of remaining assets" (*id.* at 4-6); (2) the receiver has "direct conflicts of interest" with some of the Individual Defendants because they are suspected of having engaged in certain conduct (including making fraudulent transfers and refusing to repatriate certain assets that were purchased with the Corporate Defendants' assets) that was harmful to the Corporate Defendants (*id.* at 6); (3) the receiver also has a conflict with the Individual Defendants due to his divergent view of whether there are any legitimate defenses to

judgment motion as applying only to the Individual Defendants even though "the FTC, in fact, *had* moved for summary judgment regarding the Corporate Defendants as well, which was consistent with the FTC's prior statements regarding how it intended to proceed against the Corporate Defendants." (Doc. 463 at 1.)

liability, which "would certainly complicate discussion regarding which defenses to assert on behalf of the Corporate Defendants" (*id.* at 6-8); and (4) the Corporate Defendants and Individual Defendants have the same defenses (*id.* at 8-9). Finally, and in the alternative, the receiver suggests that, if the Court were inclined to grant the Individual Defendants' motion, it would need to modify the terms of the preliminary injunction bearing on the receiver's responsibilities. (*Id.* at 9-10.)

In reply, the Individual Defendants focus most of their attention on issues that are not directly responsive to the arguments raised in the FTC's and receiver's briefs. (Doc. 465.) For example, the Individual Defendants offer a lengthy criticism of the receiver's work during this case, arguing that the receiver failed to raise meritorious defenses on behalf of the Corporate Defendants and failed to protect corporate assets (*id.* at 3-8); accuse the FTC of improperly interfering with a travel business owned by one of the Individual Defendants (*id.* at 8-12); and offer various arguments about the validity of income disclaimers (*id.* at 12-15). Finally, in response to the FTC's argument that their motion is functionally a request for modification or reconsideration, the Individual Defendants do not necessarily disagree but argue that the standard for such relief has been satisfied because there has been a "change in circumstance"—namely, the receiver's financial inability to provide a defense for the Corporate Defendants. (*Id.* at 15-16.) The Individual Defendants conclude by accusing the FTC of various forms of misconduct. (*Id.* at 16-17.)

B. **Analysis**

In the July 2020 order, the Court noted that the parties' first dispute over the representation of the Corporate Defendants raised novel and difficult questions. That remains true now.

On the one hand, the Court stands by its previous determination that the receiver has the right to choose the Corporate Defendants' counsel. This is a basic and necessary function of a receivership. Additionally, the practical problems that would arise from allowing the Individual Defendants to override that choice have only increased since July 2020, due to the receiver's determination that the Corporate Defendants may have valid

claims against the Individual Defendants under fraudulent-transfer and other theories. The Individual Defendants' motion papers fail to identify a valid solution to this conflict—simply modifying the preliminary injunction to take away the receiver's right to choose the Corporate Defendants' counsel, as the Individual Defendants propose (Doc. 465 at 1), would do nothing to address the underlying conflict between the two sets of defendants.

On the other hand, the FTC's proposed course of action would raise its own set of concerns. The FTC asks the Court to grant summary judgment against the Corporate Defendants on the issue of liability, even though the receiver did not file a response to the FTC's summary judgment motion (due to a belief, which was shared by the Court, that the FTC was only moving against the Individual Defendants), and force the Corporate Defendants to proceed to trial on the issue of monetary remedies without any representation. Although the Court expresses no view on whether such an outcome might ultimately be permissible, there are reasons to be troubled by the ramifications of this approach.

The most prudent course of action is to postpone resolving these difficult issues unless and until it becomes necessary to do so. *Cf. Kennedy v. Schafer*, 71 F.3d 292, 295 (8th Cir. 1995) ("It is prudent . . . to postpone consideration of this difficult constitutional question until we are certain that its consideration is necessary."). And due to the manner in which this case has unfolded, there is a possibility that the issue of the Corporate Defendants' representation and liability may become moot. As noted above, the Individual Defendants have argued that the FTC will not be able to obtain any award of monetary remedies against them due to the FTC's failure to disclose a damages methodology (apart from the methodology that was deemed invalid in the summary judgment order on monetary remedies). Without prejudging the issue, the Court observes that this argument has some force. And if the Individual Defendants were to prevail on this argument and avoid the imposition of monetary remedies, it is difficult to see what would be left of the FTC's case against the Corporate Defendants, given the FTC's agreement "that it will not seek to obtain any damages judgment against the Corporate Defendants larger than the

damages being sought against the Individual Defendants." (Doc. 464 at 2.)

Accordingly, the Individual Defendants' motion to allow Cochell to represent the Corporate Defendants is denied, but the denial is without prejudice to renewal depending on how the remainder of this case shakes out. In the meantime, the case will proceed as follows. The Corporate Defendants will continue to be represented by the receiver's counsel of choice, but the FTC's claims against the Corporate Defendants will be stayed (both in this action and the contempt action, CV 00-2260) pending the resolution of the FTC's claims against the Individual Defendants in both actions.

The Court acknowledges the FTC's concern that proceeding in this fashion will be inefficient. (Doc. 442 at 4 ["At this point, proceeding to trial without resolving the status of the litigation as to the Corporate Defendants would be inefficient because it could result in . . . a second trial for the Corporate Defendants that follows a first trial for the Individual Defendants (and perhaps more trials depending on how the Court handles this issue in light of the Contempt Matter)."].) Nevertheless, such efficiency concerns do not require a different course of action. First, the Court (and, apparently, the receiver) was under the impression for long stretches of this case that the FTC had agreed to defer pursuit of its claims against the Corporate Defendants until its claims against the Individual Defendants had been resolved. Nevertheless, the FTC now seeks to hold the Corporate Defendants liable based on their failure to respond to the FTC's summary judgment motion, which the receiver did not address because she was "operat[ing] under the assumption that the FTC would first try its case against the Individual Defendants, and that the Corporate Defendants' issues would be resolved by some form of post-adjudication agreement" and believed "that the legal fate of the Corporate Defendants would abide the result of the disputes between the FTC and the Individual Defendants." (Doc. 464 at 2, 8.) True, the imposition of liability against the Corporate Defendants under these circumstances would not literally be considered "non-litigated" or by "default," but the FTC has to engage in some awfully fine word-parsing to get there. Second, the Court also notes that many of the current complications arise from the FTC's decision to seek the *ex parte* appointment of

receiver at the outset of this case. The Court does not, in any way, fault the FTC for choosing to proceed in this fashion—after all, the Court granted the request—but having helped create the current situation through its litigation strategy, the FTC cannot be fairly heard to complain about the litigation inefficiencies that have followed.

II.     <u>Motion To Apply Summary Judgment Ruling To Corporate Defendants</u>

For the reasons discussed above, the Court has decided to stay the FTC's claims against the Corporate Defendants pending the resolution of the FTC's claims against the Individual Defendants. Given this outcome, the FTC agrees that its request to apply the summary judgment ruling on liability against the Corporate Defendants can be denied without prejudice for the time being.

Accordingly,

**IT IS ORDERED** that:

1. The Individual Defendants' representation-related motion (Doc. 451) is **denied without prejudice**.

2. The FTC's claims against the Corporate Defendants in this action and the contempt action, CV 00-2260, are **stayed**.

3. The FTC's motion to apply the summary judgment order to the Corporate Defendants (Doc. 463) is **denied without prejudice**.

4. The FTC's claims against the Individual Defendants, both in this action and the contempt action, will proceed in the sequence discussed during oral argument.

Dated this 17th day of February, 2022.

Dominic W. Lanza
United States District Judge