WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D. Noland, Jr., et al., | |
| Defendants. | |

On multiple occasions over the last two years, the parties have filed unsealed documents in the public docket that identify the names of certain companies that provide travel services and the names of individuals associated with those companies. The Individual Defendants now contend that all of those references should be retroactively sealed because the companies' and individuals' names constitute trade secrets. The Individual Defendants also contend the FTC should be barred from issuing discovery requests to those companies and individuals. To that end, the Individual Defendants have lodged, under seal, a motion to seal and for protective order. (Doc. 466.) When the attachments are included, the lodged motion is 811 pages long. (*Id.*)

Now pending before the Court is the Individual Defendants' motion to seal, in its entirety, the 811-page lodged motion. (Doc. 467.) For the following reasons, the motion to seal is denied.

…

…

**RELEVANT BACKGROUND**

In January 2020, the FTC initiated this enforcement action. (Doc. 1.) In the operative complaint, the FTC alleges that Jay Noland ("Noland"), Scott Harris, Thomas Sacca, and Lina Noland (together, "the Individual Defendants") operated a pair of multi-level marketing businesses called Success By Health ("SBH") and VOZ Travel as illegal pyramid schemes, made false statements in the course of operating those businesses, and violated various FTC rules in the course of operating those businesses. (Doc. 205.) At the outset of the case, the FTC sought and obtained an *ex parte* temporary restraining order that, among other things, resulted in the appointment of a receiver to assume control over the entities that operated SBH and VOZ Travel. (Docs. 19, 38.)

In February 2020, the FTC filed a motion for a preliminary injunction. (Doc. 79.) In support of this motion, the FTC filed documents that identified the name of a third-party company (Advantage Services) with whom VOZ Travel had contracted to provide travel services and the name of an individual associated with Advantage Services (John Doe).[1] (Doc. 81-2 ¶¶ 20, 26; Doc. 81-2 at 27, 37, 47-48.) This information has remained part of the public record in the two-plus years since these documents were filed.

Later in February 2020, following an evidentiary hearing, the Court issued an order granting the FTC's motion for a preliminary injunction. (Doc. 106.) The Court found that the FTC was likely to succeed on the merits of its claims that SBH functioned as a pyramid scheme and that the Individual Defendants misrepresented the income potential of SBH affiliates. (*Id.* at 10-25.) Under the preliminary injunction, the receiver remained in place. (*Id.* at 26-29.)

In October 2020, the Individual Defendants filed a motion entitled "Motion to Allow the Individual Defendants to Fulfill VOZ Travel Commitments and Approval of TravelNU International." (Doc. 213.) In this motion, the Individual Defendants criticized the receiver for refusing to provide "approval for what the individual defendants want to do: operate a

---

[1] Although the name of this individual appears in multiple places throughout the cited materials, the Court will refrain, in an abundance of caution, from repeating it here and will instead refer to the individual as John Doe.

travel business like the VOZ Travel Program sans its multi-level marketing aspect." (*Id.* at 1.) The motion identified Advantage Services by name, explained that Advantage Services was the third-party company the Individual Defendants had previously retained to act as the travel provider for VOZ Travel, and stated that "an alternative supplier had been arranged." (*Id.* at 1-2.) The motion did not identify this alternative supplier.

Later in October 2020, the Individual Defendants filed a reply in which they clarified that they were "not seek[ing] to change the injunction with this motion" and that "[t]he proposed new business would not require a modification of the preliminary injunction because it would be a separate business." (Doc. 225 at 1-2.)

Given this clarification, in November 2020, the Court denied the Individual Defendants' motion in relevant part. (Doc. 231.) The order explained that "TravelNU International is a nonexistent business whose hypothetical activities are not the subject of any case or controversy," "[a]ny 'approval' given by this Court would therefore amount to an improper advisory opinion," and "[t]here is nothing the Court can or would do to prevent the Individual Defendants from legally earning income in a way that does not violate the preliminary injunction, but the Court will not opine *ex ante* on the legality of a hypothetical business arrangement summarized by counsel in two pages of a motion." (*Id.* at 6.)

