**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>Plaintiff,<br><br>v.<br><br>James D Noland, Jr., et al.,<br><br>Defendants. | No. CV-20-00047-PHX-DWL<br><br>**ORDER** |

On May 11, 2023, the Court issued findings of fact and conclusions of law that resolved all of the FTC's claims against the Individual Defendants. (Doc. 579.) Afterward, the FTC submitted a proposed final order of permanent injunction and monetary judgment as to its claims against the Individual Defendants. (Doc. 580-1.) The Individual Defendants, in turn, raised two objections to the FTC's proposed judgment (Doc. 581), the FTC filed a response to the objections (Doc. 583) and an updated version of the proposed judgment (Doc. 583-1), and the Individual Defendants filed a reply (Doc. 584).

Separately, on June 5, 2023, the Court issued an order explaining that it was inclined to delay entering judgment as to the FTC's claims against the Individual Defendants until the FTC's claims against the Corporate Defendants were resolved. (Doc. 582 at 2.) In response, no party objected to this approach and the FTC announced its intention "to expeditiously reach a settlement with the Receiver for the Corporate Defendants, which will resolve the FTC's claims against the Corporate Defendants and allow the Court to enter a final order against the Individual Defendants." (Doc. 583 at 1.)

To that end, on August 22, 2023, the FTC and the Corporate Defendants filed a notice announcing that they had reached a settlement. (Doc. 587.) The FTC and the Corporate Defendants also stipulated to the entry of a consent judgment against the Corporate Defendants, a proposed version of which is filed as an attachment to the notice. (Doc. 587-1.) The notice explains that the agreed-to relief "mirrors the terms proposed for the Individual Defendants." (Doc. 587 at 2.)

Given these developments, the stage is now almost set to bring this case to a conclusion. Before doing so, however, a few loose ends must be resolved.

Objections To Proposed Judgment. As noted, the Individual Defendants have raised two objections to the FTC's proposed judgment against them. (Doc. 581.) The first objection is to Section X(D) of the proposed judgment, which provides as follows:

> All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.

(Doc. 580-1 at 19.) According to the Individual Defendants, "[t]he creation of this sort of fund was condemned as improper and punitive by the Supreme Court" in *Kokesh v. SEC*, 581 U.S. 455 (2017), and by the Ninth Circuit in *FTC v. Elegant Solutions, Inc.*, 2022 WL 2072735 (9th Cir. 2022). (Doc. 581 at 1-2.) Thus, the Individual Defendants argue that "[t]he district court must . . . modify its injunction to remove the sentence providing that '[a]ny money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.'" (*Id.* at 2.) The Individual Defendants further argue that "funds paid for compensatory contempt to alleged victims should not be paid to some unidentified service or charity to be determined at the sole (standardless) discretion of the FTC. The Final Order should provide that any funds not properly paid to a consumer under this Final Order be returned to the Defendant or Defendants." (*Id.* at 2.)

In response, the FTC begins by noting that Section X(D) does not purport to

- 2 -

1 authorize the FTC to keep any undistributed funds as "disgorgement" or otherwise authorize the FTC to deposit undistributed funds in the U.S. Treasury. (Doc. 583 at 1 ["Individual Defendants object to language the FTC did not propose."].) Nevertheless, and without conceding the merits of the Individual Defendants' broader objection, the FTC agrees to amend Section X(D) to remove the language permitting the FTC to apply any money remaining after consumer redress to "such other equitable relief (including consumer information remedies) as [the FTC] determines to be reasonably related to Defendants' practices alleged in the Complaint." (*Id.* at 2.) In an updated proposed judgment submitted as an attachment to the FTC's response, Section X(D) now reads: "All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund." (Doc. 583-1 at 19.) The FTC concludes: "If the FTC collects the entirety of the Court's $7.3 million monetary judgment and has money left over after administering and paying consumer redress, it will either return that money to the Individual Defendants or ask the Court for permission to use the funds for some other purpose. At this point, the Court need not resolve this issue." (Doc. 583 at 2.)

In reply, the Individual Defendants reiterate their position that "[t]he FTC does not have the right or authority to request the Court for permission to use the funds for any other purpose other than for payment to the actual party for actual losses sustained." (Doc. 584 at 1.)

Although the Court appreciates the FTC's attempt to moot this dispute by amending the language of Section X(D), the Court is not persuaded that the new version of Section X(D) achieves that result. The Individual Defendants' position is that the monetary award in this case may be used for one and only one purpose, which is to prove redress to consumers who suffered harm, and that any funds not used for that purpose must be returned to them. The new version of Section X(D), however, would not necessarily require the FTC to use the funds to provide redress to consumers who suffered harm.

1 Instead, it would allow the FTC to use the funds to provide "equitable relief, including
2 consumer redress"—a formulation that potentially contemplates the use of the funds for
3 some unspecific equitable purpose other than providing consumer redress. Additionally,
4 although the FTC avows in its response that it may return any undistributed funds to the
5 Individual Defendants at the conclusion of the consumer-redress process, the actual
6 language of the proposed judgment doesn't say this. Thus, it remains necessary to rule on
7 the Individual Defendants' first objection as it applies to the updated version of Section
8 X(D) the FTC has now proposed.

