**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-0047-PHX-DWL |
| Plaintiff, | **FINAL ORDER OF PERMANENT** |
| v. | **INJUNCTION AND MONETARY** |
| James D. Noland, Jr., *et al.*, | **JUDGMENT AS TO DEFENDANTS** |
| Defendants. | **JAMES D. NOLAND, JR., LINA** |
| | **NOLAND, SCOTT HARRIS, AND** |
| | **THOMAS G. SACCA** |

Plaintiff, the Federal Trade Commission ("Commission"), filed its Second Amended Complaint for Permanent Injunction and Other Equitable Relief ("Second Amended Complaint") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, which was assigned case number 20-cv-00047 and will be referred to as the "Lead Action." (Lead Action, Doc. 205.) The Commission also filed its Motions for an Order to Show Cause and Motion for Contempt Sanctions (the "Contempt Motions") pursuant to the Court's inherent authority in case number 00-cv-02260, which will be referred to as the "Contempt Action" (Contempt Action, Docs. 78, 91, 106), and which has since been consolidated with the Lead Action. From January 25, 2023 through February 8, 2023, the Court held a bench trial regarding the allegations raised in the FTC's Second Amended Complaint and its Contempt Motions, as to James D. Noland, Jr., Lina Noland, Scott Harris, and Thomas G. Sacca (the "Individual Defendants"). Having considered the evidence and the parties' arguments, the Court, for the reasons explained in its May 11, 2023 Order with findings of fact and conclusions of

law (Lead Action, Doc. 579), in the Court's Order Granting Summary Judgment as to Liability (Lead Action, Doc. 406), and in the Court's Order Denying the FTC's Motion for Contempt Sanctions (Contempt Action, Doc. 130), finds that entry of this Final Order of Permanent Injunction and Monetary Judgment as to Defendants James D. Noland, Jr., Lina Noland, Scott Harris, and Thomas G. Sacca is appropriate.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Second Amended Complaint alleges that Defendants engaged in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and in acts or practices that violate the Mail, Internet, or Telephone Order Merchandise Rule ("Merchandise Rule"), 16 C.F.R. Part 435, and the Rule Concerning Cooling-Off Period for Sales Made at Homes or at Certain Other Locations ("Cooling-Off Rule"), 16 C.F.R. Part 429, in the marketing and sale of the "Success By Health" ("SBH") program, including SBH products and training, and the "VOZ Travel" program, and related products and services.  Among other things, the Second Amended Complaint alleges that SBH and VOZ Travel were pyramid schemes and that Defendants falsely claimed SBH and VOZ Travel members could reasonably expect to earn substantial income by joining SBH or VOZ and following Defendants' instructions.

3.      The Contempt Motions allege that James D. Noland, Jr., Scott Harris, and Thomas Sacca (the "Contempt Defendants") had knowledge of the Court's 2002 Permanent Injunction against James D. Noland, Jr. (Contempt Action, Doc. 66; the "2002 Noland Order"), and participated in acts or practices that violated the 2002 Noland Order in the marketing and sale of the SBH and VOZ Travel programs and related goods and services. The Court's findings of fact and conclusions of law regarding the FTC's allegations are set forth in full in the Court's May 11, 2023 Order (Lead Action, Doc. 579), Order Granting Summary Judgment as to Liability (Lead Action, Doc. 406), and Order Denying the FTC's Motion for Contempt Sanctions (Contempt Action, Doc. 130).  In short, the Court has

2

concluded that (1) Defendants operated SBH and VOZ Travel as pyramid schemes, in violation of both the FTC Act and the 2002 Noland Order; (2) Defendants made deceptive claims regarding SBH and VOZ Travel members' income potential, in violation of both the FTC Act and the 2002 Noland Order; (3) Defendants violated the Merchandise Rule by failing to offer and provide refunds for delayed product shipments; (4) Defendants violated the Cooling-Off Rule by failing to offer and provide refunds on the sale of tickets to certain training events; (5) Individual Defendants had the authority to control, participated in, and had knowledge of the unlawful acts and practices described herein and in the Second Amended Complaint and Contempt Motions; (6) Contempt Defendants violated Section V of the 2002 Noland Order by failing to take reasonable steps to monitor and ensure Defendants' compliance with Sections I-III of the 2002 Noland Order and by failing investigate and resolve promptly consumer complaints; (7) there is a cognizable danger that Individual Defendants will continue to engage in activities that violate the FTC Act unless enjoined from such acts and practices; (8) Contempt Defendants caused $7,306,873.14 in consumer harm through their violations of the 2002 Noland Order; and (9) Defendants caused $6,829.00 in consumer harm through their violations of the Merchandise Rule.

