**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission,<br><br>Plaintiff,<br><br>v.<br><br>James D Noland, Jr., et al.,<br><br>Defendants. | No. CV-20-00047-PHX-DWL<br><br>**ORDER** |

Pending before the Court is the FTC's motion to modify the asset freeze. (Doc. 598.) For the following reasons, the motion is granted.

**RELEVANT BACKGROUND**

During the early stages of this FTC enforcement action, the Court issued a preliminary injunction that, among other things, instituted an asset freeze as to Defendants James D. Noland, Jr., Lina Noland, Scott Harris, and Thomas G. Sacca (together, the "Individual Defendants"). (Doc. 109 at 5-6.) Pursuant to the asset freeze, the Individual Defendants were enjoined from "[t]ransferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of" certain assets. (*Id.*) The preliminary-injunction order also included a related section entitled "Duties of Asset Holders And Other Third Parties." (*Id.* at 6-7.) Among other things, it provided that any third-party business entity or person with actual notice of the order who held or controlled any asset owned or controlled by any Individual Defendant

was required to "prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such [asset] . . . except by further order of this Court." (*Id.* at 7.)

On September 18, 2023, following a bench trial, the Court issued a final order of permanent injunction and monetary judgment as to the Individual Defendants. (Doc. 592.) The monetary judgment consists of an award of $7,306,873.14 against three of the four Individual Defendants (James D. Noland, Jr., Scott Harris, and Thomas Sacca), jointly and severally; an award of $6,829 against all four Individual Defendants, jointly and severally; and a clarification that the latter award "is part of, and not in addition to," the former award. (*Id.* at 17.) Additionally, the final order clarifies that "[t]he asset freeze imposed on Individual Defendants pursuant to the . . . Preliminary Injunction (Lead Action, Doc. 109) is hereby modified to the extent necessary to permit Individual Defendants to satisfy, in whole or in part, the Judgment imposed [against them]. Upon full satisfaction of the Judgment, the FTC shall make a full report of satisfaction, at which time the Court, upon review and approval of the report, shall dissolve the asset freeze." (*Id.* at 18.)

That same day, the Court entered judgment. (Doc. 596.)

On November 2, 2023, the FTC filed the pending modification motion. (Doc. 598.) In a nutshell, the FTC explains that "[s]ecured creditors and lien holders have contacted the FTC with concerns that the Court's asset freeze may prevent them from exercising their rights to [the Individual] Defendants' real and personal property assets that serve as collateral. Specifically, the asset freeze prevents Defendants' creditors from selling or otherwise disposing of Defendants' assets in which those creditors have a security interest. Because the FTC's unsecured judgment interest cannot trump creditors' secured interests perfected before the initiation of this action, the asset freeze also prevents the FTC from collecting on its judgment." (*Id.* at 2.) The FTC argues that "[r]ather than requiring each creditor seek to modify the asset freeze to exercise their interests, the FTC proposes the Court modify the asset freeze to allow creditors to enforce their rights against Defendants' assets in the same way they could do so absent the asset freeze. The FTC originally sought

the asset freeze to protect its ability to collect on an eventual judgment. The proposed relief maintains this aspect of the freeze by maintaining a freeze on any net proceeds that otherwise would go to Defendants after a creditor disposition of property. To promote efficiency and avoid burdening the Court, the FTC proposes creditors be able to obtain its written approval prior to exercising their rights against Defendants' collateral. With such approval, creditors exercising their rights would be deemed not to violate the asset freeze by doing so. Creditors will remain able to seek relief separately from the Court should they instead chose to do so." (*Id.* at 2-3.)

On November 15, 2023, the Individual Defendants filed an opposition to the FTC's modification motion. (Doc. 599.) The Individual Defendants argue the motion should be denied because (1) "the FTC's generalized conclusory statements regarding 'concerns' by unidentified creditors made at some prior unidentified time is unsupported hearsay and insufficient to support amendment of the order"; (2) "the FTC lacks standing to make claims for financial institutions who may or may not be seeking relief from the asset freeze"; and (3) "nor is there any consideration by the FTC as to whether these vehicles are subject to exemption or claims by a spouse." (*Id.* at 1-2.) Alternatively, the Individual Defendants argue that "[i]f the Court ultimately unfreezes the homes, . . . the Court [should] allow Defendants to sell the homes and deposit the net proceeds of sale in the Clerk of the Court registry pending further court order." (*Id.* at 2.)

On November 17, 2023, the Individual Defendants filed a notice of appeal. (Doc. 601.)

On November 21, 2023, the FTC filed a reply in support of its modification motion. (Doc. 602.) The FTC characterizes the Individual Defendants' response as an attempt "to let them use the Court's asset freeze to shield them from their other creditors" and urges the Court to "not countenance such misuse of the freeze." (*Id.* at 1.) As for the standing objection, the FTC argues that "it was the FTC who sought the freeze in the first place. Surely, a party can ask the Court to relax an order that the party itself sought. The FTC sought the freeze to preserve funds to be returned to Defendants' victims; because,

- 3 -

however, the FTC will not be able to recover those funds ahead of third parties holding perfected, prior-in-time secured claims, the FTC does not want to unduly burden those third parties. In any event, the modification is plainly within the Court's 'broad equitable powers.'" (*Id.* at 1-2.) As for the objection that the request is too vague, the FTC responds that "specify[ing] individual pieces of property affected by the freeze . . . is unnecessary and impractical. The freeze itself is broad and general. The FTC seeks a change that encompasses the breadth and generality of the freeze." (*Id.* at 2.) Finally, as for the Individual Defendants' alternative request for a stay, the FTC argues that "even if the Court stayed execution of the FTC's monetary judgment, that is no reason to shield Defendants from their other creditors." (*Id.*)

On November 22, 2023, the Court issued an order soliciting supplemental briefing from the FTC on the jurisdiction-divesting effect, if any, of the Individual Defendants' notice of appeal. (Doc. 603.)

