**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-20-00047-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| James D Noland, Jr., et al., | |
| Defendants. | |

In January 2020, during the early stages of this FTC enforcement action, the Court issued a temporary restraining order that, among other things, included an "Asset Freeze" provision governing "(1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order." (Doc. 21 at 8-9; Doc. 38 at 8-9.) The Court extended the asset freeze in the preliminary injunction issued in February 2020. (Doc. 109 at 5-6 ["The Assets affected by this Section shall include: (1) all Assets of Defendants as of entry of the TRO (January 13, 2020); and (2) Assets obtained by Defendants after entry of the TRO if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order. This Section does not prohibit any . . . expenditures by the Individual Defendants for minor, day-to-day living expenses."].)

In September 2023, following a lengthy bench trial, the Court entered a $7.3 million judgment against Defendants James D. Noland, Jr., Scott Harris, and Thomas G. Sacca;

held that Defendant Lina Noland was jointly and severally liable for up to $6,829 of that sum; and directed the FTC to use any money collected pursuant to the judgment to provide redress to harmed consumers. (Doc. 592.) The judgment also provided that "[t]he asset freeze imposed on Individual Defendants pursuant to the Temporary Restraining Order and the Preliminary Injunction is hereby modified to the extent necessary to permit Individual Defendants to satisfy, in whole or in part, the Judgment imposed in Section IX. Upon full satisfaction of the Judgment, the FTC shall make a full report of satisfaction, at which time the Court, upon review and approval of the report, shall dissolve the asset freeze." (*Id.* at 18.)

The Individual Defendants appealed the judgment. (Doc. 613.) In their reply brief, the Individual Defendants asked the Ninth Circuit to "direct that, on remand . . . the asset freeze and receivership that are in place should be immediately and fully lifted." Reply Brief, *FTC v. Noland*, 2024 WL 6466170, at *25 (Oct. 30, 2024). However, the Ninth Circuit rejected that and every other one of the Individual Defendants' challenges, affirming the judgment in full. *Federal Trade Comm'n v. Success By Media Holdings Inc.*, 159 F.4th 1159, 1166 (9th Cir. 2025) ("The district court was thorough in its analysis at every stage of the litigation. We discuss each of the claims on appeal and, after our own review of the record, have no basis to disagree with the district court."). The mandate has now issued. (Doc. 617.)

Post-remand, the Individual Defendants—now proceeding *pro se*—have filed two motions.[1] The first is a motion under Rules 60(b)(4) and/or 60(b)(6) to alter or amend the judgment. (Doc. 618.) Most specifically, the Individual Defendants identify various reasons why the asset-freeze component of the judgment should be vacated or modified, including that "[a]sset freezes are equitable tools intended to preserve assets pending adjudication" and "are not intended to function as indefinite incapacitation"; that "the continuation of sweeping restraints—six years after the TRO—creates a disproportionate burden that exceeds any remaining preservation rationale"; that certain Supreme Court

---

[1] The Individual Defendants' requests for oral argument are denied because the issues are fully briefed and argument would not aid the decisional process.

decisions issued between 2021 and 2024 undermine the legal basis for the judgment and/or the asset freeze; and that the purported "disparity between the proven injury and judgment magnifies the inequity." (*Id.*) The FTC opposes the Individual Defendants' motion (Doc. 620) and the Individual Defendants have filed a reply (Doc. 627).

The Individual Defendants are not entitled to relief under Rule 60(b)(4), which authorizes relief from a final judgment when "the judgment is void." As the Supreme Court has explained, "a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule. A judgment is not void, for example, simply because it is or may have been erroneous. Similarly, a motion under Rule 60(b)(4) is not a substitute for a timely appeal. Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-71 (2010) (cleaned up). Here, the Individual Defendants do not purport to identify any jurisdictional errors or contend that the judgment or the asset-freeze component of the judgment were entered without notice or an opportunity to be heard.[2] Instead, they simply identify reasons why they believe the judgment and/or the asset-freeze component of the judgment were (or now are) erroneous. Such arguments do not provide a basis for relief under Rule 60(b)(4).