In May 2021, the Individual Defendants filed an opposition to the FTC's motion for summary judgment as to liability. (Doc. 335.) Included as an attachment was a declaration from Noland avowing that "[w]hen the FTC obtained its temporary restraining order, Success By Health was still under contract with the travel service provider. We have obtained a new travel service provider." (Doc. 335-6 ¶ 7.) The new travel provider was not identified.

In September 2021, the Court granted the FTC's motion for summary judgment as to liability. (Doc. 406.) Among other things, the Court concluded the FTC was entitled to summary judgment on its claim that the Individual Defendants had operated VOZ Travel as a pyramid scheme. In the course of analyzing this claim, the Court noted that "[w]hen VOZ Travel was announced in early October 2019, SBM [Success by Media] had not yet

entered into any contractual agreement to provide the advertised travel services with any travel service provider. However, there had been discussions with 'multiple companies.' At the end of October 2019, SBM entered a contract with one such company, Advantage Services." (*Id.* at 18.) The Court further noted that "starting on January 4, 2020, SBH's relationship with Advantage Services began to deteriorate in a series of increasingly acrimonious emails that culminated with the CEO of Advantage Services raising concerns about SBM's 'legal compliance and ethical conduct.' Ultimately, the parties terminated the agreement on January 6 and 8, 2020." (*Id.* at 19.) The Court also noted that, "[a]s of January 13, 2020, when the Court entered the TRO, the Individual Defendants had not retained a vendor to replace Advantage Services to build the VOZ Travel platform." (*Id.* at 20.) In a footnote, the Court observed that although "[i]n response to the FTC's summary judgment motion, Noland submitted a declaration in which he avers that '[w]e have obtained a new travel service provider,'" the declaration did not "provide any information about this new travel service provider, such as its name, or provide any details about the genesis and details of the new arrangement." (*Id.* at 20 n.9.)

In November 2021, the Individual Defendants filed a motion to release and unfreeze certain assets that had been restrained pursuant to the TRO and preliminary injunction. (Doc. 430.) After the FTC filed an opposition (Doc. 436), the Individual Defendants filed a reply in which they conceded their motion should be denied (Doc. 439). The Individual Defendants also filed several documents as attachments to their reply. (Doc. 439-1.) One of those documents was the FTC's second set of supplemental discovery disclosures. (*Id.* at 5-27.) In response to a query calling for the disclosure of "[o]ther vendors used by Defendants, including . . . product vendors," the FTC listed the names of 20 companies and individuals. (*Id.* at 9-11.) One of the companies identified by name was Advantage Services. (*Id.* at 9.) One of the individuals identified by name was John Doe, the same individual who had been disclosed in the FTC's preliminary injunction papers filed in February 2020. (*Id.*) Also included in the list were three companies (Company 1,

Company 2, and Company 3)² that are the subject of the lodged sealing request. (*Id.* at 9-11.)

On January 18, 2022, the Individual Defendants publicly filed a motion to allow their current counsel to represent the Corporate Defendants. (Doc. 451.) In the body of this motion, the Individual Defendants identified Company 1 and Company 2 by name and described them as companies with whom they had spoken about replacing Advantage Services as the VOZ Travel provider. (*Id.* at 15.) The Individual Defendants also filed various documents in support of the motion, including the following:

▪ A declaration from Noland. (Doc. 451-1 at 1-50.) In this declaration, Noland repeatedly referred to Advantage Services and John Doe by name. (*See, e.g.*, *id.* at 37-41, 43, 46-48 ¶¶ r, s, t, 51-52, 54-55, 64-65, 67-71.) Noland also identified, by name, another individual (Jane Doe)³ with whom he spoke when searching for a company to serve as VOZ Travel's provider. (*Id.* at 36 ¶ o.) This individual's name is also the subject of the lodged sealing request.

▪ An email string between the FTC and a representative from Company 1. (Doc. 451-1 at 344-46.) These emails identified Company 1 and the representative by name. (*Id.*)

▪ An email from the receiver to the FTC's counsel. (*Id.* at 342.) That email referred to John Doe by name. (*Id.*)

▪ A calendar invite from Noland. (*Id.* at 331.) It referred to John Doe and Company 2 by name. (*Id.*)

▪ A declaration from Tony Potter, SBH's former marketing director. (Doc. 451-2.) It referred to John Doe by name. (*Id.* ¶ 8.)