9 When evaluating this objection, it is important to note that the monetary award in
10 this case has two different components. The primary monetary award of $7,306,873.14
11 arises not under Section 19 of the FTC Act but pursuant to the Court's civil contempt
12 power. (Doc. 579 at 112-20.) As the Ninth Circuit has emphasized, "[d]istrict courts have
13 broad equitable power to order appropriate relief in civil contempt proceedings." *FTC v.*
14 *EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012). Accordingly, as to those funds, the
15 Court perceives no problem with the FTC's proposal to use these funds to provide
16 "equitable relief, including consumer redress and any attendant expenses for the
17 administration of any redress fund." Even if that equitable relief assumes some form other
18 than providing direct redress to injured consumers, this would be consistent with the broad
19 equitable purposes of a compensatory civil contempt award. None of the cases cited by
20 the Individual Defendants, which address monetary awards under Section 19, hold or
21 suggest otherwise.

22 The other monetary award in this case was the $6,829 award arising from the FTC's
23 claim under Section 19 of the FTC Act for violations of the Merchandise Rule. (Doc. 579
24 at 99-106.) Although the Individual Defendants needlessly complicated the analysis by
25 suggesting that Section X(D) authorizes the FTC to keep any leftover portion of this award
26 as "disgorgement"—as the FTC correctly notes, that language does not appear in the
27 proposed form of judgment—the Court agrees with the Individual Defendants' broader
28 point that the FTC should not be able to use any Section 19-related funds for unspecified

"equitable" purposes that are distinct from providing consumer redress. *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) ("It follows [from the language of § 19 of the FTC Act] that there may be no redress without proof of injury caused by those practices. And the relief must be necessary to redress the injury."). Section X(D) must be updated to address this clarification.

Finally, as for what to do with any funds that are remaining once the FTC has completed the process of attempting to provide consumer redress, the easy solution is to update Section X(D) to include the avowal that the FTC made in its response brief—specifically, that if there is any "money left over after administering and paying consumer redress, [the FTC] will either return that money to the Individual Defendants or ask the Court for permission to use the funds for some other purpose." (Doc. 583 at 2.)

The Individual Defendants' second objection pertains to Section II of the proposed judgment, which is entitled "Prohibited Schemes" and provides as follows: "IT IS FURTHER ORDERED that Individual Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from engaging, participating, or assisting others in the creating, advertising, marketing, promoting, offering for sale, selling, or operating of any Ponzi scheme or chain referral scheme." (Doc. 580-1 at 9.) The Individual Defendants' objection is that "the term[] 'chain referral scheme' is undefined and therefore vague and unenforceable." (Doc. 581 at 2.) In response, the FTC states that "[w]ithout conceding a definition is required, the FTC proposes defining a chain referral scheme to mean a 'program that is characterized by the payment of consideration by a new recruit to join the program, in return for which the recruit obtains the right to receive compensation for recruiting others into the program.' The attached modified Proposed Final Order incorporates this definition . . . ." (Doc. 583 at 2.) In reply, the Individual Defendants argue:

> The FTC's definition of a 'chain referral program' is *overly broad* and *encompasses perfectly legal business practices*. The FTC's definition would prohibit Defendants from allowing existing users of Defendants['] products or services to receive credit or compensation for personally and directly referring someone to use the service or product. Major companies use customer referral incentives to promote their products and services. For

- 5 -

>example, Google Apps once used $15 offers to current customers for each new user they recruit, and the video game World of Warcraft recently offered users a free month of gaming if they successfully referred their friends to buy a subscription. Barring these types of business practices go[es] beyond the scope of the Defendants['] behavior, do[es] not promote the protection of consumers and simply punish[es] Defendants.

(Doc. 584 at 2.) The Individual Defendants also suggest an alternative definition of "chain referral scheme": "[a] program that is characterized by the payment of consideration by a new recruit to join the program, in return for which the recruit obtains the right to receive compensation for others who[m] they indirectly refer into the program." (*Id.* at 3.) The Individual Defendants contend that their proposed definition "makes it clear that [they] cannot give incentives to customers who do not directly refer someone to use a product or service." (*Id.*)

Although it presents a fairly close call, the Court concludes that the Individual Defendants have the better of this argument. The Court is concerned about adopting an overbroad definition that might sweep in innocent business practices. Thus, the proposed judgment should be updated to include the Individual Defendants' definition of the term "chain referral scheme." Although this definition is a bit narrower than the FTC's proposed version, the Court is satisfied that other prohibitions set forth in Sections I, III, and IV of the proposed judgment (as to which there is no objection) are sufficient.

<u>Updated Forms Of Judgment</u>. The FTC's proposed judgment against the Individual Defendants (Doc. 583-1) must be further updated as set forth above. As for the FTC's proposed judgment as to its claims against the Corporate Defendants (Doc. 587-1), the Court concludes that it, too, must be updated in the same manner in light of the parties' desire for it to "mirror[]" the terms of the judgment against the Individual Defendants. (Doc. 587 at 2.)

…

…

…

…

Accordingly,

**IT IS ORDERED** that within 14 days of the issuance of this order, the FTC must submit updated versions of its proposed final order of permanent injunction and monetary judgment as to the Individual Defendants and its proposed final order of permanent injunction and monetary judgment as to the Corporate Defendants, both of which must be updated to reflect the rulings and clarifications in this order.

**IT IS FURTHER ORDERED** that the FTC and the Corporate Defendants must separately file a notice, signed by counsel for both sides, confirming that the FTC and the Corporate Defendants stipulate to the entry of the updated proposed final order of permanent injunction and monetary judgment as to the Corporate Defendants. Once in receipt of those filings, the Court intends to bring this case to a conclusion.

Dated this 1st day of September, 2023.

_____
Dominic W. Lanza
United States District Judge