**DEFINITIONS**

For the purpose of this Order, the following definitions shall apply:

A.    "**Applicable Time Period**" means the time stated in Defendants' solicitation or 30 days of Receipt of a Properly Completed Order if no time is stated in the solicitation.

B.    "**Business Venture**" means any written or oral business arrangement, however denominated, whether or not covered by 16 C.F.R. Part 437, that consists of providing payment or other consideration for the right or means to offer, sell, or distribute a product or service.

C.    "**Chain Referral Scheme**" means a program that is characterized by the payment of consideration by a new recruit to join the program, in return for which the recruit obtains the right to receive compensation for others who[m] they indirectly refer into the program.

D.      "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E.      "**Consumer Goods or Services**" means goods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses of instruction or training regardless of the purpose for which they are taken.

F.      "**Contempt Defendants**" means James D. Noland, Jr., Scott A. Harris, and Thomas G. Sacca, individually, collectively, or in any combination.

G.      "**Corporate Defendants**" means Success By Media Holdings, Inc., Success By Media, LLC, Enhanced Capital Funding, and each of their subsidiaries, affiliates, successors, and assigns.

H.      "**Defendants**" means Corporate Defendants, James D. Noland, Jr., Lina Noland, Scott A. Harris, and Thomas G. Sacca, individually, collectively, or in any combination.

I.      "**Door-to-Door Sale**" means a sale, lease, or rental of Consumer Goods or Services in which the Seller or his representative personally solicits the sale, including those in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is made at a place other than the place of business of the Seller (e.g., sales at the buyer's residence or at facilities rented on a temporary or short-term basis, such as hotel or motel rooms, convention centers, fairgrounds and restaurants, or sales at the buyer's workplace or in dormitory lounges), and which has a purchase price of $25 or more if the sale is made at the buyer's residence or a purchase price of $130 or more if the sale is made at locations other than the buyer's residence, whether under single or multiple contracts.

J.      "**Individual Defendants**" means James D. Noland, Jr., Lina Noland, Scott A. Harris, and Thomas G. Sacca, individually, collectively, or in any combination.

K.      "**Multi-Level Marketing Program**" means any plan or program in which a participant has the right to (1) recruit others into the program or have others placed in the participant's downline, and (2) receive any benefit, including but not limited to any compensation, payment, reward, bonus, product, or product credit, that is based, in whole or in part, upon purchases, sales, or any other activities of the participant's downline. Downline refers to the collection of participants whom a participant has personally

recruited (first level), any participants and customers recruited by first level participants (second level), any participants and customers recruited by second level participants (third level), and so forth, however denominated.

L.    "**Option**" means an offer made Clearly and Conspicuously and without prior demand.

M.    "**Place of Business**" means the main or permanent branch office or local address of a Seller.

N.    "**Prompt**," in the context of a Refund, means a Refund sent by any means at least as fast and reliable as first class mail within 7 days of the date on which the buyer's right to refund vests under the provisions of this Order.  Provided, however, that where Individual Defendant cannot provide a Refund by the same method payment was tendered, Prompt Refund means a Refund sent in the form of cash, check, or money order, by any means at least as fast and reliable as first class mail, within 7 days of the date on which Individual Defendant discovers Individual Defendant cannot provide a Refund by the same method as payment was tendered.

O.    "**Purchase Price**" means the total price paid or to be paid for the Consumer Goods or Services, including all interest and service charges.

P.    "**Receipt of a Properly Completed Order**" means, where the buyer tenders full or partial payment in the proper amount in the form of cash, check, or money order; authorization from the buyer to charge an existing charge account; or other payment methods, the time at which Individual Defendant receives both said payment and an order from the buyer containing all of the information needed by Individual Defendant to process and Ship the order.