On December 5, 2023, the FTC filed a supplemental brief on that topic. (Doc. 605.) The FTC argues that the Court retains jurisdiction under Rule 62(d) and elaborates: "Because certain of Individual Defendants' creditors have claims to the Individual Defendants' assets that are superior to those of the FTC, the FTC (the party being protected by the asset freeze) has asked the Court to loosen the freeze so as to allow those creditors to collect their debts. This plainly does not change the status quo in any meaningful way, nor does it 'materially alter' Individual Defendants' appeal." (*Id.* at 3.)

**ANALYSIS**

The Court agrees with the FTC, both as to existence of continued jurisdiction and as to the propriety of the requested relief.

As for the former issue, the Ninth Circuit has explained that "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. The principle of exclusive appellate jurisdiction is not, however, absolute. The district

court retains jurisdiction during the pendency of an appeal to act to preserve the status quo. This exception to the jurisdictional transfer principle has been codified in [Rule 62(d)][1] of the Federal Rules of Civil Procedure, which allows a district court to 'suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.' This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal . . . [so] any action taken pursuant to [Rule 62(d)] may not materially alter the status of the case on appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (cleaned up). *See also Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("A district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties.").

Here, the relief sought by the FTC is permissible under Rule 62(d) because it would not materially alter the status of the case on appeal and would maintain the status quo among the parties. Indeed, the preliminary-injunction order already sets forth a process under which the Court may grant permission for secured creditors to sell the Individual Defendants' assets—it prohibits such sales "except by further order of this Court." (Doc. 109 at 7.) Thus, granting the FTC's modification request would not change the status quo in any meaningful way—the Court has long possessed the power to authorize third parties to dispose of the Individual Defendants' assets and the FTC is simply asking the Court to exercise that power in broad strokes (which is more efficient that requiring an individual request for each proposed asset sale).

Turning to the merits, the Individual Defendants have not raised any legitimate objections to the FTC's modification request. The point of the asset freeze was, in part, to protect the *FTC's* ability to collect on a future judgment, yet the FTC is now willing to allow third-party creditors to pursue collection activities even though such creditors may have superior claims to the underlying assets. The FTC has standing to seek this

---

[1] *Southwest Marine* refers to Rule 62(c), but that provision has since been recodified as Rule 62(d).

modification, which is fully consistent with overarching purpose of the asset freeze (which, again, was to prevent the improper dissipation of the Individual Defendants' assets, not to interfere with the rights of third-party creditors).

As for the Individual Defendants' concern that "nor is there any consideration by the FTC as to whether these vehicles are subject to exemption or claims by a spouse" (Doc. 599 at 2), the Court wishes to clarify that it is not expanding the collection rights of third-party creditors beyond whatever rights those creditors may have under federal and state law—it is simply clarifying the circumstances under which the asset-freeze in this case will not serve as an impediment to their collection efforts.

Finally, as for the Individual Defendants' alternative request to require the net proceeds of any home sale to be deposited with the Clerk of Court (in lieu of allowing the FTC to recover the net proceeds in partial satisfaction of the outstanding judgment), this request is denied without prejudice. The Individual Defendants are effectively making a Rule 62(b) request for a no-bond stay of enforcement of a money judgment. As this Court has discussed in previous orders, *see, e.g., Burris v. JPMorgan Chase & Co.*, 2022 WL 3285441 (D. Ariz. 2022), such requests are governed by very specific standards. The Individual Defendants' cursory stay request does not attempt to address those standards.

Accordingly,

**IT IS ORDERED** that:

1. The FTC's motion to modify the asset freeze (Doc. 598) is **granted**.

2. The asset freeze imposed on Defendants pursuant to the Temporary Restraining Order (Lead Action Doc. 21, as amended, Doc. 38) and the Preliminary Injunction (Lead Action, Doc. 109), as recognized in the Permanent Injunctions (Docs. 591, 592) and Judgment (Doc. 596), is hereby **modified** as follows:

    A. Creditors and lien holders with an interest in either real property or personal property of a Defendant covered by the asset freeze in this case (*see* Docs. 21, 38, 109, 591, 592, 596) may seek approval from the FTC to exercise their rights as to frozen assets. This includes, but

is not limited to (i) real property located at 719 Laurelwood Circle, Bowling Green, KY 42103; (ii) real property located at 229 Stable Way, Nicholasville, KY 40356; and (iii) personal property located at either of the above addresses as well as at 21178 Ponte Vista Circle, Boca Raton, FL 33428, and at Space Center Storage in Lexington, KY.

B. The FTC may provide its written consent to creditors and lien holders to pursue their interests against the real property and personal property of any Defendant covered by the asset freeze. If the FTC provides its written consent, the subsequent exercise of such creditors' rights, including but not limited to by foreclosure, shall not constitute a violation of the asset freeze.

C. Notwithstanding anything in this Order, the asset freeze shall remain in place for any net proceeds that otherwise would be due Defendants from the sale of Defendants' real property and personal property until Defendants satisfy the Judgment (Doc. 596) in this case.

D. Nothing in this Order limits the FTC's ability otherwise to obtain frozen assets to satisfy the Judgment (Doc. 596).

Dated this 8th day of December, 2023.

Dominic W. Lanza
United States District Judge