Meanwhile, "[r]elief under Rule 60(b)(6) requires extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). The Supreme Court has repeatedly "underscored the stringency of the 'extraordinary circumstances' test" and "consistently reaffirmed" that "[t]his very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Id.* at 212-13 (cleaned up). The arguments

---

[2] Nor could the Individual Defendants make such an argument. In May 2023, the Court issued its findings of fact and conclusions of law and invited the FTC to submit a proposed final judgment. (Doc. 579.) The FTC did so, and its proposed version of the final judgment included the asset-freeze language now at issue. (Doc. 580-1 at 18.) The Individual Defendants, in turn, filed objections to the FTC's proposed judgment. (Doc. 581.) No objections were raised to the asset-freeze language. (*Id.*)

- 3 -

presented in the Individual Defendants' motion do not qualify as the sort of extraordinary circumstances necessary to justify relief under Rule 60(b)(6).  As an initial matter, although the Individual Defendants *assert* that the asset freeze has caused them (and is causing them) to sustain various forms of "irreparable harm," including interference with their ability to engage in "normal economic activity," use "investment assets," and "properly rebuild their livelihoods" (Doc. 618 at 7), they do not offer any *evidence* in support of those assertions. Moreover, in its response brief, the FTC notes that the asset freeze likely applies to only a very narrow band of assets (Doc. 620 at 2-3 & nn. 3-4), and the Individual Defendants somewhat conspicuously do not address the FTC's arguments on this point in their reply brief.  On this record, the Court is unpersuaded that relief is necessary to prevent manifest injustice. *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.") (cleaned up).

At any rate, the Individual Defendants' arguments also fail to provide a basis for relief under Rule 60(b)(6) for other reasons.  The Supreme Court cases identified by the Individual Defendants—all of which were available to the Individual Defendants during their direct appeal to the Ninth Circuit—do not undermine the legal foundation for the judgment or for the asset-freeze component of the judgment, for the reasons identified by the FTC in its response brief.  *See generally Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2020) (noting that "[a] clear and authoritative change in the law governing the judgment in a petitioner's case may present extraordinary circumstances" but "a narrow change in peripheral law is rarely enough") (cleaned up).  As for the alleged "disparity between proven injury and judgment," which the Individual Defendants purport to illustrate by comparing the $7.3 million award to the $6,829 award (Doc. 618 at 4), the Individual Defendants overlook that the former award was specifically "fashioned . . . to track the compensatory purpose of civil sanctions" and was determined by the Ninth Circuit to be "an accurate measure of consumer loss." *Success by Media Holdings*, 159 F.4th at 1167

- 4 -

(cleaned up). Finally, to the extent the Individual Defendants contend it is never permissible for a final judgment to include an asset freeze intended to facilitate collection efforts, relief is not warranted under Rule 60(b)(6) because (1) as noted in footnote two, the Individual Defendants did not object to the asset-freeze component of the final judgment when they had the opportunity to do so, *see Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th Cir. 2022) ("Extraordinary circumstances occur where there are other compelling reasons for opening the judgment that prevented the movant from raising the basis of the motion during the pendency of the case.") (cleaned up); (2) the Ninth Circuit rejected all of the Individual Defendants' challenges related to the asset freeze during their direct appeal; (3) the Individual Defendants have not cited any case specifically holding that the sort of asset freeze at issue here is impermissible; (4) the Court has identified, through its own research, cases suggesting this sort of asset freeze is permissible, *see, e.g., SEC v. Complete Business Solutions Grp., Inc.*, 2023 WL 11926799, \*1 (S.D. Fla. 2023) (" [T]he fact remains that Cole has not paid the Final Judgment against him. The SEC is currently working to collect on this outstanding Final Judgment against Cole and is seeking discovery related to Capital Source. Accordingly, the modification of the Asset Freeze would improperly impair this collection activity for the benefit of victimized investors given Cole's control over Capital Source. . . . In other words, modifying the Asset Freeze would frustrate the Court's ability to provide maximum compensation for all the victims in this case, as none of the $12 million Cole owes to investors under the Final Judgment has been paid."); *Tiffany (NJ) LLC v. Forbse*, 2015 WL 5638060, \*3-4 (S.D.N.Y. 2015) ("Tiffany argues that *Grupo Mexicano*, which held that district courts lack the authority to issue prejudgment asset restraints in actions for money damages, does not require this Court to reject the asset restraint. We agree. In contrast to the plaintiffs in *Grupo Mexicano*, Tiffany asks this Court for a postjudgment asset restraint.") (citations omitted); and (5) the only reason the FTC has not yet pursued efforts to seize the restrained assets is that "[t]he FTC, in its discretion, chose not to proceed with collections work while Defendants' appeal was pending. The FTC will now move forward with that work." (Doc.