Although the record is not entirely clear on this point, it "appears that on January

---

² Although the names of these companies appear in the cited document, the Court will refrain, in an abundance of caution, from repeating them here and will instead refer to the companies as Company 1, Company 2, and Company 3.

³ Although the name of this individual appears in the cited document, the Court will refrain, in an abundance of caution, from repeating it here and will instead refer to the individual as Jane Doe.

- 5 -

20, 2022, the Individual Defendants' counsel reached out to representatives from the docketing unit of the clerk's office and asked them to temporarily . . . seal" the corporate representation motion filed on January 18, 2022. (Doc. 461 at 1-2.) Although this was a procedurally improper way to make a sealing request, the docketing unit placed the materials under seal. (*Id.*)

On January 25, 2022, the Individual Defendants filed a motion to "temporarily seal" their corporate representation motion and attachments. (Docs. 452, 455.)

On January 27, 2022, the Court issued an order denying the "temporary" sealing request as moot because the docketing unit had already placed the corporate representation motion and attachments under seal. (Doc. 461.) The Court further noted that "ordinarily, materials are not *filed* under seal temporarily—they are *lodged* under seal, pending the Court's decision on a motion to seal. The Court will therefore set a deadline for the Individual Defendants to file a motion to seal. If the Individual Defendants fail to file a motion to seal by this deadline, the materials will once again be made public. The deadline is intended to allow the Individual Defendants adequate time to draft a quality motion that clearly explains what the Individual Defendants seek to seal and why each proposed redaction is subject to sealing under Ninth Circuit law." (*Id.* at 3-4.)

On February 10, 2022, the Individual Defendants filed the motion now pending before the Court—a motion to seal and for protective order. (Doc. 467.)[4] The Individual Defendants also lodged, under seal, a document entitled "Opposed Motion to Seal Court Records and For Protective Order Prohibiting Discovery." (Doc. 466.) The lodged motion and attachments total 811 pages. (*Id.*)

On February 23, 2022, the FTC lodged, under seal, a combined opposition to the Individual Defendants' sealing request and lodged motion. (Docs. 476, 477.)

On March 2, 2022, the Individual Defendants lodged, under seal, a reply. (Doc. 477.) The lodged brief and attachments total 222 pages. (*Id.*)

---

[4] The Individual Defendants' request for oral argument is denied because the issues are fully briefed and argument would not assist the decisional process. *See* LRCiv 7.2(f).

**DISCUSSION**

I. <u>Legal Standard</u>

"[P]ublic access to filed motions and their attachments . . . turn[s] on whether the motion is more than tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

When a sealing request implicates materials that are more than tangentially related to the merits of the case, the movant must satisfy the "stringent" compelling reasons standard. *Id.* at 1096. Under that standard, the movant must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (cleaned up). The Court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (cleaned up). "After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (internal quotation marks and citation omitted).

"The factors relevant to a determination of whether the strong presumption of access is overcome include the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citation and quotation marks omitted). Conclusory allegations of harm do not meet the "compelling reasons" standard. *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) ("[A] naked conclusory statement that publication . . . will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.") (quoted with approval in *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026-27 (9th Cir. 2014)); *Primus Grp., Inc. v. Inst. for Env't Health, Inc.*, 395 F. Supp. 3d 1243, 1270 (N.D. Cal. 2019) ("conclusory allegations of harm" did not "outweigh the public's right of access"). "The

party seeking to seal any part of a judicial record bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Oliner*, 745 F.3d at 1026. Vaguely asserting that disclosure of certain material would result in harm—without explaining why or how this is so—will not suffice. *Id.* It is the moving party's burden to provide facts, arguments, and legal authority that would allow the Court to "articulate the factual basis"—"without relying on hypothesis or conjecture"—for ruling that compelling reasons "outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79.

When a sealing request implicates materials that are not more than tangentially related to the merits of the case, the movant "need only satisfy the less exacting 'good cause' standard." *Ctr. for Auto Safety*, 809 F.3d at 1097. "The 'good cause' language comes from Rule 26(c)(1), which governs the issuance of protective orders in the discovery process: 'The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* (citation omitted).