Q.    "**Refund**" means:

1.    Where the buyer tendered full payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer;

2.    Where there is a credit sale:

a)    And Individual Defendant is a creditor, a copy of a credit memorandum or the like or an account statement sent to the buyer reflecting the removal or absence of any remaining charge incurred as a result of the sale from the buyer's account;

b)    And a third party is the creditor, an appropriate credit memorandum or the like sent to the third party creditor which will remove the charge from the buyer's account and a copy of the credit memorandum or the like sent to the buyer that includes the date that Defendant sent the credit memorandum or the like to the third party creditor and the amount of the charge to be removed, or a statement from Individual Defendant acknowledging the cancellation of the order and representing that it has not taken any action regarding the order which will result in a charge to the buyer's account with the third party;

c)    And the buyer tendered partial payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer.

3.    Where the buyer tendered payment for the unshipped merchandise by any means other than those enumerated in (1) or (2) of this definition:

a)    Instructions sent to the entity that transferred payment to Defendant instructing that entity to return to the buyer the amount tendered in the form tendered and a statement sent to the buyer setting forth the instructions sent to the entity, including the date of the instructions and the amount to be returned to the buyer;

b)    A return of the amount tendered in the form of cash, check, or money order sent to the buyer; or

7

     c)     A statement from Individual Defendant sent to the buyer acknowledging the cancellation of the order and representing that Individual Defendant has not taken any action regarding the order which will access any of the buyer's funds.

R.     "**Seller**" means any person engaged in the Door-to-Door Sale of Consumer Goods or Services.

S.     "**Ship,**" or any variation thereof, including Shipment or Shipping, means the act by which the merchandise is physically placed in the possession of the carrier.

T.     "**Time of Solicitation**" of an order means that time when Individual Defendants have: (1) Mailed or otherwise disseminated the solicitation to a prospective purchaser; (2) Made arrangements for an advertisement containing the solicitation to appear in a newspaper, magazine or the like or on radio or television which cannot be changed or cancelled without incurring substantial expense; or (3) Made arrangements for the printing of a catalog, brochure or the like which cannot be changed without incurring substantial expense, in which the solicitation in question forms an insubstantial part.

**ORDER**

**I.     BAN ON MULTI-LEVEL MARKETING**

**IT IS THEREFORE ORDERED** that Individual Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from creating, advertising, marketing, promoting, offering for sale, selling, or operating, or assisting others in advertising, marketing, promoting, offering for sale, selling, or operating, any Multi-Level Marketing Program, including any product- or service-based pyramid scheme.

**II.     PROHIBITED SCHEMES**

**IT IS FURTHER ORDERED** that Individual Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from engaging, participating, or assisting others in the creating, advertising, marketing, promoting, offering for sale, selling, or operating of any Ponzi scheme or chain referral scheme.

### III.    PROHIBITED COMPENSATION

**IT IS FURTHER ORDERED** that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the creating, advertising, marketing, promoting, offering for sale, selling, or operating of any Business Venture, are permanently restrained and enjoined from providing payment or other compensation to any Business Venture participant unless: (A) the compensation is based solely on the purchase of product directly from the company operating the Business Venture by a customer; (B) only one participant is compensated for the customer's purchase; and (C) the customer whose purchase generates the compensation has not been a participant in the Business Venture within 6 months of the purchase.

### IV.    PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.    Misrepresenting or assisting others in misrepresenting, including by providing others with the means and instrumentalities with which to misrepresent, expressly or by implication, including through discussion of lifestyle changes tied to compensation:

1.    That participants (or any subset of participants) in a Business Venture will or are likely to achieve substantial sales, income, or profit;

2.    The amount of sales, income, or profit that participants in a Business Venture have actually earned;

3.    The amount of time or effort required to earn an amount of compensation or to advance in a Business Venture;

4.      The reason participants do not earn substantial compensation in a Business Venture, including representations that participants fail because they do not devote substantial or sufficient effort or are not active; or

5.      Any other fact material to consumers concerning a Business Venture, such as:  the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

B.      Representing or assisting others in representing, expressly or by implication, the amount of sales, income, or profits that a person can expect to earn in connection with their purchase of any good or service, unless the representation is non-misleading and, at the time such representation is made, Individual Defendants possess and rely upon competent and reliable evidence sufficient to substantiate that the representation is true. Such implied representations include the use of lifestyle representations or images.