- 5 -

620 at 7.)

The other pending motion before the Court is the Individual Defendants' "emergency motion for stay of judgment enforcement pending resolution of Rule 60(b) motion and investigation of newly discovered evidence of fraud upon the Court." (Doc. 625.) To the extent this motion seeks to "[s]tay all enforcement of the Final Judgment . . . pending resolution of Defendants' Rule 60(b) Motion" (*id.* at 2), it is moot now that the Court has denied the Rule 60(b) motion. To the extent this motion seeks a stay of enforcement of the judgment while the Individual Defendants perform an "investigation of newly discovered evidence of fraud upon the court" (*id.*), the Court agrees with the FTC (Doc. 630 at 2-3) that the Individual Defendants have failed to make the required showing under Rule 62. To the extent this motion seeks broad-ranging orders that would compel the receivers to provide testimony and produce documents and would "[a]ppoint a neutral forensic accountant to examine the receivership financial records for the period 2020–2025" (Doc. 625 at 3), the Court agrees with the FTC that these requests should be denied, at a minimum, because they "lack any identified legal basis." (Doc. 630 at 3.)[3] Finally, the Court notes that some of the Individual Defendants' recent filings appear to contain hallucinated or otherwise inaccurate case citations. The Individual Defendants acknowledge the existence of some errors (Docs. 628, 629, 632; *see also* 631 at 9-10 ["The Citation Corrections Do Not Affect the Substance"]) but argue that the asset freeze is to blame. (Doc. 628 at 2 ["Defendants have proceeded pro se for over six years while subject to a comprehensive asset freeze, without access to Westlaw, Lexis, or comparable legal research resources. To the extent any citation errors exist, they reflect these limitations—not bad faith or fabrication—and should be considered in light of Defendants' pro se status."].) This excuse is unavailing—the Individual Defendants are advised that they are responsible for the accuracy of any case citations provided in legal filings and that the

---

[3] To that end, the Individual Defendants indicate in their reply that they intend to "file a standalone Rule 60(d)(3) motion presenting the full scope of Receiver fraud." (Doc. 631 at 6.) That anticipated future motion, rather than an emergency stay request, is a more logical vehicle for seeking some of the categories of relief sought in the emergency stay request.

provision of future inaccurate citations may expose them to sanctions. *Ghadimi v. Ariz. Bank & Trust*, 2025 WL 2928933, *4 (D. Ariz. 2025) ("Ghadimi is proceeding pro se but he still must follow the same rules of procedure that govern other litigants. . . . It appears the incorrect citations may be the result of Ghadimi using artificial intelligence to draft his filings. But whether Ghadimi used artificial intelligence or simply imagined the cases himself, filing documents that contain such cases results in confusion and unnecessary work for opposing parties and the court. In the future, filing documents with fictitious cases will subject Ghadimi to sanctions under Rule 11.") (citations omitted).

Accordingly,

**IT IS ORDERED** that:

1.    The Individual Defendants' Rule 60(b) motion (Doc. 618) is **denied**.

2.    The Individual Defendants' emergency stay request (Doc. 625) is **denied**.

Dated this 31st day of March, 2026.

_____
Dominic W. Lanza
United States District Judge

- 7 -