II.     The Parties' Arguments

The only motion properly before the Court at this juncture is the Individual Defendants' motion to seal. (Doc. 467.) In that motion, the Individual Defendants seek permission to file, entirely under seal, the 811-page motion they lodged on February 9, 2022. (Doc. 466.) In the lodged motion, the Individual Defendants seek (1) an order sealing the corporate representation motion and certain documents previously filed by the FTC, because they "inadvertently disclosed" the names of John Doe, Jane Doe, Company 1, Company 2, and Company 3 in their motion and the FTC's documents also contain references to John Doe; (2) the issuance of the Court's standard protective order; and (3) an order barring the FTC from issuing any discovery subpoenas to any vendors or consultants who may be providing travel services to TravelNU. (Doc. 466-12.)

The FTC opposes the Individual Defendants' various requests. (Doc. 475.) In

1 addition to arguing that the requests for substantive relief set forth in the lodged motion
2 should be denied, the FTC argues the request to seal the lodged motion should be denied
3 because "the Individual Defendants' request to seal six documents ignores at least 34 public
4 filings with similar information. Their 'secrets' are the names of a few persons with whom
5 the Corporate Defendants spoke more than two years ago. Before last month, no one
6 sought a protective order or identified these as protected. Far from it, defendants produced
7 hundreds of documents with the names and publicly filed the names. The Motions fail to
8 meet their burden to show compelling reasons to seal. Sealing the entire motion to seal,
9 with sparse 'secrets,' is beyond the pale." (*Id.* at 2.)

In their lodged reply, the Individual Defendants argue, among other things, that "the Court should seal Docket 466 and exhibits in its entirety, because the pleadings go into great detail about the trade secrets, their value, and why it would harm the Individual Defendants' new company, TravelNU." (Doc. 477 at 11.)

III. Analysis

As an initial matter, the Individual Defendants' sealing request is subject to the "compelling reasons" standard because the materials they seek to seal are more than tangentially related to the merits of this case. *Ctr. for Auto Safety*, 809 F.3d at 1101. The merits of this case include whether the Individual Defendants operated VOZ Travel as a pyramid scheme and whether the Individual Defendants should be enjoined from operating future multi-level marketing businesses (including, potentially, TravelNU). The materials to be sealed are more than tangentially related to those issues. With that said, the sealing request does not present a particularly close call and would be denied even if evaluated under the lesser "good cause" standard.

First, the Individual Defendants are not merely seeking permission to redact certain pieces of sensitive information from a motion that would otherwise be filed in the public record. Instead, they are seeking to seal an 811-page motion in its entirety. Courts have not hesitated to deny such overbroad sealing requests. *See, e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) ("[T]he limited number of third-party

medical and personnel records can be redacted easily to protect third-party privacy interests while leaving other meaningful information. . . . We do not see how the presence of a small number of third-party medical and personnel records that can be redacted with minimal effort constitutes 'good cause,' let alone a compelling reason, . . . to overcome the strong presumption in favor of public access."); *Murphy v. Kavo America Corp.*, 2012 WL 1497489, *1 (N.D. Cal. 2012) ("[T]o the extent that redacting the identifying information would provide the Court, and the public, with meaningful information and not prejudice the individuals, documents containing private information should be filed in redacted form rather than sealed in their entirety."); *Hesche v. NXP USA Inc.*, 2020 WL 8461529, *1 (D. Ariz. 2020) ("[T]he Court will not seal a document in its entirety when only a portion of the document contains material that satisfies the applicable legal standard for sealing.").