C.      Mispresenting or assisting others in misrepresenting, expressly or by implication, the amount of sales, income, or profits that a person has earned in connection with their purchase of any good or service.

D.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, in connection with the sale of any good or service ordered by mail, via the internet, or by telephone:

1.      The time within which the good will ship;

2.      Any material aspect of a Refund policy; or

3.      The time within which the buyer will receive the ordered good.

E.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## V.      MONITORING BY INDIVIDUAL DEFENDANTS

**IT IS FURTHER ORDERED** that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or operating of any Business Venture, are permanently restrained and enjoined from:

A.    Failing to monitor and take all reasonable steps necessary to ensure that Individual Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them act in compliance with the requirements of Sections I-IV of this Order.

B.    Failing to promptly and thoroughly investigate any complaint received by Individual Defendants, including complaints relating to compliance with this Order.

## VI.    PROHIBITIONS ON MAIL, INTERNET, OR TELEPHONE ORDERS

**IT IS FURTHER ORDERED** that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good ordered by mail, via the internet, or by telephone, are permanently restrained and enjoined from:

A.    Representing, without a reasonable basis, that Individual Defendants will: (1) Ship ordered goods within the time stated in their solicitation; or (2) Ship ordered goods by any revised Shipping date provided to buyers.

B.    Where the order solicitation does not Clearly and Conspicuously state a Shipping time, soliciting any order for the sale of merchandise without having a reasonable basis that the goods will Ship 30 days after Receipt of a Properly Completed Order.

C.    Informing buyers that they are unable to make any representation regarding the length of any Shipping delay unless they have a reasonable basis for so informing buyers.

D.    Failing to provide buyers with the Option either to consent to the delay in Shipping or to cancel the order and receive a Prompt Refund where the Individual Defendant cannot Ship the ordered goods within the Applicable Time Period.  Said Option must be provided within a reasonable time after the Individual Defendant becomes aware

11

of their inability to Ship within the Applicable Time Period, but in no event later than the Applicable Time Period.

1. Provided however, that any such option must either:

    a.   provide a definite revised Shipping date; or

    b.  where the Individual Defendant lacks a reasonable basis for providing a definite revised Shipping date, inform the buyer that:

        i.  the seller is unable to make any representation regarding the length of the delay; and

       ii.  the reason(s) for the delay.

2. Where the Individual Defendant has provided a definite revised Shipping date, pursuant to Section VI.D.1.a, that is more than 30 days later than the Applicable Time Period, the Individual Defendant must also Clearly and Conspicuously inform the buyer that the buyer's order will automatically be deemed to have been cancelled unless:

    a.  the Individual Defendant has Shipped the merchandise within the Applicable Time Period, and the Individual Defendant has received no cancellation request prior to Shipment; or

    b.  The buyer has specifically consented to said Shipping delay within the Applicable Time Period.

3. Where the Individual Defendant has informed the buyer that they cannot make any representation regarding the length of the delay pursuant to Section VI.D.1.b, the Individual Defendant must also Clearly and Conspicuously inform the buyer that the buyer's order will automatically be deemed to have been cancelled unless:

    a.  the Individual Defendant has Shipped the merchandise within 30 days of the Applicable Time Period, and the Individual Defendant has received no cancellation request prior to Shipment; or

    b.  the buyer has specifically consented to said Shipping delay within 30 days of the Applicable Time Period. Provided however, the Individual Defendant must also expressly inform the buyer that the buyer will have a continuing right to cancel the order at any time after the Applicable Time Period.

E.    Where the buyer has consented to a definite revised Shipping date pursuant to Section VI.D, and the Individual Defendant becomes aware they are unable to Ship ordered goods by that date, failing to provide a renewed Option either to consent to a further delay or to cancel the order and receive a Prompt Refund. Said Option must be made within a reasonable time after the Individual Defendant first becomes aware of their inability to Ship before the said definite revised Shipping date, but in no event later than the expiration of the definite revised Shipping date.

1.  Provided however, that any such Option must provide a new definite revised Shipping date, unless the Individual Defendant lacks a reasonable basis for doing so.

2.  In such event, the Individual Defendant must also provide the notices required by Section VI.D.1.b and Section VI.D.3 of this Order.