Second, although the Individual Defendants repeatedly assert that their sealing request arises from an "inadvertent disclosure,"[5] this is not an accurate description of what transpired. Time and again, both sides have referred, in public filings (including declarations), to the companies and individuals at issue. There was nothing accidental or inadvertent about those references. At most, it might be said that the Individual Defendants have belatedly determined it was unwise to discuss this information in public filings. But such belated recognition does not provide good cause, let alone a compelling reason, to retroactively seal documents that have long been part of the public record. *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("[W]hen information that is supposed to be confidential . . . is publicly disclosed . . . it necessarily remains public. . . . 'Once the cat is out of the bag, the ball game is over.'") (citation

---

[5] *See, e.g.*, Doc. 467 at 1 ("[Defendants] request this Honorable Court Seal an Opposed Motion to Seal Court Records and for Protective Order Prohibiting Discovery to protect certain trade secrets and/or confidential commercial information . . . that was inadvertently disclosed in prior pleadings with the court."); Doc. 477 at 10 ("[T]he following documents . . . contain[] confidential commercial information and/or trade secret information that was inadvertently disclosed by the Individual Defendants."); *id.* at 12 ("The vendors names were inadvertently disclosed in a Rule 26 disclosure filed with the Court and in the declarations of the individual defendants."); *id.* at 15 ("[D]istrict courts have generally found that Defendants may claw back trade secret and confidential commercial information if inadvertently disclosed.").

- 10 -

omitted); *In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) ("Any balancing of the interests . . . would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; the cat is out of the bag, the genie is out of the bottle. . . . [T]he docket sheet revealing Doe's identity, conviction, and cooperation is accessible on Westlaw and Lexis.").

In *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043 (W.D. Pa. 2015), the court confronted an analogous situation. There, the plaintiff filed "an executed fact-laden Affidavit" on the public docket. *Id.* *1. "Several hours" later, the plaintiff called the clerk's office to ask that the filing be removed from public view because it was an "[i]nadvertent filing of [a] privileged draft." *Id.* at *1-2. After the clerk's office "honored the request," the defendant filed a motion to modify the docket so as to restore the original filings. *Id.* The court granted the motion and ordered that the original filings be unsealed. Among other things, the court noted that the plaintiff had not established "that filing the documents with the Court was inadvertent and not the result of a post-filing change in strategy" and emphasized that the initial disclosure of the materials "on the public docket" weighed "heavily" against any attempt to claw back the disclosure. *Id.* at *4-7. Here, too, the sealing request appears to arise from "a post-filing change in strategy" rather than a true inadvertent filing. Additionally, the Individual Defendants did not realize the error of their strategy "several hours" after the documents were initially filed in the public record (which was still too late in *LabMD*) but instead are seeking to retroactively seal documents that have been in the public record for two years.

Given these conclusions, it is unnecessary to decide (at least at this juncture) whether the evidence proffered by the Individual Defendants would otherwise be sufficient to establish that the information at issue qualifies as a trade secret and that the continued public disclosure of that information would result in tangible harm. The narrow issue before the Court is whether the Individual Defendants should be allowed to file, entirely under seal, their 811-page request for a retroactive sealing order and protective order (Doc. 467), not whether the lodged motion should be granted on the merits (Doc. 466). Because

the former is being denied, the latter will remain lodged (as opposed to filed) and is not operative. *See* LRCiv 5.6(e) ("If a request to file under seal is denied in part or in full, the lodged document will not be filed."). The Individual Defendants may, if they choose, resubmit the lodged document for filing in the public record. *Id.* ("If the [sealing] request is denied in full, the submitting party may, within five (5) days of the entry of the order denying the request, resubmit the [lodged] document for filing in the public record."). The Court notes, however, that much of its reasoning for denying the pending sealing request would apply equally to the lodged sealing request.

The Individual Defendants are also free to draft and file a new motion that seeks more targeted relief with respect to sealing and/or a protective order. Alternatively, the Individual Defendants may choose to forego seeking further relief—it is their choice how to proceed. Finally, to the extent the FTC's lodged response contains a request for a protective order that differs from the protective order requested in the Individual Defendants' lodged (but not filed) motion, that request is not properly before the Court at this time—any request for affirmative relief should be set forth in a motion filed in the public record.

Accordingly,

**IT IS ORDERED** that the Individual Defendants' motion to seal (Doc. 467) is **denied**. As a result, the Individual Defendants' lodged motion (Doc. 466), the FTC's lodged response (Doc. 475), and the Individual Defendants' lodged reply (Doc. 477) will remain lodged under seal but not filed.

Dated this 28th day of March, 2022.

Dominic W. Lanza
United States District Judge