F.    Failing to cancel any order and provide the buyer with a Prompt Refund::

1.  When Individual Defendant has received a cancellation and Refund request from the buyer pursuant to Section VI of this Order;

2.  Under the circumstances proscribed in Section VI.D.2 and VI.D.3;

3. When Individual Defendant fails to provide the Option required by Section VI.D. and has not shipped the merchandise within the Applicable Time Period; or

4. When Individual Defendant notifies the buyer that they have decided not to Ship the merchandise.

## VII.    REBUTTABLE PRESUMPTION REGARDING RECORDS

**IT IS FURTHER ORDERED** that in any action brought by the Commission alleging a violation of Section VI of this Order, the failure to create and maintain records establishing compliance with Section VI creates a rebuttable presumption that Individual Defendants violated the provisions of that Section.

## VIII.    PROHIBITION ON FAILURE TO HONOR, OR PROVIDE NOTICE OF, CANCELLATION RIGHTS

**IT IS FURTHER ORDERED** that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with any Door-to-Door Sale, are hereby preliminarily restrained and enjoined from:

A.    Failing to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer, or on the front page of the receipt if a contract is not used, and in bold face type of a minimum size of 10 points, a statement in substantially the following form:

> You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

14

The seller may select the method of providing the buyer with the duplicate notice of cancellation form set forth in Subsection B of this Section, *provided however*, that in the event of cancellation the buyer must be able to retain a complete copy of the contract or receipt.  Furthermore, if both forms are not attached to the contract or receipt, the seller is required to alter the last sentence in the statement above to conform to the actual location of the forms;

B.    Failing to furnish each buyer, at the time the buyer signs the Door-to-Door Sales contract or otherwise agrees to buy Consumer Goods or Services from the Seller, a completed form in duplicate, captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," which shall (where applicable) contain in ten point bold face the information and statements reflected below, made in the same language as that used in the contract:

NOTICE OF CANCELLATION

[enter date of transaction]

(Date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you

15

may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice to [Name of seller], at [address of seller's place of business] NOT LATER THAN MIDNIGHT OF [date].

I HEREBY CANCEL THIS TRANSACTION.

(Date)  (Buyer's signature);

C.     Failing, before furnishing copies of the "Notice of Cancellation" to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation;

D.     Including in any contract or receipt from a Door-to-Door Sale any confession of judgment or any waiver of any of the rights to which the buyer is entitled under this Section including specifically the buyer's right to cancel the sale in accordance with the provisions of this Section;

E.     Failing to inform each buyer orally, at the time the buyer signs the contract or purchases the Consumer Goods or Services, of the buyer's right to cancel;

F.     Misrepresenting in any manner the buyer's right to cancel;

G.     Failing or refusing to honor any valid notice of cancellation by a buyer, and within 10 business days after the receipt of such notice, to: (i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by the seller; (iii) cancel and return any negotiable instrument executed by the buyer in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest created in the transaction;

H.    Negotiating, transferring, selling, or assigning any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the Consumer Goods or Services were purchased; and

I.    Failing, within 10 business days of receipt of the buyer's notice of cancellation, to notify the buyer whether the seller intends to repossess or to abandon any shipped or delivered goods.

## IX.    MONETARY JUDGMENTS

**IT IS FURTHER ORDERED** that:

A.    Judgment in the amount of Seven Million, Three Hundred Six Thousand, Eight Hundred Seventy-Three dollars and Fourteen cents ($7,306,873.14) is entered in favor of the Commission against Contempt Defendants jointly and severally, as a compensatory sanction for Contempt Defendants' violations of the 2002 Noland Order.

B.    Judgment in the amount of six thousand, eight hundred and twenty-nine ($6,829) is entered in favor of the Commission against Individual Defendants jointly and severally, as monetary relief for Individual Defendants' violations of the Merchandise Rule.

C.    The judgment in Subsection B is part of, and not in addition to, the judgment in Subsection A.  The Commission shall have the right to apply payments received from or on behalf of the Contempt Defendants under this Section to the judgments in either Subsection A or B at its discretion.  In no event, however, shall the Commission collect, or the Individual Defendants owe, an amount greater than the judgment amount in Subsection A ($7,306,873.14), plus post-judgment interest permitted by law.  If the Individual Defendants pay the full judgment amount in Subsection A ($7,306,873.14), plus post-judgment interest permitted by law, then the judgment described in Subsection B shall also be considered satisfied.

D.    Payments must be made by electronic fund transfer in accordance with instructions provided by a representative of the Commission.

**X.   ADDITIONAL MONETARY PROVISIONS**

**IT IS FURTHER ORDERED** that:

A.   Individual Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.   The asset freeze imposed on Individual Defendants pursuant to the Temporary Restraining Order (Lead Action, Doc. 21, *as amended*, Doc. 38) and the Preliminary Injunction (Lead Action, Doc. 109) is hereby modified to the extent necessary to permit Individual Defendants to satisfy, in whole or in part, the Judgment imposed in Section IX.  Upon full satisfaction of the Judgment, the FTC shall make a full report of satisfaction, at which time the Court, upon review and approval of the report, shall dissolve the asset freeze.

C.   Individual Defendants' Taxpayer Identification Numbers (Social Security Number or Employer Identification Number), which Individual Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

D.   All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  Any funds the FTC applies as monetary relief for the Merchandise Rule violations shall not be used for purposes other than consumer redress.  Upon full satisfaction of the Judgment, if there is any money left over after administering and paying consumer redress, the FTC will either return that money to the Individual Defendants or ask the Court for permission to use the funds for some other purpose.

**XI.   2002 NOLAND ORDER SUPERSEDED IN PART**

**IT IS FURTHER ORDERED** that this Order supersedes the 2002 Noland Order, except as to the Findings contained therein.

18

## XII.   CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Individual Defendants, Individual Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Individual Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing and sale of the Success By Health or VOZ Travel program or any other goods or services sold by Corporate Defendants.

C.    Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XIII.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Individual Defendants obtain acknowledgments of receipt of this Order as follows:

A.    Each Individual Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 10 years after entry of this Order (for Individual Defendants Thomas Sacca and Lina Noland), 15 years after entry of this Order (for Individual Defendant Scott

Harris), and 20 years after entry of this Order (for Individual Defendant James D. Noland Jr)., each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in Section XIV. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which each Individual Defendant delivered a copy of this Order, that Individual Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Individual Defendants make timely submissions to the Commission:

A.    One hundred eighty (180) days after entry of this Order, each Individual Defendant must submit a compliance report, sworn under penalty of perjury. Each Individual Defendant must:

1.    identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences, that Individual Defendant uses;

2.    identify all business activities, including any business for which Individual Defendant performs services, whether as an employee or otherwise, and any entity in which such Defendant has any ownership interest;

3.    describe Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

4.      identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Individual Defendant;

5.      identify all of Individual Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

6.      describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendant must describe if he knows or should know due to his own involvement);

7.      describe in detail whether and how that Individual Defendant is in compliance with each Section of this Order; and

8.      provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 10 years after entry of this Order (for Individual Defendants Thomas Sacca and Lina Noland), 15 years after entry of this Order (for Individual Defendant Scott Harris), and 20 years after entry of this Order (for Individual Defendant James D. Noland, Jr.), each Individual Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      name, including aliases or fictitious name or residence address;

2.      title or role in any business activity, including any business for which Individual Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity;

3.      any designated point of contact; and

4.      the structure of any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

21

C.     Each Individual Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Individual Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  FTC v. James D. Noland, Jr., X010066.

## XV.    RECORDKEEPING

**IT IS FURTHER ORDERED** that Individual Defendants must create certain records for 10 years after entry of this Order (for Individual Defendants Thomas Sacca and Lina Noland), 15 years after entry of this Order (for Individual Defendant Scott Harris), and 20 years after entry of this Order (for Individual Defendant James D. Noland, Jr.), and retain each such record for 5 years (for all Individual Defendants).  Specifically, each Individual Defendant, for any business that such Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     accounting records showing the revenues from all goods or services sold;

B.     personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material, including sales scripts.

## XVI.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Individual Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Individual Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Individual Defendant.  Individual Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Individual Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Individual Defendants or any individual or entity affiliated with Individual Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual

23

Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

**XVII. RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

Dated this 15th day of September, 2023.

Dominic W. Lanza
United States District Judge

24